Jacqueline P. Rubin
(admitted *pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
jrubin@paulweiss.com

Lee Gelernt
(admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org

Attorneys for Plaintiffs

*(Additional Counsel for Plaintiffs Listed on Signature Page)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

A.I.I.L., on behalf of herself and her minor
children, J.A.H.I. and M.E.H.I.; L.L.H.O., on
behalf of herself and her minor child, K.E.O.H.;
J.L.V.A., on behalf of himself and his minor child,
D.S.V.H.; J.I.S., on behalf of himself and his minor
child, B.L.S.P.; and J.J.P.B., on behalf of himself
and his minor child, A.E.P.F.,

Plaintiffs,

- v -

Jefferson Beauregard Sessions III, Former
Attorney General of the United States; Gene
Hamilton, Counselor to the Attorney General; John
F. Kelly, Former White House Chief of Staff and
Former Secretary of the United States Department
of Homeland Security (DHS); Stephen Miller,
Senior Advisor to the President; Kirstjen Nielsen,
Former Secretary of DHS; Kevin K. McAleenan,
Acting Secretary of DHS and Former
Commissioner of United States Customs and
Border Protection (CBP); Mark Morgan, Acting
Commissioner of CBP; Thomas Homan, Former
Director of United States Immigration and
Customs Enforcement (ICE); Ronald D. Vitiello,
Former Acting Director of ICE; Matthew Albence,
Acting Director of ICE; L. Francis Cissna, Former
Director of United States Citizenship and
Immigration Services (USCIS); Carla Provost,
Chief of CBP U.S. Border Control; Alex Azar,
Secretary of the United States Department of
Health and Human Services (HHS); Margaret
Wynne, Former HHS Counselor for Human
Services Policy; E. Scott Lloyd, Former Director of
the United States Office of Refugee Resettlement
(ORR); John/Jane Doe DHS Defendants; and
John/Jane Doe HHS/ORR Defendants,

Defendants.

No. 4:19-cv-00481-JAS

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' NOTICES OF
SUPPLEMENTAL
AUTHORITIES**

Plaintiffs submit this response to Defendants' Notices of Supplemental Authorities (Dkt. Nos. 33–34) regarding decisions in three cases: (i) *K.O.* v. *U.S. Immigration & Customs Enf't*, No. CV 20-309 (RC), 2020 WL 3429697 (D.D.C. June 23, 2020), (ii) *Dep't of Homeland Sec.* v. *Regents of the Univ. of Cal.*, No. 18-587, 2020 WL 3271746 (U.S. June 18, 2020), and (iii) *Peña Arita* v. *United States*, No. 7:19-CV-00288, 2020 WL 3542256 (S.D. Tex. June 30, 2020).  Contrary to Defendants' submissions, these cases do not alter the fact that Plaintiffs have stated viable *Bivens* and 42 U.S.C. §§ 1985 & 1986 claims in the Complaint in this case.

For the reasons stated below, *K.O.*'s "special factors" analysis does not apply to Plaintiffs' *Bivens* claims as pleaded here; *K.O.* also applied an incorrect legal standard in analyzing qualified immunity.  Further, *Regents*'s equal protection claim arose in a different context—Deferred Action for Childhood Arrivals ("DACA")—and involved an official agency action to change immigration policy; in this case, Plaintiffs seek redress for widespread egregious misconduct by Defendants in violation of federal law and the U.S. Constitution.  Finally, *Peña Arita* has no impact on this case, as it was based on different government conduct, against different defendants, under Fifth Circuit precedent that is completely different from Ninth Circuit precedent.

## I.   *K.O.* v. *U.S. Immigration and Customs Enforcement*

This Court should not follow *K.O.*, a non-binding decision from a District Court in a different Circuit that construed a different pleading.  In any event, Plaintiffs respectfully submit the case was wrongly decided and is likely to be reversed on appeal.

*First*, *K.O.* wrongly rejected a *Bivens* remedy because it found that the plaintiffs challenged the government's promulgation of a "policy" of family separation.  In certain limited contexts, using *Bivens* to challenge a "policy" might be a "special factor" counseling hesitation in providing a *Bivens* remedy.  *See K.O.*, 2020 WL 3429697, at *10. But plaintiffs in *K.O.* pleaded no such thing.  *K.O.* failed to take all of the plaintiffs'

1   allegations as true, as a court is required to do at the motion-to-dismiss stage, including the

2   plaintiffs' allegation that the individual conduct of the defendants—not a policy—violated

3   federal law.   *See K.O.*, 2020 WL 3429697, at *1, 10.   But whatever the correct

4   understanding of the pleadings in *K.O.*, here, Plaintiffs do not challenge an immigration

5   policy.   *See* Dkt. No. 31 (Pls.' Opp'n to Defs.' Mot. to Dismiss ("Opp'n to MTD")) at 25–

6   26.   Instead, Plaintiffs plead claims based on individual conduct that violates federal law

7   and constitutional rights—Defendants' practice of separating parents and children,

8   including where no parent was ever prosecuted, and where parents and children were kept

9   separated long after the disposition of the parents' criminal cases.   *Id.* at 1, 25–26.   This

10  Court must take Plaintiffs' pleadings as true at this stage and disregard a purported "special

11  factor" regarding a policy that is *nowhere* alleged here.   *See Cousins* v. *Lockyer*, 568 F.3d

12  1063, 1067 (9th Cir. 2009).   Plaintiffs here challenge individual violations of clearly

13  established rights.

14   *Second*, *K.O.* incorrectly applied qualified immunity to bar the plaintiffs' § 1985(3)

15  and § 1986 claims.   2020 WL 3429697, at *13.   *K.O.* reasoned that the defendants could

16  have reasonably believed that the intracorporate conspiracy doctrine—a theory rooted in

17  antitrust law under which there can be no conspiracy among employees of the same

18  corporation—applies to employees spanning multiple federal agencies and departments.

19  *Id.*   *K.O.* ignored, however, that the operative question for qualified immunity is whether

20  the defendants "violate[d] 'clearly established statutory *or* constitutional rights of which a

21  reasonable person would have known.'"   Opp'n to MTD at 55 (quoting *Tolan* v. *Cotton*,

22  572 U.S. 650, 656 (2014)) (emphasis added).   Under that standard, where a defendant

23  violates clearly established constitutional rights, a plaintiff need not also demonstrate that

24  the defendant would be aware of the precise statutory theory of liability.   *See* Opp'n to

25  MTD at 56 (citing *Keates* v. *Koile*, 883 F.3d 1228, 1234–40 (9th Cir. 2018)).   Here,

26  Plaintiffs plead facts sufficient to show violations of clearly established constitutional

- 2 -

rights—under the Fourth and Fifth Amendments—and thus Defendants are not entitled to qualified immunity, regardless of whether the intracorporate conspiracy doctrine applies.[1]

Accordingly, the District Court's decision in *K.O.* does not apply to the claims here, and in any event was wrongly decided.

## II.   *Department of Homeland Security* v. *Regents of the University of California*

In *Regents*, a four-Justice plurality opinion concluded, in part, that the plaintiffs failed to plead an equal protection claim related to the Department of Homeland Security's ("DHS") decision to rescind a prior policy, DACA.[2]  2020 WL 3271746, at *16.  But Plaintiffs here do not challenge a single act rescinding a "cross-cutting" immigration relief program that applied to all countries, races, and ethnicities.  *Id*.  Rather, Plaintiffs contend that "Defendants intentionally and disparately targeted Central American families for separation" on the ground in Arizona and elsewhere along the southern border, and therefore challenge a collective pattern of actions that violated federal law and the Constitution.  *See* Opp'n to MTD at 44 (citing *Flores* v. *Pierce*, 617 F.2d 1386, 1392 (9th Cir. 1980)).  Plaintiffs here satisfy the three-factor *Arlington Heights* test for discriminatory animus in equal protection claims:  (i) disparate impact, (ii) procedural irregularity, and (iii) disparaging statements.  *See Regents*, 2020 WL 3271746, at *16 (citing *Arlington Heights* v. *Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977)).

---

[1]  Other than in *K.O.*, Plaintiffs have identified no case in which the intracorporate conspiracy doctrine has been applied to bar suits against officers conspiring across multiple distinct departments of the federal Executive Branch.  *See* Opp'n to MTD at 57.  The *K.O.* plaintiffs never briefed this point, and the *K.O.* Court did not address it.  2020 WL 3429697, at *12–13.  Further, *K.O.* concluded that the intracorporate conspiracy doctrine applies to federal employees whose duties "require them to speak and work with other officials outside their own departments."  *Id.*, at *13.  But, here, Defendants were not regularly performing their duties—they met in secret and intentionally left those who would have opposed family separations out of their discussions.  *See* Dkt. No. 1 (Compl.) ¶ 154.

[2]  *Regents*'s equal protection analysis is dicta because the Court ruled that the rescission of DACA was unlawful under the Administrative Procedure Act.  Thus, a determination as to whether rescission violated the Equal Protection Clause was not necessary to the holding.

*First*, Defendants here intentionally focused their unlawful efforts on southern border states, intending to target Central American immigrants entering from Mexico. *See* Opp'n to MTD at 6. By contrast, the rescission of the DACA policy affected all recipients of DACA relief nationwide.

*Second*, the family separations at issue here were planned and implemented outside of normal agency procedures without any consideration of their lawfulness. In fact, Defendants separated families at the southern border after holding meetings that purposefully excluded experts who would have alerted Defendants to the unlawfulness of their plans. *See* Opp'n to MTD at 45 (citing *Ave. 6E Investments, LLC* v. *City of Yuma, Ariz.*, 818 F.3d 493, 507 (9th Cir. 2016)); Compl. ¶ 154. In addition, Defendants separated parents and children despite stating publicly that separations would occur only if the life of the child was in danger. *See* Compl. ¶ 132. By contrast, *Regents* characterized DHS's decision to rescind DACA as "nothing irregular." 2020 WL 3271746, at *16. DHS rescinded DACA only after the Attorney General determined that it was likely unlawful. *See id.*, at *3, *16. Further, DHS did not publicly deny that it was rescinding DACA.

*Third*, Plaintiffs cite multiple contemporaneous disparaging statements by Defendants, many of which Defendants made in the course of actually planning or carrying out the family separations at issue in this case. For example, the Complaint alleges that a Customs and Border Protection ("CBP") officer berated Plaintiff Lorena based on her Salvadoran origin. *See* Compl. ¶ 77. And Defendant Kelly justified the Government's harsh treatment of immigrants not with concerns for public safety, but rather with the claim that immigrants would not "assimilate" or "integrate" well into the United States. *See id.* ¶ 251. By contrast, the *Regents* plurality concluded in dicta that statements made by federal officials disparaging Mexican nationals were not evidence of animus because they were not sufficiently related to the rescission of the DACA policy. *See* 2020 WL 3271746, at *16.

III.   *Peña Arita* **v.** *United States*

Finally, *Peña Arita* concerned *Bivens* claims that were framed differently than Plaintiffs' claims here and decided under Fifth Circuit precedent that is not applicable here.

The District Court in *Peña Arita* stressed that its decision was based on Fifth Circuit precedent. *See Peña Arita*, 2020 WL 3542256, at *12–15. In contrast to the Fifth Circuit, the Ninth Circuit does not automatically find a new *Bivens* context when the underlying facts differ from the facts of the "core" *Bivens* cases (*Bivens*, *Davis*, and *Carlson*). *Compare id.*, at *14 (stating that "the Fifth Circuit is skeptical of even identical constitutional claims"), *with Brunoehler* v. *Tarwater*, 743 F. App'x 740, 743–744 (9th Cir. 2018) (finding that a Fourth Amendment claim in the context of securities violations did not present a new context even though *Bivens* itself dealt with drug crimes); *Castellanos* v. *United States*, No. 3:18-cv-2334, 2020 WL 619336, at *4–6 (S.D. Cal. Feb. 10, 2020) (finding that an arrest at the Mexico-United States border did not constitute a "new context"). And, unlike the Fifth Circuit, the Ninth Circuit does not find it disqualifying that Congress has not explicitly codified a constitutional damages remedy in the immigration context. *Compare Peña Arita,* 2020 WL 3542256, at *14 ("The institutional silence speaks volumes and counsels strongly against judicial usurpation of the legislative function.") (citing *De La Paz* v. *Coy*, 786 F.3d 367, 377 (5th Cir. 2015)), *with Lanuza* v. *Love*, 899 F.3d 1019, 1031 (9th Cir. 2018) (finding, in the immigration context, that "Congress indicated that such constitutional remedies may be pursued when federal immigration officials violate an individual's constitutional rights"). *Peña Arita* is not consistent with Ninth Circuit precedent, and this Court should not follow it here.

In any event, the claims in *Peña Arita* were also quite different from the claims at issue here. *Peña Arita* arose out of the suicide of a detainee, Marco Antonio Muñoz, at a CBP facility in Texas, which the plaintiffs alleged was the result of low-level CBP agents' failure to provide Mr. Muñoz with adequate medical care. 2020 WL 3542256, at *1, *12–

15.  The complaint in *Peña Arita* alleged that the defendants' cruel treatment of Mr. Muñoz was the direct result of the Zero Tolerance Policy to prosecute all individuals who committed the misdemeanor of unlawful entry or re-entry under 8 U.S.C. § 1325(a).  *See id.*, at *15 (quoting Proposed Third Amended Complaint at 29–30, *Peña Arita* v. *United States*, No. 7:19-CV-00288, 2020 WL 3542256 (S.D. Tex. Aug. 18, 2019)) ("[CBP agents] act[ed] with particular cruelty, *emboldened by the intent behind [the Zero Tolerance Policy]*.").  By contrast, Plaintiffs here do not challenge a policy of the Executive Branch— or low-level CBP agents being emboldened by such a policy.  Plaintiffs contend that their injuries arose from Defendants' own "pathological and unconstitutional scheme to cause pain to Plaintiffs and other Central Americans seeking asylum and other relief in the United States."[3]  Opp'n to MTD at 1, 58.  As such, the analysis in *Peña Arita* is inapplicable to the instant case.

*       *       *

In sum, for the reasons stated in Plaintiffs' Opposition (Dkt. No. 31), Plaintiffs were separated cruelly and wantonly from their families, and they have stated *Bivens* and §§ 1985–1986 claims for violation of their rights under federal law and the Constitution.

---

[3]  As Plaintiffs plead in their Complaint, the Zero Tolerance directive was merely a pretext to justify separations of families that were already occurring.  Compl. ¶ 160. *Peña Arita* erroneously assumes that family separations flowed from the Zero Tolerance directive.

1

2   Respectfully submitted,

3   By:  /s/ Jacqueline P. Rubin

4       Jacqueline P. Rubin                    Lee Gelernt
        (admitted *pro hac vice*)              (admitted *pro hac vice*)
5       Geoffrey R. Chepiga                    Anand Balakrishnan
        (admitted *pro hac vice*)              (admitted *pro hac vice*)
6       Emily Goldberg                         Daniel A. Galindo
        (admitted *pro hac vice*)              (admitted *pro hac vice*)
7       Hallie S. Goldblatt                    AMERICAN CIVIL LIBERTIES
        (admitted *pro hac vice*)              UNION FOUNDATION
8       Steven C. Herzog                       IMMIGRANTS' RIGHTS PROJECT
        (admitted *pro hac vice*)              125 Broad Street, 18th Floor
9       PAUL, WEISS, RIFKIND,                  New York, NY 10004
        WHARTON & GARRISON LLP                 (212) 549-2660
10      1285 Avenue of the Americas
        New York, NY 10019                     Stephen Kang
11      (212) 373-3000                         (admitted *pro hac vice*)
                                               Spencer Amdur
12      Alexander A. Reinert                   (admitted *pro hac vice*)
        (admitted *pro hac vice*)              AMERICAN CIVIL LIBERTIES
13      55 Fifth Avenue, Room 1005             UNION FOUNDATION
        New York, NY 10003                     IMMIGRANTS' RIGHTS PROJECT
14      (212) 790-0403                         39 Drumm Street
                                               San Francisco, CA 94111
15      *Attorneys for Plaintiffs A.I.I.L., on*   (917) 620-3555
        *behalf of herself and her minor*
16      *children, J.A.H.I. and M.E.H.I.;*        Christine Keeyeh Wee
        *L.L.H.O., on behalf of herself and*      ACLU FOUNDATION OF ARIZONA
17      *her minor child, K.E.O.H.; J.L.V.A.,*    P.O. Box 17148
        *on behalf of himself and his minor*      Phoenix, AZ 85011
18      *child, D.S.V.H.; J.I.S., on behalf of*    (602) 650-1854
        *himself and his minor child,*
19      *B.L.S.P.; and J.J.P.B., on behalf of*
        *himself and his minor child,*
20      *A.E.P.F.*

21      July 8, 2020

22

23

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by means of the District Clerk's CM/ECF electronic filing system on July 8, 2020.

<u>/s/ Jacqueline P. Rubin</u>
Jacqueline P. Rubin