JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
DOUGLAS G. SMITH
Deputy Assistant Attorney General, Civil Division
JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
THEODORE W. ATKINSON
Trial Attorney
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285
Facsimile: (202) 616-5200

Attorneys for the United States of America

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A.I.I.L., on behalf of herself and her minor children, J.A.H.I. and M.E.H.I.; L.L.H.O., on behalf of herself and her minor child, K.E.O.H.; J.L.V.A., on behalf of himself and his minor child, D.S.V.H.; J.I.S., on behalf of himself and his minor child, B.L.S.P.; and J.J.P.B., on behalf of himself and his minor child, A.E.P.F.,<br><br>     Plaintiffs,<br><br>   v.<br><br>Jefferson Beauregard Sessions III, Former Attorney General of the United States, et al., and the United States of America,<br><br>     Defendants. | Case No. 4:19-cv-00481-JCH<br><br>**THE UNITED STATES OF AMERICA'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

LEGAL FRAMEWORK ......................................................................................................... 3

    I.    Legal Framework for Aliens Entering the United States Unlawfully.................................. 3

    II.    Legal Framework for Immigration Custody and Release of Minor Aliens ....................... 6

PLAINTIFFS' COMPLAINT................................................................................................... 8

ARGUMENT .......................................................................................................................... 11

    I.    Plaintiffs' Claims Are Barred By The Discretionary Function Exception ....................... 11

    II.    Plaintiffs' Claims Are Barred By The Due Care Exception ................................. 24

    III.    Plaintiffs' Constitutional Tort Claims Are Not Actionable Under the FTCA.............. 26

    IV.    Plaintiffs' Claims Are Not Actionable Under The FTCA Because There Is No Private Person Analogue ........................................................................................................ 28

    V.    Plaintiffs' Claims Relating To Their Removals Are Barred By the Misrepresentation Exception .......................................................................................................... 31

    VI.    Plaintiffs' Claims Are Not Actionable Under Arizona Law ......................................... 32

    VII.    Venue Is Not Proper In This District................................................................ 33

CONCLUSION.................................................................................................................... 35

# **TABLE OF AUTHORITIES**

**Statutes:**

6 C.F.R. § 115.14 ........................................................................................................ 17

8 C.F.R. § 235.3 .......................................................................................................... 3

6 U.S.C. § 279 ........................................................................................................ 6, 15

6 U.S.C. § 279(g) ........................................................................................................ 25

6 U.S.C. § 1232 .......................................................................................................... 25

8 U.S.C. § 1182 ...................................................................................................... 3, 10

8 U.S.C. § 1225 (2)(A) ......................................................................................... 3, 9, 10

8 U.S.C. § 122 (b) ................................................................................................. 3, 25

8 U.S.C. § 1226 ............................................................................................................ 4

8 U.S.C. § 1231 .................................................................................................. 4, 11, 16

8 U.S.C. § 1232 ........................................................................................................ 6, 7

8 U.S.C. § 1325 ............................................................................................................ 3

8 U.S.C. § 1326 .......................................................................................................... 10

28 U.S.C. § 1346 .............................................................................................. 1, 2, 26, 28

28 U.S.C. § 1402 ............................................................................................... 2, 34, 35

28 U.S.C. § 1406 ........................................................................................................ 34

28 U.S.C. § 2674 ..................................................................................................... 26, 28

28 U.S.C. § 2680 .............................................................................. 1-2, 2, 12, 23, 24, 32

**Cases:**

*Accardi v. United States,*
    435 F.2d 1239 (3d Cir. 1970) ........................................................................... 25

*Aguilar v. ICE,*
    510 F.3d 1 (1st Cir. 2007) ................................................................................ 20

*Aguilar v. United States,*
    No. 1:16-048, 2017, WL 6034652 (S.D. Tex. June 7, 2017).................................. 28

*Air Shuttle Corp. v. United States,*
    112 F.3d 532 (1st Cir. 1997) ............................................................................ 29

*Akutowicz v. United States,*
    859 F.2d 1122 (2d Cir. 1988) ....................................................................... 30, 31

*Andrade v. Chojnacki,*
    934 F. Supp. 817 (S.D. Tex. 1996) ................................................................ 35, 36

*Antonelli v. Crow,*
    No. 08-261, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012) ................................... 23

*Bailor v. Salvation Army,*
 51 F.3d 678 (7th Cir. 1995) ............................................................................... 16

*Bhuiyan v. United States,*
 772 F. App'x 564 (9th Cir. 2019) ..................................................................... 29

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
 403 U.S. 388 (1971) ............................................................................................. 8

*Borquez v. United States,*
 773 F.2d 1050 (9th Cir. 1985) .................................................................... 24, 25

*Bunikyte v. Chertoff,*
 No. 07-164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ...................... 7, 8, 15

*C.M. v. United States,*
 No. 19-5217, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ............................. 18

*Campos v. United States,*
 888 F.3d 724 (5th Cir. 2018) ............................................................................ 22

*Castro v. United States,*
 560 F.3d 381 (5th Cir. 2009) ............................................................................ 20

*Castro v. United States,*
 608 F.3d 266 (5th Cir. 2010) (en banc) ........................................................... 20

*Chen v. United States,*
 854 F.2d 622 (2d Cir. 1988) ............................................................................. 29

*Clark v. Suarez Martinez,*
 543 U.S. 371 (2005) .......................................................................................... 16

*Cohen v. United States,*
 151 F.3d 1338 (11th Cir. 1998) ........................................................................ 16

*Comm. Of Cent. Am. Refugees v. I.N.S.,*
 795 F.2d 1434 (9th Cir. 1986) .......................................................................... 16

*Cruz v. United States,*
 684 F. Supp. 2d 217 (D.P.R. 2010) .................................................................. 22

*D.B. v. Cardall,*
 826 F.3d 721 (4th Cir. 2016) ............................................................................ 15

*Dalehite v. United States,*
 346 U.S. 15 (1953) ............................................................................................ 24

*Davila v. Weinberger,*
 600 F. Supp. 599 (D. D.C. 1985) ..................................................................... 35

*Delta Sav. Bank v. United States,*
 265 F.3d 1017 (9th Cir. 2001) .......................................................................... 27

*Denson v. United States,*
 574 F.3d 1318 (11th Cir. 2009) ........................................................................ 20

*Doe v. Holy See,*
    557 F.3d 1066 (9th Cir. 2009) .................................................................. 12

*Dover v. Baker, Brown, Sharman & Parker,*
    859 S.W.2d 441 (Tex. App. 1993) ............................................................ 33

*Dupree v. United States,*
    247 F.2d 819 (3d Cir. 1957) ............................................................... 24, 25

*Edwards v. Johnson,*
    209 F.3d 772 (5th Cir. 2000) .................................................................... 15

*Elgamal v. Bernacke,*
    714 F. App'x 741 (9th Cir. 2018) ........................................................ 29, 30

*Elgamal v. United States, No. 13-00967,*
    2015 WL 13648070 (D. Ariz. July 8, 2015) ............................................. 30

*Esrey v. United States,*
    707 Fed App'x 749 (2d Cir. 2018) ........................................................... 32

*Favereau v. United States,*
    44 F. Supp. 2d 68 (D. Me. 1999) ............................................................. 35

*Fazaga v. Fed. Bureau of Investigation,*
    916 F.3d 1202 (9th Cir. 2019) .................................................................. 18

*FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.,*
    592 F.2d 364 (7th Cir. 1979) .................................................................... 25

*FDIC v. Meyer,*
    510 U.S. 471 (1994) .......................................................................... 11, 26

*Flores v. Lynch*
    828 F.3d 898 (9th Cir. 2016) ............................................................ 7, 8, 15

*Franklin Sav. Corp. v. United States,*
    180 F.3d 1124 (10th Cir. 1999) ............................................................... 14

*Gandarillas- Zambrana v. BIA,*
    44 F.3d 1251 (4th Cir. 1995) .................................................................... 16

*Garza v. United States,*
    161 F. App'x 341 (5th Cir. 2005) ............................................................. 18

*Gonzalez v. United States,*
    814 F.3d 1022 (9th Cir. 2016) .................................................... 13, 14, 17

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ................................................................................ 19

*Harrison v. Fed. Bureau of Prisons,*
    464 F. Supp. 2d 552 (E.D. Va. 2006) ...................................................... 22

*Hornbeck Offshore Transp., LLC v. United States,*
    569 F.3d 506 (D.C. Cir. 2009) ........................................................... 27, 28

*J.F.G. v. Hott,*
  921 F.3d 204 (4th Cir. 2019) ............................................................................... 20

*JBP Acquisitions, LP v. United States,*
  224 F.3d 1260 (11th Cir. 2000) ........................................................................... 28

*Jennings v. Rodriguez,*
  138 S. Ct. 830 (2018) ............................................................................................ 3

*Jimenez-Angeles v. Ashcroft,*
  291 F.3d 594 (9th Cir. 2002) ............................................................................... 24

*Kennewick Irr. Dist. v. United States,*
  880 F.2d 1018 (9th Cir. 1989) ............................................................................. 14

*King v. Russell,*
  963 F.2d 1301 (9th Cir. 1992) ............................................................................. 34

*Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty,*
  408 F.3d 1250 (9th Cir. 2005) ............................................................................. 34

*Linder v. United States,*
  937 F.3d 1087 (7th Cir. 2019) ............................................................................. 27

*Lineberry v. United States,*
  No. 3:08-cv-0597, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009) ....................... 23

*Lipsey v. United States,*
  879 F.3d 249 (7th Cir. 2018) ............................................................................... 16

*Marin-Garcia Holder,*
  647 F.3d 666 (7th Cir. 2011) ............................................................................... 20

*Mazur v. United States,*
  957 F. Supp. 1041 (N.D. Ill. 1997) ..................................................................... 30

*McGowan v. United States,*
  825 F.3d 118 (2d Cir. 2016) ............................................................................... 31

*Medina v. United States,*
  259 F.3d 220 (4th Cir. 2001) ............................................................................... 23

*Mirmehdi v. United States,*
  689 F.3d 975 (9th Cir. 2012) ............................................................................... 16

*Molchatsky v. United States,*
  778 F. Supp. 2d 421 (S.D.N.Y. 2011) ................................................................. 22

*Molzof v. United States,*
  502 U.S. 301 (1992) ............................................................................................. 12

*Ms. L v. ICE,*
  302 F. Supp. 3d 1149 (C.D. Cal. 2018) ............................................................... 20

*Ms. L. v. ICE,*
  310 F. Supp. 3d 1133 (S.D. Cal. 2018) ............................................................... 19

*Muscat v. Creative Innervisions LLC*,
    244 Ariz. 194 (Ct. App. 2017) ........................................................................................... 33

*Nurse v. United States*,
    226 F.3d 996 (9th Cir. 2000) ............................................................................... 13, 14, 18

*Olim v. Wakinekona*,
    461 U.S. 238 (1983) ......................................................................................................... 15

*Omoniyi v. Dep't of Homeland Sec.*,
    No. 10-cv-1344 (DF), 2012 WL 892197 (S.D.N.Y. Mar. 13, 2012) .................................... 30

*Ostera v. United States*,
    769 F.2d 716 (11th Cir. 1985) .......................................................................................... 21

*Pauly v. U.S. Dep't of Agriculture*,
    348 F.3d 1143 (9th Cir. 2003) .......................................................................................... 32

*Payne-Barahana v. Gonzales*,
    474 F.3d 1 (1st Cir. 2007) .......................................................................................... 15, 20

*Peña Arita v. United States*,
    -- F. Supp. 3d --, 2020 WL 3542256 ........................................................................... 17, 27

*Piedmont Label Co. v. Sun Garden Packing Co.*,
    598 F.2d 491 (9th Cir. 1979) ........................................................................................... 34

*Powell v. United States*,
    233 F.2d 851 (10th Cir. 1956) .......................................................................................... 24

*Reno v. American-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ..................................................................................................... 23-24

*Reynolds v. United States*,
    549 F.3d 1108 (7th Cir. 2008) .......................................................................................... 14

*Richards v. United States*,
    369 U.S. 1 (1962) ...................................................................................................... 12, 35

*Roundtree v. United States*,
    40 F.3d 1036 (9th Cir. 1994) ........................................................................................... 27

*Ryan v. U.S. Immigration & Customs Enf't*,
    974 F.3d 9 (1st Cir. 2020) ................................................................................................ 31

*Saks v. Sawtelle, Goode, Davidson & Troilo*,
    880 S.W.2d 466 (Tex. App. 1994) .................................................................................... 33

*Santana-Rosa v. United States*,
    335 F.3d 39 (1st Cir. 2003) .............................................................................................. 16

*Sasso v. Milhollan*,
    735 F. Supp. 1045 (S.D. Fla. 1990) .................................................................................. 16

*Sickman v. United States*,
    184 F.2d 616 (7th Cir. 1950) ........................................................................................... 25

*Sloan v. H.U.D.*,
   236 F.3d 756 (D.C. Cir. 2001) ................................................................................. 21

*Smith v. Lyon*,
   133 U.S. 315 (1890) ............................................................................................... 35

*Smith v. United States*,
   No. 11-cv-00616, 2014 WL 4638918 (S.D. Ohio Sept. 16, 2014) ................................. 22, 23

*Southerland v. Thigpen*,
   784 F.2d 713 (5th Cir. 1986) ................................................................................... 15

*Sutter v. United States*,
   No. 17-07245, 2019 WL 1841905 (C.D. Cal. March 12, 2019) ..................................... 28

*Thompson v. United States*,
   No. 1:14–0894, 2015 WL 5567934 (M.D. Pa. Sept. 21, 2015) ..................................... 28

*United States v. Delgado-Garcia*
   374 F.3d 1337 (D.C. Cir. 2004) ............................................................................... 14

*United States v. Dominguez-Portillo*,
   No. 17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) .................................. 7, 20

*United States v. Gaubert*,
   499 U.S. 315 (1991) ........................................................................................... 12, 13

*United States v. Olson*,
   546 U.S. 43 (2005) ................................................................................................ 29

*United States v. Orleans*,
   425 U.S. 807 (1976) ............................................................................................... 11

*Van Dinh v. Reno*,
   197 F.3d 427 (10th Cir. 1999) ................................................................................. 16

*W.S.R. v. Sessions*,
   318 F. Supp. 3d 1116 (N.D. Ill. 2018) ....................................................................... 20

*Walding v. United States*,
   955 F. Supp. 2d 759 (W.D. Tex. 2013) ...................................................................... 17

*Ward v. Emmett*,
   37 S.W.3d 500 (Tex. App. 2001) ............................................................................... 33

*White v. Pazin*,
   2016 WL 6124234 (E.D. Cal. Feb. 16, 2017) .............................................................. 15

*Wolfish v. Levi*,
   573 F.2d 118 (2d Cir. 1978) .................................................................................... 22

**Other Authorities**:

83 Fed. Reg. 16179 (Apr. 13, 2018) ............................................................................. 5

Exec. Order No. 13767, 82 Fed. Reg. 8793 (Jan. 25, 2017) ............................................. 4

Federal Rule of Civil Procedure 12 ................................................................... 1, 2, 3

*U.S. DOJ, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry* (April 6, 2018), 2018 WL 1666622 ........................................................................... 5

Defendant United States of America respectfully moves this Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  Further, the United States moves pursuant to Federal Rule of Civil Procedure 12(b)(3) to dismiss this action because venue is improper in this district.  The grounds for this motion are set forth in the below memorandum in support.

## INTRODUCTION

Plaintiffs – five adult aliens suing on behalf of themselves and their respective six alien children – bring this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, seeking damages from the United States arising out of the separation of each Plaintiff from his or her child "in Arizona and at other places along the United States' southern border" following their entry into the United States. Am. Compl. ¶ 1.  Plaintiffs allege that various officials at "the highest levels of the U.S. government conspired with each other to violate the law and ordered these forcible family separations in Arizona and elsewhere along the southern border." *Id*. at ¶ 8.  Plaintiffs assert claims against the United States for intentional infliction of emotional distress ("IIED") (Count 9), negligence (Count 10), and loss of consortium (Count 11).

Plaintiffs' claims are barred for lack of subject matter jurisdiction under the FTCA, and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  First, Plaintiffs' claims are barred because the discretionary function exception to the FTCA shields the United States from liability for discretionary decision-making relating to enforcement of federal immigration law and concerns regarding child welfare, including decisions regarding where and with whom aliens are detained.  28 U.S.C. § 2680(a).

1

Second, Plaintiffs' claims are barred because the due care exception to the FTCA bars claims arising out of the exercise of the statutory authority set forth in the applicable statutory and regulatory framework of federal criminal and immigration law.  *Id*.   Third, the FTCA bars Plaintiffs' claims because they are not cognizable under 28 U.S.C. § 1346(b)(1).  In particular, the FTCA does not authorize recovery for "constitutional torts" like those pursued here.  Fourth, the FTCA only authorizes tort claims that could be brought against a similarly-situated private individual, and there is no private person analog for claims arising out of the enforcement of federal statutes, determinations relating to immigration status, and decisions regarding confinement, which are activities in which only the government, and not private parties, may engage.  Fifth, insofar as certain Plaintiffs' claims are based upon allegedly false statements in obtaining their consent to removal, such claims are barred by the misrepresentation exception to the FTCA.  28 U.S.C. § 2680(h).   Finally, Plaintiffs have not stated a claim that is actionable under Arizona law.  Accordingly, Plaintiffs' claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

Further, venue is improper under 28 U.S.C. § 1402(b).  For two Plaintiffs – J.L.V.A. on his own behalf and on behalf of his child, D.S.V.H., and J.J.P.B on his own behalf and on behalf of his child, A.E.P.F. – the acts or omissions complained of did not occur in Arizona.  The venue provision of the FTCA permits an action to be brought only

in a district where venue is proper for all plaintiffs.  Therefore, this action should also be dismissed under Federal Rule of Civil Procedure 12(b)(3).

## **LEGAL FRAMEWORK**

### **I. Legal Framework for Aliens Entering the United States Unlawfully**

Under the Immigration and Nationality Act ("INA"), any alien present in the United States without being admitted or paroled is inadmissible and subject to removal. *See* 8 U.S.C. § 1182(a)(6)(A)(i).  Such individuals may also be subject to prosecution for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers."  8 U.S.C. § 1325.

Aliens present in the United States without being admitted are considered "applicant[s] for admission" and are to be "inspected by immigration officers[.]"  *See* 8 U.S.C. §§ 1225(a)(1), (a)(3), (b).  The INA "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018).  Specifically, such aliens "shall be detained pending a final determination of credible fear of persecution and, if found not to have such fear, until removed."  8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and (b)(2)(A).  The Department of Homeland Security ("DHS") may in its "discretion" grant parole and release such individuals only under narrowly prescribed circumstances assessed on a "case-by-case basis."  *See* 8 U.S.C. § 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii) and (b)(4)(ii).  The detention of aliens is further authorized by 8 U.S.C. § 1226(a), which provides that "an

alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."

The INA also provides that, when DHS finds that an alien has illegally reentered the United States after having been removed, "the prior order of removal is reinstated from its original date." 8 U.S.C. § 1231(a)(5). The reinstated order "is not subject to being reopened or reviewed"; the alien "is not eligible and may not apply for any relief" from the order. *Id.* Aliens with reinstated orders of removal are initially subject to detention under 8 U.S.C. § 1231(a)(2). Section 1231 authorizes the detention of an alien who "is ordered removed," 8 U.S.C. § 1231(a)(1)(A), and provides that, "[d]uring the removal period, the [Secretary] shall detain the alien," *id.* § 1231(a)(2). Additionally, the federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1).

Furthermore, in January 2017, the President issued Executive Order No. 13767 ("EO 13767") stating that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]" Exec. Order No. 13767, 82 Fed. Reg. 8793 (Jan. 25, 2017) at § 2(b). EO 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law[,]" *id.* § 6, and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute . . . and in all circumstances only

when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole," *id*. § 11(d).

On April 6, 2018, a Presidential Memorandum titled "Ending 'Catch and Release' at the Border of the United States and Directing Other Enhancements to Immigration Enforcement" required the DHS Secretary to report on progress implementing EO 13767's directive "to issue policy guidance regarding the appropriate and consistent use of detention authority under the Immigration and Nationality Act (INA), including termination of the practice known as 'catch and release,' whereby aliens are released in the United States shortly after their apprehension for violations of our immigration laws."  83 Fed. Reg. 16179 (Apr. 13, 2018).

That same day, the Attorney General issued a "Memorandum for Federal Prosecutors along the Southwest Border."  U.S. DOJ, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (hereinafter the "Zero Tolerance Memorandum").  Citing "a 203 percent increase in illegal border crossings" in the prior year and "the largest month-to-month increase since 2011," the memorandum directed federal prosecutors along the southwest border to immediately accept for prosecution, to the extent practicable, all § 1325(a) offenses referred for prosecution.  *Id*.  As the Attorney General explained, "a crisis has erupted at our Southwest Border that necessitates an escalated effort to prosecute those who choose to illegally cross our border."  *Id*.

## II.  Legal Framework for Immigration Custody and Release of Minor Aliens

Federal immigration law expressly authorizes the United States to provide for the custody and care of minor children entering the United States.  *See* 6 U.S.C. § 279 and 8 U.S.C. § 1232.  Specifically, the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1).  The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3).  ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).  However, ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(2)(B).  Children may be in a secure facility only if it is determined that the child poses a danger to him- or herself or others, or has been charged with a criminal offense.  8 U.S.C. § 1232(c)(2)(A).

6

The TVPRA provides that a child may be placed with a proposed custodian only after ORR "makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being." 8 U.S.C. §1232(c)(3)(A). "Such determination shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id.*

In addition to this legal framework, the federal government entered into a consent decree (the *Flores* Agreement)[1] enforced in the Central District of California that "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Agreement ¶ 9). Under the *Flores* Agreement, with limited exceptions, "[w]ithin five days of arrest, [DHS] must transfer the minor to a non-secure, licensed facility[.]" *Id.* at 902-03 (quoting *Flores* Agreement ¶ 12). However, the *Flores* Agreement "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id*. at 906; *see also United States v. Dominguez-Portillo*, No. 17-MJ-4409, 2018 WL 315759, *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]"). Nor does the *Flores* Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007

---

[1] *See Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF 101).

7

WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007).  While the *Flores* Agreement gives preference to release of minors to a parent, this "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

## PLAINTIFFS' COMPLAINT

This lawsuit is brought by Central American immigrants who were detained by immigration authorities after crossing the southern border into the United States, several of whom had previously entered the country illegally and were subject to removal orders. Plaintiffs allege that officials at the "highest levels" of government "conspired" with each other to plan and order "widespread family separations" at the southern border.  Am. Comp. ¶¶ 8, 9.  Plaintiffs further allege that these separations were ordered "to inflict severe pain on Central American immigrants, hoping that this would cause them to abandon their asylum cases and deter other Central Americans from seeking asylum or other immigration relief in the United States."  Am. Compl. ¶ 9; *id*. at ¶ 243 (alleging a "discriminatory animus toward immigrants from Central America").  Plaintiffs initially brought this action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), only against certain high-ranking government officials whom they allege were responsible for these policies, which they assert violate the Constitution.  Plaintiffs subsequently amended their complaint to add claims against the United States under the FTCA.

Plaintiff A.I.I.L. ("Ana") and her sons J.A.H.I. ("Jaimie") and M.E.H.I. ("Mateo") illegally entered the United States together on May 25, 2018 by crossing the border

between ports of entry near San Luis, Arizona.  Am. Compl. ¶¶ 19, 62.  They were apprehended by Border Patrol and transported to a CBP facility.  *Id* at ¶ 63.  Ana was held in DHS custody and processed for expedited removal pursuant to 8 U.S.C. § 1225(b)(1)(A)(iii).  *See* Exhibit A, Attachment 1.[2]  Jaime and Mateo were designated UACs and transferred to ORR custody.  Am. Compl. at ¶¶ 67-68, 70-71.  Ana was transferred to ICE custody and placed in secure adult detention facilities.  *Id*.  On July 6, 2018, Ana was released on bond from ICE custody, and on July 10, 2018, Ana, Jaime, and Mateo were re-united in Miami, Florida.  *Id.* at ¶ 73.  On July 13, 2018, Jaime and Mateo were released to Ana's custody.  *Id.* at ¶ 74.

Plaintiff L.L.H.O. ("Lorena") and her daughter K.E.O.H. ("Karina") presented themselves at the DeConcini Port of Entry in Nogales, Arizona on December 22, 2017. Am. Compl. ¶¶ 20, 79.  CBP determined that Lorena had a criminal history in El Salvador for illicit trafficking and detained her.  *See* Exhibit A, Attachment 2.   On December 25, 2017, Lorena was transferred to ICE custody and placed in secure adult detention facilities.  Am. Compl. at ¶¶ 82-85.  Karina was designated a UAC and transferred to ORR custody.  *Id.* at ¶ 89.  On March 21, 2018, Lorena was deported to El Salvador.  *Id.* at ¶ 88. Lorena subsequently returned to the United States; she and Karina were re-united approximately sixteen months after their separation.  *Id.* at ¶ 91

Plaintiff J.L.V.A. ("Jorge") and his daughter D.S.V.H. ("Diana") illegally entered the United States on June 4, 2018 by crossing the border between ports of entry.  Am. Compl. ¶¶ 21, 94.  Jorge and Diana were apprehended in Texas and transported to a

---

[2] The attachments to Exhibit A contain redactions to protect from disclosure confidential and sensitive information.

processing center in El Paso, Texas.  *See* Exhibit A, Attachment 3; Am. Compl. at ¶¶ 95-96.  Jorge previously had been removed from the United States on September 14, 2005.  *See id*.  Thus, on June 4, 2018, Jorge was processed for reinstatement of a prior order of removal, and was transported to the El Paso County Detention Facility pending prosecution for criminal re-entry under 8 U.S.C. § 1326.  *Id*.  Diana was designated a UAC and transferred to ORR custody. *Id.*; Am. Compl. at ¶ 97.  Jorge subsequently was transferred to ICE custody and placed in secure adult detention facilities.  Am. Compl. at ¶¶ 97.   Jorge and Diana were re-unified approximately eight weeks after their separation. *Id.* at ¶¶ 99-100.

Plaintiff J.I.S. ("Jairo") and his daughter B.L.S.P. ("Beatriz") illegally entered the United States on December 24, 2017 by crossing the border between ports of entry.  Am. Compl. ¶¶ 22, 103. They were apprehended by Border Patrol and transported to a CBP facility.  *Id.* at ¶ 104.  Jairo had been removed previously from the United States on January 23, 2015.  Thus, in December 2017 he was presented for prosecution for violations of 8 U.S.C. § 1326 and 8 U.S.C. § 1325, and processed for removal pursuant to 8 U.S.C. § 1182.  *See* Exhibit A, Attachment 4.  Jairo was convicted of violation of 8 U.S.C. § 1325 and sentenced to five days incarceration.  *See* Exhibit A.  Beatriz was designated a UAC and transferred to ORR custody.  Am. Compl. at ¶¶ 107-108.  Jairo was transferred to ICE custody and placed in secure adult detention facilities.  *Id*.  After receiving final orders of removal, Jairo was deported to Guatemala in June 2018, and Beatriz was deported to Guatemala approximately five months later.  *Id.* at ¶ 109.

Plaintiff J.J.P.B. ("Jacinto") and his son A.E.P.F. ("Andres") illegally entered the United States on May 16, 2018 by crossing the border between ports of entry.  Am. Compl. ¶¶ 23, 113.  Jacinto and Andres were apprehended in Texas and transported to a processing center in McAllen, Texas.  *See* Exhibit A, Attachment 5; Am. Compl. ¶ 114.  Jacinto was processed for reinstatement of a prior order of removal pursuant to 8 U.S.C. § 1231(a)(5) and referred for criminal prosecution.  *See* Exhibit A, Attachments 5 and 6.  Jacinto was transferred to ICE custody and placed in secure adult detention facilities.  Am. Compl. at ¶ 117.  Andres was designated a UAC and transferred to ORR custody.  *Id.*  Jacinto was deported in late May 2018.  Am. Compl. at ¶ 121.  Jacinto subsequently returned to the United States, and was re-united with Andres approximately one year after their separation.  *Id.* at ¶¶ 121-122.

## **ARGUMENT**

### I.     **Plaintiffs' Claims Are Barred By The Discretionary Function Exception**

The court lacks subject matter jurisdiction over Plaintiffs' claims because the United States has not waived sovereign immunity for these claims under the FTCA.  The United States enjoys broad immunity from suit and "can be sued only to the extent that it has waived its immunity."  *United States v. Orleans*, 425 U.S. 807, 814 (1976).  Accordingly, absent a specific waiver, sovereign immunity bars a suit against the government for lack of subject matter jurisdiction.  *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

While the United States has waived sovereign immunity under the FTCA for certain tort claims, the FTCA contains express exceptions that "are designed to protect

certain important governmental functions and prerogatives from disruption." *Molzof v. United States*, 502 U.S. 301, 311 (1992); *see also Richards v. United States*, 369 U.S. 1, 13 n.28 (1962). One such exception – the "discretionary function" exception – bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). As the legislative history of the FTCA explains, the statute was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

The Supreme Court has created a two-part test for determining whether the discretionary function exception bars suit against the United States. If both prongs of the discretionary function test are met, the United States is shielded from liability, even if its actions were negligent or an abuse of discretion. *See United States v. Gaubert*, 499 U.S. 315, 323 (1991). First, courts must determine whether the act "involv[es] an element of judgment or choice." *Id.* at 322. Courts look to whether "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow[.]" *Id.* at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). To survive a motion to dismiss, the plaintiff must identify a statute, regulation or policy that is both mandatory and specific, as well as conduct that violates said statute, regulation, or policy. *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (citation omitted). If, however, there is no such specific mandate or the applicable laws and regulations set forth a specific mandate

with which the government employee complies, then the exception applies.  *See Gaubert*, 499 U.S. at 323 ("[I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation.") (citation omitted).

Second, if the conduct does "involv[e] an element of judgment or choice," courts then look at "whether that judgment is of the kind that the discretionary function exception was designed to shield."  *Gaubert*, 499 U.S. at 322-23 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984)).  The discretionary function exception is intended "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *Id.* at 323 (quoting *Varig Airlines*, 467 U.S. at 814).  When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  *Gaube*rt, 499 U.S. at 323; *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000).

It is immaterial whether various policy considerations actually were considered, because "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."  *Gaubert*, 499 U.S. at 325.  Rather, the issue is whether the decisionmaking was "susceptible to" policy considerations.  *Id.*; *see also Gonzalez v. United States*, 814 F.3d 1022, 1032 (9th Cir. 2016) ("[W]e do not look to

13

an agent's subjective weighing of policy considerations.  Rather, we examine the nature of the government's action – or in this case, omission – and decide whether it is susceptible to policy analysis under an objective assessment.") (citation and quotation marks omitted); *Nurse*, 226 F.3d at 1001 ("[T]he challenged decision need not actually be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis."); *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1028 (9th Cir. 1989) (the government need not "prove that it considered these factors and made a conscious decision on the basis of them").[3]

Here, Plaintiffs do not and cannot directly challenge the decision to hold them in immigration detention in light of the federal law expressly authorizing – indeed mandating – their detention.  This is particularly so considering that at the time of their attempted entries and resulting detentions, DHS was operating under an Executive Order to fully exercise its detention authority.   Indeed, courts have recognized that "border-control policies are of crucial importance to the national security and foreign policy of the United States."  *United States v. Delgado-Garcia*, 374 F.3d 1337, 1345 (D.C. Cir. 2004).

Nonetheless, Plaintiffs seek to challenge the effect of the government's decision to detain them – that is, the separation from their children after Plaintiffs were placed in adult detention.  Of course, for those Plaintiffs who were held in criminal custody pending

---

[3] *See also Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (discretionary function exception applies where there are allegations of "malicious and bad faith conduct" because "subjective intent is irrelevant to our analysis"); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124 (10th Cir. 1999) ("FTCA claims are not vehicles to second-guess policymaking.  That principle requires a federal court to dismiss an FTCA claim if jurisdiction is so dependent on allegations about government officials' intent or decisionmaking process that resolving the claim would require judicial inquiry into those subjective matters.").

14

criminal charges or while serving a criminal sentence, their children could not be detained with them for that period.[4]  Furthermore, as explained above, the *Flores* Agreement does not allow children to be detained in adult facilities with their parents; nor does it require release of a parent in order to preserve "family integrity" or mandate the transfer of the adult along with the child to an ICE family residential center (of which there are only a limited number).[5]  Accordingly, once the decision is made to detain an adult alien in a secure detention facility, as with other instances of pre-trial detention, separation of that adult from a child with whom he or she crossed the border is required.[6]

---

[4] *See Olim v. Wakinekona*, 461 U.S. 238, 247-48 n.8 (1983) (interstate transfer of criminal detainee does not violate any due process right, even if transfer leaves detainee separated hundreds of miles from family); *Southerland v. Thigpen*, 784 F.2d 713, 717 (5th Cir. 1986) ("The considerations that underlie our penal system justify the separation of prisoners from their spouses and children and necessitate the curtailment of many parental rights that otherwise would be protected."); *White v. Pazin,* No. 112-CV-00917, 2016 WL 6124234, at *6 (E.D. Cal. Oct. 19, 2016) (there is not "any clearly established right protecting an inmate from policies banning visitations with his minor children"); *see also Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) ("We consider a person detained for deportation to be the equivalent of a pretrial detainee."); *Payne-Barahana v. Gonzales*, 474 F.3d 1, 3 (1st Cir. 2007) ("If there were such a right [to challenge a parent's valid deportation], it is difficult to see why children would not also have a constitutional right to object to a parent being sent to prison or, during periods when the draft laws are in effect, to the conscription of a parent for prolonged and dangerous military service.").

[5] Paragraph 14 of the *Flores* Agreement lists to whom a minor can be released "from [DHS] custody."  Further, paragraph 21 of the *Flores* Agreement governs when minors can be held in secure detention.  Minors not described in paragraph 21 may not be held in a secure detention facility for any period of time.  Moreover, minors subject to secure detention pursuant to paragraph 21 are not held in secure adult detention facilities.

[6] The statutory UAC definition is a broad one that includes circumstances where a parent is physically present but nevertheless unavailable to provide care and physical custody.  6 U.S.C. § 279(g)(2); *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016).  Of course, a parent who is detained in criminal custody or secure detention pending removal proceedings is no longer available to provide care and physical custody.  In any event, the *Flores* Agreement precludes detention of minors in secure detention facility, absent circumstances not alleged here, and under no circumstances in secure adult detention.  Rather, under *Flores*, "[DHS] must transfer the minor to a non-secure, licensed facility."  828 F.3d at 902-03; *see also Bunikyte*, 2007 WL 1074070 at *16 (to comply with the *Flores* Agreement, DHS must "releas[e] the children to adult relatives not in custody, adult friends designated by their parents, or even state-operated foster care[.]").  Thus, separation occurs regardless of the UAC designation.

Such determinations regarding where to place detainees – including, of course, the decision to detain adults in a secure detention facility – involve precisely the sort of discretionary decision-making that is shielded by the FTCA. The federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1).[7] "Congress has placed the responsibility of determining where aliens are detained *within the discretion* of the [Secretary]." *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added).[8] Indeed, decisions relating to aliens, including placement and detention, are so "vitally and intricately interwoven with contemporaneous policies [and] so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Id.* (quoting *Hampton v. Mow Sung Wong*, 426 U.S. 88 (1976)); *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) ("[T]he decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the [Secretary] and implicates issues of foreign policy.").[9] This policy-based discretion necessarily entails decisions regarding with whom

---

[7]   Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" are now read to mean the Secretary of DHS. *See Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

[8] *See also Gandarillas- Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

[9] *See also Cohen v. United States,* 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions regarding where to place prisoners are policy-based decisions protected by the discretionary function exception); *Bailor v. Salvation Army,* 51 F.3d 678, 685 (7th Cir. 1995) (decisions regarding whether to detain or release are policy-based decisions

aliens are detained, including decisions regarding whether adults and minors can be detained in the same facility and whether to detain family members together. *See Peña Arita v. United States*, -- F. Supp. 3d --, 2020 WL 3542256, at *7 (S.D. Tex. June 30, 2020) (holding that decisions made in the field by DHS to separate family members are policy-based decisions protected by the discretionary function exception).

When, as here, children are involved, there are additional policy considerations to take into account, including considerations of child welfare and safety and the type of setting appropriate for children.  In particular, children are to be placed "in the least restrictive setting appropriate to the juvenile's age and special needs . . . ."  6 C.F.R. § 115.14(a); *see also Walding v. United States*, 955 F. Supp. 2d 759, 771-72 (W.D. Tex. 2013) ("It is clear that the ultimate choice of facility for housing unaccompanied alien children is a decision vested with policy considerations.").

In determining the applicability of the discretionary function exception, the court need only look at the nature of the conduct or decision at issue from a general and objective perspective.  *See Gonzalez*, 814 F.3d at 1032.  Nevertheless, the particular circumstances herein further highlight the policy-based, discretionary nature of the detention placement decisions. *See supra* at 8-11 (citing Exhibit A).  In particular, factors such as a history of criminal immigration violations, criminal charges in one's country of origin, and re-entry attempts despite being subject to a prior removal order, are all factors

---

protected by the discretionary function exception); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("assignment to particular institutions or units. . . must be viewed as falling within the discretionary function exception to the FTCA").

that may directly inform decisions regarding appropriate places of detention, including decisions regarding whether it would be appropriate to detain such adult aliens with children or other families.

Plaintiffs cannot circumvent the discretionary function exception simply by alleging that the separation violated their constitutional rights, including the right to family integrity.  Am. Comp. ¶ 79.[10]   Indeed, in *Nurse*, the Ninth Circuit expressly left open the possibility that the discretionary function exception applies when the constitutional provision at issue does not proscribe a specific course of conduct:

> In reaching this conclusion, we do not make any decision regarding *the level of specificity* with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor.  We hold only that the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply.

*Nurse*, 226 F.3d at 1002 n.2 (emphasis added); *see also Fazaga v. Fed. Bureau of Investigation,* 916 F.3d 1202, 1251 (9th Cir. 2019) ("[I]f the district court instead determines that Defendants did violate a *nondiscretionary* federal constitutional . . . *directive*, the FTCA claims may be able to proceed to that degree.") (emphasis added).[11]

---

[10] In *C.M. v. United States*, which also involved claims arising out of family separations at the border, the court held that the plaintiffs "plausibly alleged that the government's separation of their families violated their constitutional rights, which is not shielded by the discretionary function exception." No. 19-052172, 2020 WL 1698191, *4 (D. Ariz. March 30, 2020).  However, the court did not address the specific arguments raised herein.  Nor did the court address the applicability of the discretionary function exception to the specific circumstances present here regarding criminal and immigration histories.

[11] *Accord Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005) (holding that Eighth Amendment's prohibition against cruel and unusual punishment did not define a course of action "specific enough to render the discretionary function exception inapplicable").  Further, the Ninth Circuit has yet to address whether the discretionary function exception applies to alleged violations of the Fifth Amendment's right to substantive due process, as neither *Nurse* nor *Fazaga* involved allegations of such violations.

18

Plaintiffs fail to allege the violation of any constitutional provision with the requisite degree of specificity.  In particular, a violation of the right to substantive due process turns on whether the conduct at issue "shocks the conscience" – a standard "which is not subject to a rigid list of established elements."  *See Ms. L. v. ICE*, 310 F. Supp. 3d 1133, 1142-43 (S.D. Cal. 2018) (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)).  "On the contrary, an investigation into substantive due process involves an appraisal of the totality of the circumstances rather than a formalistic examination of fixed elements[.]"  *Id.* (quoting *Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998)).  Nor can Plaintiffs' allegation that the separations violated the Equal Protection Clause defeat the discretionary function exception, as that constitutional provision also lacks the requisite level of specificity.

In any event, a substantive due process right to family integrity while in immigration detention was not "clearly established" at the time of Plaintiffs' separations.  The Supreme Court has long recognized that conduct may be discretionary even if it is later determined to have violated the Constitution.  The common law doctrine of official immunity thus applies to the exercise of "discretionary functions" even when conduct violates the Constitution, as long as the constitutional right was not defined sufficiently so that the official should have known the act was prohibited.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").  Accordingly, whether, in retrospect, the separations at issue here

19

violated such a right has no bearing on the application of the discretionary function exception. What is relevant is whether such a right was clearly established at the time of the challenged conduct. *See Denson v. United States*, 574 F.3d 1318, 1137-38 (11th Cir. 2009) (allegations of constitutional violations do not defeat discretionary function exception unless evidence is sufficient to establish a *Bivens* claim based on that same conduct, which requires a showing the constitutional right was clearly established); *Castro v. United States*, 560 F.3d 381, 394 (5th Cir. 2009) (Smith, J., dissenting), 608 F.3d 266 (5th Cir. 2010) (en banc) (panel opinion vacated and district court decision affirmed), cert denied, 562 U.S. 1168 (2011) (it would "turn[] *Bivens* on its head" to conclude that "the United States may be liable for conduct even where its officers cannot be.").

Here, at the time of the separations, there was no case law clearly establishing a due process right to family integrity while in immigration detention. *See Dominguez-Portillo*, 2018 WL 315759, at *6 (noting "lack of clearly established parental rights in these circumstances and under case law"). To the contrary, there was case law rejecting such a right, and indeed, such a right in the context of immigration detention still is not clearly established. *See Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019) ("[W]e . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal.").[12]

---

[12] *See also Aguilar v. ICE*, 510 F.3d 1, 22 (1st Cir. 2007) (rejecting the notion of a due process right to family visitation in immigration detention); *Marin-Garcia Holder*, 647 F.3d 666, 674 (7th Cir. 2011) ("nothing in the Constitution prohibits" separation of citizen children from parents when parents deported); *Payne-Barahana*, 474 F.3d at 2 & n.1 ("The circuits that have addressed the constitutional issue (under varying incarnations of the immigration laws and in varying procedural postures) have uniformly held that a parent's otherwise valid deportation does not violate a child's constitutional right.").

Moreover, in addition to the physical separations themselves, the discretionary function exception also bars any ancillary claims related to the alleged family separations. *See Ostera v. United States*, 769 F.2d 716, 718 (11th Cir. 1985) (claims that are "inextricably tied" to conduct protected by section 2680(a) are also barred); *Sloan v. H.U.D.*, 236 F.3d 756, 762 (D.C. Cir. 2001) (same).  Thus, allegations that Plaintiffs were unable to adequately communicate with their children after separation, Am. Compl. ¶¶ 71-72, 86, 99, 118, that there were inadequacies in the various computer systems and databases utilized to track separated family members to facilitate communications, Am. Compl. ¶¶ 230-232, or that some Plaintiffs were separated from their children through removal to their country of origin, Am. Compl. ¶¶ 7, 88, 109, 121, are all inextricably linked to the discretionary decision to separate them.

Indeed, even outside the context of family separation, such claims would be independently barred by the discretionary function exception.  Decisions regarding when, with which frequency, and the means to afford communication between adult aliens in secure immigration detention and their children or caretakers necessarily involves balancing various policy considerations, including accessibility and cost of communications, staffing and resource allocation at the secured detention facilities in

---

To the extent Plaintiffs maintain that the putative right to family integrity required their release so as to avoid separation from their children, such argument further fails because no such right required their release.  *See W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1133 (N.D. Ill. 2018) (there is no authority for "the proposition that the substantive due process to family integrity dictates release of the parents (as distinct from reunification).");  *Ms. L v. ICE*, 302 F. Supp. 3d 1149, 1159 n.3 (C.D. Cal. 2018) (plaintiffs did not challenge the decision to detain adult aliens while in removal proceedings for the "sound reasons" that the law calls for mandatory detention with parole in strictly limited circumstances).

21

order to facilitate such calls, the children's placement sites, and parents and children's respective responses to communications. *See Wolfish v. Levi*, 573 F.2d 118, 126 (2d Cir. 1978) ("[T]o require the [prison] to return to court whenever it seeks to make any change, however minor, in its telephone service, would place great strains on overburdened federal judges and would, in essence, preempt the role of prison officials."), *rev'd on other grounds, Bell v. Wolfish*, 441 U.S. 520 (1979); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

Likewise, an agency's decisions regarding the design and maintenance of its computer systems and databases (including databases used to track family members DHS has separated) is a policy-based discretionary function involving, among other things, considerations of how to "allocate resources among various objectives." *Cruz v. United States*, 684 F. Supp. 2d 217, 224 (D.P.R. 2010) (dismissing claim that VA negligently designed and maintained inadequate computer systems and safeguards); *see also Molchatsky v. United States*, 778 F. Supp. 2d 421, 433 (S.D.N.Y. 2011) (exception barred claims relating to the SEC's "case-management system" and "administrative protocols"), aff'd 713 F.3d 159 (2d Cir. 2013); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database system that failed to reveal immigration status is protected by discretionary function exception); *Smith v. United States*, No. 11-cv-00616,

2014 WL 4638918, *4 (S.D. Ohio Sept. 16, 2014) (design of computer system involved balancing user needs with limited resources and thus was shielded by exception).[13]

Indeed, courts have held more generally that conditions of confinement at detention facilities are subject to discretionary decision-making involving numerous policy considerations and thus are barred by the discretionary function exception. *See Antonelli v. Crow*, No. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, barred by discretionary function exception); *Lineberry v. United States*, No. 3:08-cv-0597, 2009 WL 763052, at *3 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception").

Finally, insofar as certain Plaintiffs base their claims on their removal to their country of origin without their children, the discretionary function exception bars such claims as well.[14]  DHS has broad prosecutorial discretion to arrest aliens and commence deportation proceedings. *See Medina v. United States*, 259 F.3d 220, 229 (4th Cir. 2001) (decisions to initiate deportation proceedings is the type of agency conduct Congress intended to immunize in the discretionary function exception); *accord Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999) (under Section 1252(g),

---

[13] In addition, because Plaintiffs do not allege that these alleged deficiencies caused their separation or hindered their reunification, such alleged tracking failures cannot form the basis of any valid claim for relief.

[14] In particular, Plaintiffs Jacinto, Lorena, and Jairo allege they were removed from the United States without their children.  Am. Compl. ¶¶ 7, 88, 109, 121.  Plaintiffs concede, however, that they consented to their removal.  Insofar as Plaintiffs allege that their consent was procured by misrepresentations or deceit on the part of government, any claim based upon such conduct is barred by the misrepresentation exception to the FTCA. 28 U.S.C. § 2680(h).  *See infra*.

23

decisions regarding whether and when to commence removal proceedings is protected from judicial review); *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) (same).

## II.    Plaintiffs' Claims Are Barred By The Due Care Exception

Plaintiffs' claims also are barred by the FTCA's "due care exception," which bars "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a).  Among other things, this exception "bars tests by tort action of the legality of statutes and regulations."  *Dalehite v. United States*, 346 U.S. 15, 33 (1953).  The "Tort Claims Act did not contemplate that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort.  Nor did it contemplate a remedy for damages sustained by reason of the application of invalid laws or regulations."  *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957) (citation and internal quotation marks omitted).  *See also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (due care exception barred claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective").

Accordingly, where a government employee's actions are authorized by statute or regulation, the due care exception applies and the claim must be dismissed for lack of

subject matter jurisdiction.  *See Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985) (due care exception barred claim based on exercise of authority in statute, which provided that the Secretary of the Interior was "authorized, in his discretion, to transfer . . . the care, operation, and maintenance of all or any part of the project works, subject to such rules and regulations as he may prescribe").[15]

Here, the due care exception applies because the government plainly had the statutory authority to determine whether and where to detain Plaintiffs after they entered the country illegally, *see* 8 U.S.C. §§ 1225, 1226(a), 1231(g)(1), as well as the authority to place Plaintiffs' children in the custody and care of ORR, *see* 6 U.S.C. §§ 1232(b)(3), 1232(c)(2)(A), 8 U.S.C. § 279(g).  Indeed, the transfers to HHS were expressly mandated by the TVPRA once the children were designated as UACs.  Thus, the separations resulting from the execution of these statutes is not compensable.  *See Dupree*, 247 F.2d at 824 ("Where government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]"); *Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim arising out of "the enforcement of 'rules and regulations'" barred by due care exception).

---

[15] *See also Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950) (landowners' claims were barred by the due care exception because the claims arose out of the government's execution of the Migratory Bird Treaty Act, 16 U.S.C.A., § 703 *et seq.*, which "provides that the Secretary of Interior is authorized and directed to determine when, to what extent if at all, and by what means it is compatible with the terms of the conventions between the United States, Great Britain and the United Mexican States to allow hunting and killing of migratory birds."); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979) (applying due care exception to claim based on the FDIC's execution of 12 U.S.C. § 1823(e), pursuant to which the "FDIC was authorized to enter into purchase and assumption agreements with respect to the assets of failing or closed banks").

**III.    Plaintiffs' Constitutional Tort Claims Are Not Actionable Under the FTCA**

Plaintiffs' claims further fail because the FTCA does not authorize constitutional tort claims like those Plaintiffs bring here.  The FTCA requires a plaintiff to allege "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.

Accordingly, while the FTCA provides a limited waiver of sovereign immunity that authorizes suits against the United States for certain state law tort claims of the sort that could be brought against a private citizen, the Supreme Court has held that the FTCA does not provide a cause of action for torts involving alleged constitutional violations by the government.  *Meyer*, 510 U.S. at 477.  As the Supreme Court explained in *Meyer*, a claim is actionable under the FTCA only if the United States would be liable as a "'private person'" "'in accordance with the law of the place where the act or omission occurred.'"  *Id.* (quoting 28 U.S.C. § 1346(b)).  "A constitutional tort claim . . . could not contain such an allegation."  *Id.* at 477-78.  This is because, as the Supreme Court observed, the Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State – the source of substantive liability under the FTCA."  *Id.* at 478.  "By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right."  *Id.*  Accordingly, "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."  *Id.*;

26

1   *Roundtree v. United States,* 40 F.3d 1036, 1038 (9th Cir. 1994) ("[T]he United States

2   cannot be sued on the theory that there has been a violation of [plaintiff]'s constitutional

3   rights.").

4          Although Plaintiffs label their claims as claims for IIED, negligence, and loss of

5   consortium, the Amended Complaint demonstrates that these claims are based on alleged

6   constitutional violations.  In particular, Plaintiffs allege that federal officers performed

7   their federal duties and executed federal law in a manner that violated the constitutional

8   right to due process and equal protection, *see* Am. Compl. ¶¶ 17, 54, 150, and it is these

9   same alleged constitutional violations that form the basis of Plaintiffs' FTCA claims.  *Cf.*

10  *Linder v. United States*, 937 F.3d 1087, 1091 (7th Cir. 2019) (affirming dismissal of

11  claims for IIED and malicious prosecution on grounds that FTCA is "a means to seek

12  damages for common-law torts, *without regard to constitutional theories*") (emphasis

13  added).  In particular, this principle has been recognized and applied in the family

14  separation context to dismiss similar claims.  *See Peña-Arita* , 2020 WL 3542256 at *8

15  (granting motion to dismiss claims based on alleged family separation at the border,

16  holding among other things, that insofar as plaintiff asserted the "Constitution itself

17  furnishes a nondiscretionary standard . . . such claim is entirely jurisdictionally barred.").

18  Plaintiffs cannot escape the true nature of their claims simply be relabeling them as state

19  law tort claims.  *See Delta Sav. Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2001)

20  (rejecting attempt to label violations of federal statutes as state law tort claims as "an

21  attempt to do an 'end around' the local law requirements of the FTCA"); *Hornbeck*

22  *Offshore Transp., LLC v. United States*, 569 F.3d 506, 509 (D.C. Cir. 2009) (a plaintiff

cannot establish subject matter jurisdiction under the FTCA by "merely re-label[ing] a violation of a federal statute as common law claims."); *JBP Acquisitions, LP v. United States*, 224 F.3d 1260, 1265 (11th Cir. 2000) (jurisdiction depends on "the substance of the claim and not the language used in stating it").[16]

## IV.    Plaintiffs' Claims Are Not Actionable Under The FTCA Because There Is No Private Person Analog

Plaintiffs' claims further fail because the government's immigration actions that Plaintiffs attack have no private person analog.  The FTCA requires a plaintiff to allege "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.

Accordingly, the FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] in the performance of activities which private persons do not perform." *United States v. Olson*, 546 U.S. 43, 46 (2005) (internal quotations omitted).  The FTCA

---

[16] Additionally, claims based upon conditions of confinement have been recognized as more properly characterized as a "'[c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement. . . [and] the United States is not vicariously liable for constitutional torts of its officials since the United States has not waived sovereign immunity from such actions.'" *Aguilar v. United States*, No. 1:16-048, 2017 WL 6034652, at *4 (S.D. Tex. June 7, 2017) (dismissing allegations regarding food, crowding, and sanitation at CBP detention facility); *Thompson v. United States*, No. 1:14–0894, 2015 WL 5567934, at *2 (M.D. Pa. Sept. 21, 2015) (condition of confinement claim is constitutional claim that cannot be brought under FTCA); *Sutter v. United States*, No. 17-07245, 2019 WL 1841905, at * 4 (C.D. Cal. March 12, 2019) ("[E]ven though Plaintiff attempts to cloak his claims in terms of negligence, his [conditions of confinement] claims are constitutional tort claims and as such are not cognizable under the FTCA.") (citations omitted).

does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law."  *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotes omitted).

Because only the federal government has the authority to enforce federal criminal and immigration laws and make determinations concerning detention, there is no private person analog that would support a claim under the FTCA.  The alleged harms here stem from the federal government's decision to enforce federal immigration laws and hold Plaintiffs in secure adult detention pending their immigration proceedings, rendering the children "unaccompanied" and resulting in their placement in the care and custody of ORR.  The United States has not waived its sovereign immunity for such decisions to enforce federal law because such decisions have no private person counterpart.  *See Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision regarding whether to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action).

Indeed, courts have repeatedly held that various governmental immigration decisions have no private person counterpart and thus cannot be the basis for a claim under the FTCA.  *See, e.g., Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be

dismissed as well."); *Elgamal v. United States*, No. 13-00967, 2015 WL 13648070, at *5

(D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently

governmental function"); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill.

1997) (in matters relating to naturalization of aliens, "only the United States has the power

to act," and, "[a]ccordingly . . . there is no private analog under state law"); *Omoniyi v.

Dep't of Homeland Sec.*, No. 10-cv-1344 (DF), 2012 WL 892197, at *9 (S.D.N.Y. Mar.

13, 2012) ("[T]he alleged misconduct of CIS in initially denying Plaintiffs [sic]

naturalization application has no private analog and thus cannot be redressed under the

FTCA.").

The Second Circuit's decision in *Akutowicz v. United States* is instructive. 859

F.2d 1122, 1125-26 (2d Cir. 1988). There, the court rejected the plaintiff's FTCA suit

challenging the Department of State's wrongful revocation of his U.S. citizenship on the

ground that there was no private person analog. The court observed that, "for liability to

rise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of

action against a private citizen' recognized in the jurisdiction where the tort occurred." *Id.*

at 1125. The court concluded that there was no such "comparable" action against a private

citizen: "[Q]uasi-legislative or quasi-adjudicative action by an agency of the federal

government is action of the type that private persons could not engage in and hence could

not be liable for under local law." *Id.* The fact that the State Department allegedly erred

in the interpretation and application of the pertinent provisions of the INA was not

relevant. The Second Circuit held that "the withdrawal of a person's citizenship

constitutes a quasi-adjudicative action for which no private analog exists." *Id.* at 1126.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The same is true here where the federal government's detention decisions are ones that no private actor could make: "Private persons cannot establish facilities to detain other persons – only the government can, either on its own or through a government contractor." *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016).  Accordingly, Plaintiffs claims should be dismissed as well.  *See id.* (wrongful confinement claim brought by federal prisoner moved from halfway house to special housing unit in a detention facility not cognizable under the FTCA because decisions relating to location and conditions of detention cannot be made by private persons).

There likewise is no private analog for the removal of certain Plaintiffs to their countries of origin without their children.  These Plaintiffs do not contend – nor could they – that they were not removable under applicable federal law.  Rather, they complain that they were removed alone.  However, just as there is no private analog for decisions regarding where and with whom one is detained, there likewise is no private analog for decisions regarding when and with whom an adult alien is removed, as removing aliens to their countries of origin pursuant to federal immigration law is a function private persons do not and cannot perform. *See Ryan v. U.S. Immigration & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("[A] private party cannot initiate proceedings to remove a noncitizen from the country. Nor does removal remotely resemble any type of civil remedy available to private litigants.").

## V.   Plaintiffs' Claims Relating To Their Removals Are Barred By the Misrepresentation Exception

Claims brought by Plaintiffs alleging separation by removal are further barred by an independent FTCA exception.  Plaintiff Lorena alleges that in consenting to removal, she

31

"rel[ied] on this false representation" that consenting to removal was the only path to reunification with her daughter.  Am. Comp. ¶ 88.  Plaintiff Jacinto alleges that he was "deceived by ICE officials into agreeing to removal."  Am. Compl. ¶ 120.  Insofar as Plaintiffs' claims are based upon these alleged misrepresentations, such claims are barred by the misrepresentation exception of the FTCA, which bars "[a]ny claim arising out of . . . misrepresentation [or] deceit[.]"  28 U.S.C. 2680(h).

The misrepresentation exception "covers both claims of negligent misrepresentation and claims of fraudulent misrepresentation."  *Pauly v. U.S. Dep't of Agriculture,* 348 F.3d 1143, 1151 (9th Cir. 2003) (citing *United States v. Neustadt*, 366 U.S. 696, 702 (1961)).  As relevant here, the Ninth Circuit has expressly held that this exception applies to claims where the plaintiffs alleged that they were fraudulently induced into an agreement.  *Id*. at 1151 (claims by farmers who were fraudulently induced into an agreement fell squarely within the misrepresentation exception because "the injuries they claim are entirely the result of allegedly inaccurate information provided by [the Government employee], either by design (fraud) or by inadvertence (negligent misrepresentation)."); *see also Esrey v. United States*, 707 Fed App'x 749, 750 (2d Cir. 2018) (claim barred by misrepresentation exception where IRS allegedly concealed information from plaintiff).

**VI.    Plaintiffs' Claims Are Not Actionable Under Arizona Law**

Plaintiffs' claims independently should be dismissed because they arise from their lawful detention and are therefore barred by applicable state law.  Several Plaintiffs, for example, allege that their separations occurred in Arizona.  *See* Am. Compl. ¶¶ 1, 62, 79, 103.  However, under Arizona law, as in other states, a person has not suffered a legally

cognizable injury when the alleged harm flows from a lawful detention, because that

person has suffered no injury distinct from the consequences of his lawful confinement.

*Muscat v. Creative Innervisions LLC*, 244 Ariz. 194, 198 (Ct. App. 2017) ("No properly-

convicted criminal has a legally protected interest in being free from the inherent

consequences of the resulting sentence[,]" and "recognizing the legal consequences of a

ward's criminal conduct as a legally cognizable injury would distort the long-established

public policy of personal accountability for criminal behavior.").[17]

 *Muscat* bears directly on the claims of those Plaintiffs who crossed into the United

States in criminal violation of federal immigration law, and, consequently, were detained.

As a direct consequence, their minor children were separated from them pursuant to the

dictates of federal statutes.  Plaintiffs admit that the separations caused their harms.  The

alleged harms here were a direct consequence of Plaintiffs' unlawful conduct; thus, no

cognizable injury exists under state law.

## VII. Venue Is Not Proper In This District

 Finally, venue is not proper in this district.  A plaintiff has the burden of

demonstrating that venue is proper.  *See, e.g., Piedmont Label Co. v. Sun Garden Packing

Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  In deciding whether venue is proper, the court

---

[17] Similarly, in Texas, recovery in tort is barred where the plaintiff's criminal act contributed to his or her injury.  *See Saks v. Sawtelle, Goode, Davidson & Troilo*, 880 S.W.2d 466, 470 (Tex. App. 1994) ("[P]ublic policy bars recovery for injuries arising from a knowing and willful crime"); *Ward v. Emmett*, 37 S.W.3d 500, 502 (Tex. App. 2001); ("Courts ... have used this rule, along with public policy principles, to prevent a plaintiff from recovering damages that arose out of his or her own illegal conduct."); *Dover v. Baker, Brown, Sharman & Parker*, 859 S.W.2d 441, 451 (Tex. App. 1993) (the plaintiff's claims were barred because his illegal conduct was "inextricably intertwined with [his] claims," and that his "illegal act contributed to his injury.").

1    may consider facts outside the pleadings and need not accept the pleadings as true.  *Kukje*

2    *Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir. 2005).  If venue is

3    improper, the court may dismiss the action or, "if it be in the interest of justice," may

4    transfer the case "to any district or division in which it could have been brought."  28

5    U.S.C. § 1406(a).  Whether to dismiss for improper venue, or alternatively to transfer

6    venue to a proper court, is a matter within the sound discretion of the district court.  *See,*

7    *e.g., King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

8         Pursuant to 28 U.S.C. § 1402(b), an FTCA claim "may be prosecuted only in the

9    judicial district where the plaintiff resides or wherein the act or omission complained of

10   occurred."  Plaintiffs allege that venue is proper in this district because it is where the acts

11   and omissions complained of occurred.  Am. Compl. ¶ 47.   However, insofar as the acts

12   of which Plaintiffs complain were by officials at the "highest levels" of government who

13   "conspired" with each other to plan and order "widespread family separations," Am.

14   Comp. ¶¶ 8, 9, the Amended Complaint contains no allegations that such acts occurred in

15   this district.  Thus, Plaintiffs have not established that venue is proper in this district based

16   on the development of an alleged family separation policy or plan.

17        Further, to the extent that Plaintiffs seek to establish venue in this district based on

18   where their particular separations took place, two Plaintiffs – Jorge, on his own behalf and

19   on behalf of his daughter Diana, and Jacinto, on his own behalf and on behalf of his son

20   Andres – cannot do so.  These particular Plaintiffs do not allege that their separations

21   occurred in Arizona.  In fact, their apprehensions and separations occurred in Texas.  *See*

22   Exhibit A, Attachments 3 and 5.   Thus, none of the acts or omissions complained of by

1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  17  18  19  20  21  22  23  24  25  26  27  28

34

these Plaintiffs occurred in this district.  Accordingly, for them venue is improper under 28 U.S.C. § 1402(b).

Moreover, because venue is improper for these particular Plaintiffs, venue is improper for all Plaintiffs.  Where, as here, multiple plaintiffs join together to bring an action under the FTCA, § 1402(b) allows the action to be brought in the judicial district only where all the plaintiffs reside, or where the act or omission complained of by all Plaintiffs occurred.  *See Richards v. United States*, 369 U.S. 1, 12 n.25 (1962) ("[Section 1402(b)], allow[s] suit to be brought where all the plaintiffs reside as well as where the act or omission occurred."); *Smith v. Lyon*, 133 U.S. 315, 318 (1890) (venue must be proper as to each party); *see also Favereau v. United Sta*tes, 44 F. Supp. 2d 68, 69 (D. Me. 1999) (similarly-worded venue requirement for suits under Little Tucker Act must be satisfied with respect to each plaintiff); *Davila v. Weinberger*, 600 F. Supp. 599 (D. D.C. 1985) (same); *Andrade v. Chojnacki*, 934 F. Supp. 817, 829 n.24 (S.D. Tex. 1996) (noting that operative language of § 1402(b) – "wherein the act or omission occurred" – suggests that when premised on this ground, venue is proper in only one district).

## **CONCLUSION**

For the foregoing reasons, this action must be dismissed.

Dated: November 23, 2020                    Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

DOUGLAS G. SMITH
Deputy Assistant Attorney General, Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch

35

1
2
3
4
5
6
7
8

_s/Phil MacWilliams_
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for United States of America

9
10

**CERTIFICATE OF SERVICE**

11          I hereby certify that on November 23, 2020, I electronically transmitted the attached

12  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

13  Notice of Electronic Filing to all CM/ECF registrants.

14
15  _s/ Phil MacWilliams_
PHILIP D. MACWILLIAMS
Attorney for United States of America

16
17
18
19
20
21
22
23
24
25
26
27
28