Jacqueline P. Rubin (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Lee Gelernt (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660

Attorneys for Plaintiffs

*(Additional Counsel for Plaintiffs Listed on Signature Page)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A.I.I.L., et al., | No. 4:19-cv-00481-TUC-JCH |
| Plaintiffs, | |
| - v - | **PLAINTIFFS' OPPOSITION TO THE UNITED STATES OF AMERICA'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| Jefferson Beauregard Sessions III, et al., | |
| Defendants. | **Oral Argument Requested** |
| | Assigned to the Hon. John C. Hinderaker |

# TABLE OF CONTENTS

PAGE

I. PRELIMINARY STATEMENT ............................................................................. 1

II. BACKGROUND ................................................................................................ 3

III. STANDARD OF REVIEW ................................................................................ 6

IV. ARGUMENT ..................................................................................................... 7

    A. The Discretionary Function Exception Does Not Shield the Government's Actions ........................................................................ 7

        1. The Discretionary Function Exception Does Not Apply Because the Government's Misconduct Violated the Constitution .................................................................................. 7

        2. Federal Officials Violated Numerous Other Nondiscretionary Duties in Addition to Their Constitutional Violations ..................... 11

        3. Government's Misconduct Was Not Based on Policy Considerations That the FTCA Intended to Shield ......................... 14

    B. The Due Care Exception Does Not Apply ................................................. 16

    C. The Government's Misconduct Is Analogous to Private Tortious Conduct Actionable Under Arizona Law ..................................................... 20

        1. The United States' Conduct Has Private Analogues Under Arizona Law ..................................................................................... 21

        2. A "Governmental Action" Exception Does Not Shield the United States from FTCA Liability for Plaintiffs' Injuries ............. 23

    D. The Misrepresentation Exception Does Not Apply .................................... 26

    E. Plaintiffs' FTCA Claims Are Not Constitutional Torts ............................. 28

    F. Venue Is Proper in this District .................................................................. 31

V. CONCLUSION ................................................................................................... 35

# TABLE OF AUTHORITIES

**CASES**                                                    **PAGE(S)**

*A.P.F.* v. *United States*,
  No. 20-CV-00065, Dkt. 36 (D. Ariz. July 27, 2020) ............................................ *passim*

*Akutowicz* v. *United States*,
  859 F.2d 1122 (2d Cir. 1988) ................................................................... 25

*Andrade* v. *Chojnacki*,
  934 F. Supp. 817 (S.D. Tex. 1996) ........................................................ 32, 34

*ARCO Envtl. Remediation, L.L.C.* v. *Dep't of Health & Envtl. Quality of Mont.*,
  213 F.3d 1108 (9th Cir. 2000) .............................................................. 28

*Baires* v. *United States*,
  No. 09-05171, 2011 WL 1743224 (N.D. Cal. May 6, 2011) ...................................... 12

*Bartel* v. *F.A.A.*,
  617 F. Supp. 190 (D.D.C. 1985) ........................................................... 33, 34

*Beattie* v. *United States*,
  756 F.2d 91 (D.C. Cir. 1984) ................................................................ 33

*Berkovitz by Berkovitz* v. *United States*,
  486 U.S. 531 (1988) ...................................................................... 11, 14

*Bhuiyan* v. *United States*,
  772 F. App'x 564 (9th Cir. 2019) ............................................................ 25

*Bickler* v. *Senior Lifestyle Corp.*,
  No. CV-09-00726, 2010 WL 2292985 (D. Ariz. June 8, 2010) ........................... 22, 23

*Block* v. *Neal*,
  460 U.S. 289 (1983) ........................................................................ 28

*Borquez* v. *United States*,
  773 F.2d 1050 (9th Cir. 1985) ............................................................ 18, 19

*C.M.* v. *United States*,
  No. 19-CV-05217, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ........................ *passim*

*Carlson* v. *Green*,
  446 U.S. 14 (1980) ......................................................................... 29

*Castro* v. *United States*,
    608 F.3d 266 (5th Cir. 2010) .................................................................................. 10

*Chehade Refai* v. *Lazaro*,
    614 F. Supp. 2d 1103 (D. Nev. 2009) ..................................................................... 12

*Chen* v. *United States*,
    854 F.2d 622 (2d Cir. 1988) ................................................................................... 24

*Coulthurts* v. *United States*,
    214 F.3d 106 (2d Cir. 2000) ................................................................................... 15

*Davis* v. *United States*,
    No. EDCV 07-481, 2009 WL 10674302 (C.D. Cal. Sept. 4, 2009) ............................ 9

*Delta Savings Bank* v. *United States*,
    265 F.3d 1017 (9th Cir. 2001) ................................................................................ 30

*Denson* v. *United States*,
    574 F.3d 1318 (11th Cir. 2009) .............................................................................. 10

*Dietzmann* v. *City of Homer*,
    No. 3:09-cv-00019, 2010 WL 4684043 (D. Alaska Nov. 17, 2010) ........................... 9

*Dobek* v. *Wal-Mart Stores, Inc.*,
    No. CIV 03-297, 2007 WL 2069832 (D. Ariz. July 17, 2007) ................................... 22

*Dugard* v. *United States*,
    835 F.3d 915 (9th Cir. 2016) ................................................................. 20, 23, 24

*Elgamal* v. *United States*,
    No. CV-13-00867, 2015 WL 13648070 (D. Ariz. July 8, 2015) ............................... 24

*Estate of Smith* v. *Shartle*,
    No. CV-18-00323, 2020 WL 1158552 (D. Ariz. Mar. 10, 2020) .............................. 22

*Faber* v. *United States*,
    56 F.3d 1122 (9th Cir. 1995) .................................................................................. 11

*Fazaga* v. *F.B.I.*,
    965 F.3d 1015 (9th Cir. 2020) .............................................................................. 7, 9

*Flores* v. *Sessions*,
    No. CV 85-4544, 2018 WL 4945000 (C.D. Cal. July 9, 2018) ................................. 13

*Forest* v. *United States*,
    539 F. Supp. 171 (D. Mont. 1982) ..................................................................... 32, 33

*Franz* v. *United States,*
591 F. Supp. 374 (D.D.C. 1984) ................................................................. 31

*Galvin* v. *Hay,*
374 F.3d 739 (9th Cir. 2004) ...................................................................... 9

*United States* v. *Gaubert,*
499 U.S. 315 (1991) ............................................................................ 7, 11

*Goldlawr, Inc.* v. *Heiman,*
369 U.S. 463 (1962) ................................................................................. 35

*Gonzalez* v. *United States,*
No. CV-12-01912, 2013 WL 942363 (C.D. Cal. Mar. 11, 2013) ................ 16

*Hornbeck Offshore Transp., LLC* v. *United States,*
569 F.3d 506 (D.C. Cir. 2009) .................................................................. 30

*Hydrogen Tech. Corp.* v. *United States,*
831 F.2d 1155 (1st Cir. 1987) ................................................................... 19

*Indian Towing Co.* v. *United States,*
350 U.S. 61 (1955) ............................................................................ 20, 24

*Jacinto-Castanon de Nolasco* v. *U.S. Immigr. & Customs Enf't,*
319 F. Supp. 3d 491 (D.D.C. 2018) ................................................ 12, 13, 17

*JBP Acquisitions, LP* v. *U.S. ex rel. F.D.I.C.,*
224 F.3d 1260 (11th Cir. 2000) ................................................................. 30

*Kina* v. *United Air Lines, Inc.,*
No. 08-4358, 2008 WL 5071045 (N.D. Cal. Dec. 1, 2008) ........................ 33

*LaGuardia* v. *Designer Brands, Inc.,*
No. 19cv1568, 2020 WL 2463385 (S.D. Cal. May 7, 2020) ....................... 35

*Limone* v. *United States,*
579 F.3d 79 (1st Cir. 2009) ................................................................. 12, 29

*Linder* v. *United States,*
937 F.3d 1087 (7th Cir. 2019) ................................................................... 30

*Lopez* v. *Bollweg,*
No. CV-13-00691, 2020 WL 5802100 (D. Ariz. Sept. 29, 2020) ............... 10

*Loumiet* v. *United States,*
828 F.3d 935 (D.C. Cir. 2016) ............................................................ 10, 29

*Marlys Bear Med.* v. *U.S. ex rel. Sec'y of Dep't of Interior*,
   241 F.3d 1208 (9th Cir. 2001) ............................................................................ 14, 15

*Martinez* v. *United States*,
   No. CV-13-00955, 2018 WL 3359562 (D. Ariz. July 10, 2018) .................................. 21

*Mazur* v. *U.S. I.N.S.*,
   957 F. Supp. 1041 (N.D. Ill. 1997) .......................................................................... 25

*McGowan* v. *United States*,
   825 F.3d 118 (2d Cir. 2016) ................................................................................... 24

*Misch on Behalf of Estate of Misch* v. *Zee Enters., Inc.*,
   879 F.2d 628 (9th Cir. 1989) .................................................................................. 33

*Ms. L.* v. *U.S. Immigr. & Customs Enf't*,
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) .............................................................. *passim*

*Ms. L.* v. *U.S. Immigr. & Customs Enf't*,
   302 F. Supp. 3d 1149 (S.D. Cal. 2018) ................................................................ 8, 26

*Mueller* v. *Auker*,
   576 F.3d 979 (9th Cir. 2009) .................................................................................. 10

*Muscat by Berman* v. *Creative Innervisions LLC*,
   244 Ariz. 194 (Ct. App. 2017) ........................................................................... 25, 26

*Myers & Myers, Inc.* v. *U.S. Postal Serv.*,
   527 F.2d 1252 (2d Cir. 1975) ................................................................................. 19

*Nanouk* v. *United States*,
   974 F.3d 941 (9th Cir. 2020) .................................................................................... 7

*Nurse* v. *United States*,
   226 F.3d 996 (9th Cir. 2000) .................................................................................... 9

*O'Toole* v. *United States*,
   295 F.3d 1029 (9th Cir. 2002) ................................................................................ 11

*United States* v. *Olson*,
   546 U.S. 43 (2005) ................................................................................................ 23

*Omoniyi* v. *Dep't of Homeland Sec.*,
   No. 10-cv-1344 (DF), 2012 WL 892197 (S.D.N.Y. Mar. 13, 2012) ........................... 25

*Peña Arita* v. *United States*,
   470 F. Supp. 3d 663 (S.D. Tex. 2020) ..................................................................... 30

*Pierce* v. *Casas Adobes Baptist Church*,
 162 Ariz. 269 (1989).................................................................................. 22

*Plascencia* v. *United States*,
 No. EDCV 17-02515, 2018 WL 6133713 (C.D. Cal. May 25, 2018)................. 8, 9, 12

*Prescott* v. *United States*,
 973 F.2d 696 (9th Cir. 1992) ........................................................................ 19

*Proctor & Schwartz, Inc.* v. *Rollins*,
 634 F.2d 738 (4th Cir. 1980) ........................................................................ 35

*Renteria* v. *United States*,
 452 F. Supp. 2d 910 (D. Ariz. 2006) ............................................................. 27

*Ruiz ex rel. E.R.* v. *United States*,
 No. 13-CV-124, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) ...................... 14

*Ryan* v. *U.S. Immigration & Customs Enf't*,
 974 F.3d 9 (1st Cir. 2020) ............................................................................ 25

*Sanderson* v. *Spectrum Labs, Inc.*,
 248 F.3d 1159 (7th Cir. 2000) ...................................................................... 35

*Sauceda* v. *United States*,
 No. CV-07-2267, 2009 WL 3756703 (D. Ariz. Nov. 5, 2009) ........................ 22

*Save the Peaks Coal.* v. *U.S. Forest Serv.*,
 No. 09-CV-8163, 2010 WL 3800896 (D. Ariz. Sept. 22, 2010) ...................... 19

*Sea Air Shuttle Corp.* v. *United States*,
 112 F.3d 532 (1st Cir. 1997)......................................................................... 24

*Sinclair* v. *Kleindienst*,
 711 F.2d 291 (D.C. Cir. 1983) ...................................................................... 35

*Tekle* v. *United States*,
 511 F.3d 839 (9th Cir. 2007) ........................................................................ 29

*Unknown Parties* v. *Nielsen*,
 No. CV-15-00250, 2020 WL 813774 (D. Ariz. Feb. 19, 2020) ........................ 8

*Welch* v. *United States*,
 409 F.3d 646 (4th Cir. 2005) ................................................................. 16, 19

*Westbay Steel, Inc.* v. *United States*,
 970 F.2d 648 (9th Cir. 1992) ........................................................................ 26

*Wolfe* v. *Strankman*,
  392 F.3d 358 (9th Cir. 2004) ........................................................................... 6

*Xue Lu* v. *Powell*,
  621 F.3d 944 (9th Cir. 2010) ................................................................... 24, 26

**STATUTES**

8 U.S.C. § 1232(b)(3) ................................................................................... 17

28 U.S.C. § 1346(b)(1) .................................................................................. 20

28 U.S.C. § 1402(b) ....................................................................................... 31

28 U.S.C. § 1406(a) ....................................................................................... 35

28 U.S.C. § 2674 ........................................................................................... 21

28 U.S.C. § 2680 ........................................................................................... 11

28 U.S.C. § 2680(a) ....................................................................................... 16

28 U.S.C. § 2680(h) ....................................................................................... 27

Pub. L. No. 110-457, 122 Stat. 5044 (2008) ....................................... 15, 17, 18

**OTHER AUTHORITIES**

14D Charles Alan Wright & Arthur R. Miller, Federal Practice and
  Procedure § 3827 (4th ed. 2020) ............................................................... 35

Fed. R. Civ. P. 12(b)(1) .............................................................................. 2, 6

Fed. R. Civ. P. 12(b)(3) ................................................................................ 31

Fed. R. Civ. P. 21 ......................................................................................... 35

Restatement (Second) of Torts § 281 .......................................................... 21

Restatement (Second) of Torts § 700 .......................................................... 21

Restatement (Third) of Torts § 46 ............................................................... 21

## I.    PRELIMINARY STATEMENT

The United States of America, through government actors, intentionally separated thousands of children from their parents in Arizona and elsewhere along the United States' southern border, detained them in punitive conditions, and kept them apart for agonizing weeks or months, often without knowledge of the other's whereabouts and well-being. These inhumane acts were part of a scheme to punish vulnerable families who sought refuge in the United States and to deter other immigrants from seeking asylum.  Media coverage provided only a partial glimpse of the cruelty:  videos of babies torn from their parents' arms, images of children locked away alone in freezing detention centers, and stories of parents desperately trying to find out where their children had been taken.  These brutal tactics resulted in less visible suffering as well:  emotional trauma, ongoing physical and mental health consequences, and damaged relationships.  For these harms, Plaintiffs are entitled to compensation under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680.

Plaintiffs in this action, five parents and their six children, bring suit under the FTCA asserting claims for the torts of intentional infliction of emotional distress ("IIED") (Count IX), negligence (Count X), and loss of consortium (Count XI).  The case against the government is clear:  the United States ("Defendant") inflicted these harms on Plaintiffs, for no lawful purpose, with the objective of causing the pain and trauma many suffer to this day.  Defendant's efforts to dismiss virtually identical claims at the pleading stage have already been rejected twice in this very District, on nearly identical grounds.  *See A.P.F.* v. *United States*, No. 20-CV-00065, Dkt. 36, at 11 (D. Ariz. July 27, 2020) ("*A.P.F.* Order"); *C.M.* v. *United States*, No. 19-CV-05217, 2020 WL 1698191, at *1 (D. Ariz. Mar. 30, 2020).  Plaintiffs in *C.M.* and *A.P.F.* brought FTCA claims against Defendant based on federal employees' separation of immigrant families along the southern border.  *C.M.*, 2020

WL 1698191, at *1; *A.P.F.* Order, at 2–3. Here, too, as in *A.P.F.* and *C.M.*, Plaintiffs' claims are meritorious and should withstand this copycat, twice-failed motion to dismiss.

The government's arguments for dismissal rest on mischaracterizing the complaint or ignore the totality of its allegations, treating Plaintiffs' claims as attacks on the government's authority under separate statutes relating to detention, transfer, and prosecution in connection with unlawful immigration. Defendant's focus on these isolated actions is a misguided attempt to distract the Court from Plaintiffs' actual allegations. Plaintiffs' claims relate to the cruel and unnecessary separation of immigrant families, and their treatment while detained—neither of which is dictated by the statutes Defendant identifies. This behavior was unlawful and unwarranted even in cases in which immigrant parents were criminally charged and convicted. *See Ms. L.* v. *U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133, 1145 (S.D. Cal. 2018).

Defendant's arguments that this Court lacks subject matter jurisdiction over the FTCA claims under Rule 12(b)(1) are deficient for the same reasons and were properly rejected in *A.P.F.* and *C.M. See A.P.F.* Order, at 11; *C.M.*, 2020 WL 1698191, at *3–4. *First*, the discretionary function exception is inapplicable because federal officers do not have discretion to violate the Constitution, and here their actions blatantly violated Plaintiffs' Fourth and Fifth Amendment rights. The discretionary function exception also does not apply because officers breached non-discretionary duties, and none of Defendant's misconduct involved the type of policy decisions the exception was designed to shield. *Second*, the due care exception is inapplicable because there is no statutory or regulatory mandate requiring federal officers to separate immigrant families. And there is no plausible argument that any statutory duty was performed with "due care." *Third*, subject matter jurisdiction is proper because private persons would be liable for Defendant's actions under "like circumstances." *Fourth*, Plaintiffs' claims are not barred by the misrepresentation exception because, while federal officials certainly engaged in

misrepresentation, fraud, and deceit, those activities are not necessary or core to Plaintiffs' claims. *Fifth*, Plaintiffs premise their FTCA claims against the United States on state tort law, and Defendant is wrong to argue that the claims nonetheless arise under the U.S. Constitution. *Finally*, venue is proper in the District of Arizona because this is where the vast majority of the relevant acts and omissions—and Plaintiffs' injuries—occurred.

## II. BACKGROUND[1]

The United States began ruthlessly separating families seeking refuge here in 2017. (FAC ¶¶ 2, 8, 135–42, 143–46.) Thousands of children, some babies and toddlers, were taken from their parents at the border, all in an illegal attempt to deter immigrants from seeking asylum in the United States. (*Id*. ¶¶ 2, 64, 82, 96, 106–07, 114, 139, 168.) Parents and children were given no indication as to where their family members were taken or when they might be reunited. (*Id*. ¶¶ 65, 83, 86, 97–98, 116, 232.) Government officials lied to Plaintiffs to effect these separations and subjected them to abuse while in detention. (*Id*. ¶¶ 6, 9, 15, 69, 79, 107, 116, 168, 171, 181, 256, 260, 265, 268.) Thousands of minors—and potentially more yet to be identified—were subjected to prolonged separations from their parents or guardians due to the government's failure to keep track of families in its custody. (*Id*. ¶¶ 226, 234.) To this day, hundreds of families remain separated, and hundreds have not yet even been located. (*Id*.)

The United States, acting through its officials, tormented Plaintiffs and other families like them. In some cases, families were inexplicably separated with no purported justification. Defendant separated families for plainly pretextual reasons—including unsubstantiated claims that the parent and child may not be related. (*Id*. ¶¶ 157–59.) Some officials did not even offer a pretext for the separations. (*Id*. ¶ 161.)

---

[1] Plaintiffs incorporate by reference the factual summary set forth in their First Amended Complaint ("FAC") and Opposition to the Individual Defendants' Motion to Dismiss ("Pls.' Opp'n Br.").

In other instances, criminal charges were used as a pretext for separations.  For those parents who were prosecuted for the misdemeanor of illegal entry, most received a sentence of time served.  Still, federal officials used these arrests to separate parents and children indefinitely, not returning the child even after the parent was released from jail for the misdemeanor.  (*Id*. ¶¶ 163–66.)  The *Ms. L* court summarized this grave injustice when it noted that "separating [parents] from their minor children, and failing to reunify [parents] with those children, without any showing the parent is unfit or presents a danger to the child"; this conduct, combined with "the lack of any effective procedures or protocols for notifying the parents about their children['s] whereabouts or ensuring communication between the parents and children, and the use of the children as tools in the parents' criminal and immigration proceedings," "shock[ed] the contemporary conscience" and warranted an immediate preliminary injunction.  310 F. Supp. 3d at 1145 (citation omitted) (declaring that alleged conduct was "brutal, [and] offensive").

Even parents *seeking asylum* were criminally prosecuted for allegedly crossing the border illegally, a marked departure from prior practice.  (*Id*. ¶ 160.)  Once separated, officials sent children and parents to different detention facilities, some thousands of miles apart, with no indication as to if and when they might see each other again.  (*Id*. ¶ 172.) Officials undertook these actions despite repeated warnings from experts that they would inflict irreparable harm.  (*Id*. ¶¶ 128, 149, 156.)  Compounding this harm, officials failed to keep track of the separated families, making it extremely difficult, if not impossible, to reunite them.  (*Id*. ¶¶ 225, 228–35.)

Plaintiffs have put forward detailed allegations in the FAC supporting tort claims of negligence, IIED, and loss of consortium.  *First*, federal officials were negligent because they breached their duty to act with ordinary care and prudence in ripping children from their parents.  Officials also exhibited utter indifference toward detainees and were negligent in caring for the immigrants in their custody.

For example, after traveling for hours toward the border in 95-degree weather, Jaime, Mateo, and their mother Ana were so sick and dehydrated that Mateo, then seven years old, began vomiting blood. (*Id.* ¶ 62.) But even though Mateo was obviously ill and Jaime and Ana both showed signs of heat exhaustion, no Customs and Border Patrol ("CBP") officer offered to provide medical attention. (*Id.*) Meanwhile, Ana was forced to sit in a room full of strangers covered in blood and vomit, with partially torn clothing that barely covered her. (*Id.* ¶ 63.) No officer offered to assist her with a towel or new clothing. (*Id.*)

Other Plaintiffs were subjected to treatment no less horrific. Karina and Lorena were placed in freezing and overcrowded *hieleras* without beds, sweaters, or any way to bathe, brush their teeth, or change their clothes. (*Id.* ¶ 80.) They were fed uncooked noodles in lukewarm water, a mixture that caused many children to throw up. (*Id.*) Diana and Jorge experienced similar conditions when they were sent to a crowded, freezing cell. (*Id.* ¶ 95.) The cell was filthy and smelled of urine and the toilet was fully exposed. (*Id.*) There were no mats, pillows, or blankets other than Mylar emergency blankets for Diana or Jorge to use to sleep or keep warm. (*Id.*)

*Second*, federal officers intentionally subjected Plaintiffs to extreme emotional distress and trauma. CBP officials separated parents and their children wantonly, and verbally abused them in the process. Officers called Ana—a mother of two—a "dirty Guatemalan" and told her that her separated sons would be sent to serve in the U.S. Army or to stay "with Donald Trump," while she would be deported back to Guatemala alone. (*Id.* ¶ 69.) A room of officers mocked Plaintiff Lorena, saying "[f]uck these Salvadorans" after learning which country she fled. (*Id.* ¶ 79.) Andrés was pulled kicking and screaming out of his father Jacinto's arms by CBP officers. (*Id.* ¶ 114.) Officers told Jacinto that his son now "belonged to Trump," as they forced his face and hands against a wall so he could not watch them take away his son. (*Id.* ¶ 115.) Jairo and his then-six-year-old daughter

Beatriz watched as CBP officers repeatedly struck a woman as she tried to cling to her crying child. (*Id.* ¶ 106.) Officers detained Jairo in Arizona while they sent his daughter thousands of miles away, where she was beaten with a belt and left with scars and bruises while in Office of Refugee Resettlement ("ORR") custody. (*Id.* ¶ 110.)

Federal officers' actions also caused Plaintiffs to suffer a loss of consortium. The government recklessly separated and transferred family members without any reliable way to track them or any plan to reunify them. And Plaintiffs were left to deal with the shocking fallout of their trauma, both psychological and physical. Lorena, whose daughter Karina, then 13 years old, was taken from her on Christmas morning, developed insomnia, dizzy spells, lack of appetite, and hair loss while in custody. (*Id.* ¶¶ 82, 87.) Karina, who has depression and anxiety, contemplated suicide during months of separation with no end in sight. (*Id.* ¶ 90.) Beatriz still struggles with mental anguish and is uncomfortable around her parents now, as if they were strangers. (*Id*. ¶ 112.) Mateo and Jaime continue to experience trauma from separation. (*Id*.) Mateo, Andrés, and Diana all now struggle to be apart from their respective parents, some even when separated for brief periods. (*Id*. ¶¶ 76, 123, 267.) Diana and Jaime show a pronounced distrust of strangers. (*Id.* ¶¶ 76, 267.) Jaime acts out in anger. (*Id.* ¶ 76.)

## III.    STANDARD OF REVIEW

Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss this case for lack of subject matter jurisdiction. Defendant argues that Plaintiffs' claims fail, *first*, in light of the doctrine of sovereign immunity, and *second*, because Plaintiffs' claims, even if deemed viable under the FTCA, are barred by the FTCA's exceptions. Here, where Defendant brings a facial challenge to this Court's subject matter jurisdiction, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor. *See Wolfe* v. *Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted).

## IV. ARGUMENT

### A. The Discretionary Function Exception Does Not Shield the Government's Actions

Plaintiffs' claims are not barred by the FTCA's discretionary function exception ("DFE"). The DFE applies only where the government shows that actions that gave rise to FTCA claims *both* (1) involved an element of judgment or choice, *and* (2) were based on considerations of public policy. *United States* v. *Gaubert*, 499 U.S. 315, 322–23 (1991); *Nanouk* v. *United States*, 974 F.3d 941, 944 (9th Cir. 2020) ("The government bears the burden of establishing that the [DFE] applies."). The exception cannot shield the government where its actions violate the Constitution. *Fazaga* v. *F.B.I.*, 965 F.3d 1015, 1065 (9th Cir. 2020) ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply." (quoting *Galvin* v. *Hay*, 374 F.3d 739, 758 (9th Cir. 2004))). As other judges in this District held in *C.M.* and *A.P.F.*, the DFE does not bar FTCA claims related to family separation because the government's alleged conduct was (1) unconstitutional, (2) not subject to the discretion of the federal officials in question, and (3) not grounded in public policy considerations.

### 1. The Discretionary Function Exception Does Not Apply Because the Government's Misconduct Violated the Constitution

Plaintiffs have alleged in great detail how the government's family separations and subsequent cruel treatment violated their Fifth Amendment due process rights to family integrity, to adequate health care while in government custody, to be free from punitive treatment without due process, and to be heard. (FAC ¶¶ 54, 282–92, 293–302, 306–11, 312–19; Pls.' Opp'n Br. at Part III.C.1–4.) Plaintiffs have also alleged that Defendant's conduct violated their Fifth Amendment right to equal protection and Fourth Amendment right to be free from unreasonable seizures. (FAC ¶¶ 322–28, 332–38; Pls.' Opp'n Br. at Part III.C.5–6.) Defendant's constitutional violations are patent. In *Ms. L.*, the court found

that Defendant's conduct "'shocks the conscience' and violates Plaintiffs' constitutional right to family integrity," and accordingly denied a motion to dismiss the Fifth Amendment due process claims, and issued a preliminary injunction. *Ms. L.* v. *U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149, 1167 (S.D. Cal. 2018) (citation omitted) (describing government's conduct as "brutal, offensive, and fail[ing] to comport with traditional notions of fair play and decency"); *Ms. L.*, 310 F. Supp. 3d at 1146 (granting preliminary injunction while finding due process claim likely to succeed); *see also Unknown Parties* v. *Nielsen*, No. CV-15-00250, 2020 WL 813774, at *5 (D. Ariz. Feb. 19, 2020) (holding that plaintiffs would likely prevail on constitutional claims alleging conditions at CBP stations were punitive where plaintiffs were exposed to overcrowding, cold temperatures, unsanitary cells, lack of adequate personal hygiene materials, and insufficient food and water).

Courts in this District have already *twice* rejected the government's arguments that the DFE bars FTCA claims on these facts, holding that the government does not have discretion to violate the Constitution by separating families in immigration detention. The *C.M.* court held that "Plaintiffs have plausibly alleged that the government's separation of their families violated their constitutional rights, which is not shielded by the [DFE]." 2020 WL 1698191, at *4. The *A.P.F.* court concluded that "[b]ecause government officials lack discretion to violate the Constitution, the [DFE] cannot shield conduct related to the government's likely unconstitutional separation of plaintiffs." *A.P.F.* Order, at 7.[2]

In the face of this authority, Defendant urges the Court to hold that the DFE applies only when a constitutional provision prohibits a "*specific* course of conduct." (U.S. Mtn. at 18–19 (emphasis added).) In essence, Defendant argues that the Constitution would

---

[2] Even if the Court holds that a *Bivens* remedy is unavailable against the Individual Defendants, the complaint still sufficiently alleges constitutional violations for the purposes of defeating the DFE. *See Plascencia* v. *United States*, No. EDCV 17-02515, 2018 WL 6133713, at *9, *14 (C.D. Cal. May 25, 2018) (finding DFE did not apply to constitutional violations, independent of analysis of *Bivens* claims).

- 8 -

have to specifically forbid the forcible, unjustified separation of children from their parents. In support of this argument, Defendant asserts that the Ninth Circuit "left open" the possibility of such a rule in prior cases. *Id.* But the government does not—and cannot—cite any authority where a court actually adopted such a standard. *See Nurse* v. *United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) (holding that Constitution limited federal officials' discretion, and allegations of constitutional violations entail questions that cannot be "easily answered on a motion to dismiss"); *Galvin*, 374 F.3d at 758 (holding that where officials "violated the Constitution by dispersing the plaintiffs' prayer service . . . the [DFE] does not apply"); *Fazaga*, 965 F.3d at 1065 (remanding for the district court to determine whether government violated Constitution). The government's newfangled construction would mean that all manner of tortious conduct could not provide a basis for an FTCA claim because constitutional directives are not "specific" enough, even where the Constitution speaks of "due process" or "unreasonable" search and seizures. That is not—and cannot—be the law. *Cf. Plascencia* v. *United States*, No. EDCV 17-02515, 2018 WL 6133713, at *9 (C.D. Cal. May 25, 2018) (holding that, "to the extent Plaintiff alleges a [constitutional] violation based on the arrest and subsequent detention [in the immigration context], the [DFE] does not apply"); *see also Dietzmann* v. *City of Homer*, No. 3:09-cv-00019, 2010 WL 4684043, at *29 (D. Alaska Nov. 17, 2010) ("Here, the federal official's discretion is limited by the requirements of the Fourth and Fifth Amendments."); *Davis* v. *United States*, No. EDCV 07-481, 2009 WL 10674302, at *5 (C.D. Cal. Sept. 4, 2009) ("To the extent the abuse of process claim is based on illegal searches, Government Employees allegedly violated the law; such acts cannot be within the discretion Congress intended to shield from judicial oversight.").

Similarly, Defendant argues that because Plaintiffs' rights were not "clearly established" at the time of the violation, federal officials actually *did* have discretion to violate the Constitution. (*See* U.S. Mtn. at 19–20.) This is wrong. The requirement that a

constitutional norm be "clearly established" arises only in the context of claims against individual federal officials under *Bivens*, where qualified immunity is available (*see* Pls.' Opp'n Br. at Part III.C). The defense of qualified immunity applies only to damages claims against individual defendants, not to claims against entities like the United States.

Tellingly, the government did not raise this argument when it moved to dismiss the FTCA claims in *C.M.* and *A.P.F.* Rightfully so, for there is no such requirement that plaintiffs' rights be "clearly established" to assert state law claims of IIED, negligence, and loss of consortium against the government itself under the FTCA. For this reason, the D.C. Circuit squarely rejected the argument in *Loumiet* v. *United States* that "'constitutionally defective' exercises of discretion fall within the [DFE]." 828 F.3d 935, 946 (D.C. Cir. 2016). The court reasoned that the qualified immunity doctrine "is directly tied" to the "fear [that] personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties, to the detriment of the public interest." *Id.* (quotation marks omitted); *see also Mueller* v. *Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (explaining that qualified immunity recognizes "that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations"); *Lopez* v. *Bollweg*, No. CV-13-00691, 2020 WL 5802100, at *2 (D. Ariz. Sept. 29, 2020). But such concerns have no place in FTCA claims, where Congress has specified that the *United States*—not particular federal officers—is subject to suit. To rely on qualified-immunity-like principles would be to "miscast the relationship between FTCA state-law torts and *Bivens* constitutional claims." *Loumiet*, 828 F.3d at 945. In fact, the D.C. Circuit "found *no* precedent in any circuit holding as the government urges, nor does it cite any," and it saw "no cause to make this [case] the first." *Id.* at 946 (emphasis added).[3]

---

[3] Similarly, none of the cases Defendant cites held that the "clearly established" element of the qualified immunity doctrine plays a role in the DFE analysis. *See, e.g.*, *Castro* v. *United States*, 608 F.3d 266 (5th Cir. 2010); *Denson* v. *United States*, 574 F.3d 1318, 1337–38 (11th Cir. 2009).

Applying the qualified immunity doctrine to Plaintiffs' FTCA claims would undercut the conditions under which the FTCA specifies that the United States has waived its sovereign immunity. *See O'Toole* v. *United States*, 295 F.3d 1029, 1033 (9th Cir. 2002) (noting that FTCA waives federal government's immunity from suit, but only for discrete class of lawsuits). The FTCA's "broad waiver of sovereign immunity is limited by 28 U.S.C. § 2680, a statutory reservation of sovereign immunity for a particular class of tort claims." *Id.* (internal quotation marks omitted). Applying the doctrine of qualified immunity to FTCA claims thus would expand beyond recognition the express, statutory limitations on the FTCA's waiver of sovereign immunity.

Because Plaintiffs have alleged constitutional violations, the DFE does not bar their claims.

### 2. Federal Officials Violated Numerous Other Nondiscretionary Duties in Addition to Their Constitutional Violations

The DFE also does not bar the claims here because Plaintiffs have alleged that federal officials violated multiple duties that are non-discretionary; that is, they are required by federal law and the *Flores* settlement. *Flores* v. *Reno*, Stipulated Settlement Agreement ¶ 12.A, No. 85-CV-4544 (C.D. Cal. Jan. 17, 1997); *Berkovitz by Berkovitz* v. *United States*, 486 U.S. 531, 544 (1988) ("When a suit charges an agency with failing to act in accord with a specific mandatory directive, the [DFE] does not apply."); *Faber* v. *United States*, 56 F.3d 1122, 1125–26 (9th Cir. 1995) (refusing to apply DFE where government "failed to follow specifically prescribed policies").[4] Plaintiffs allege that federal officials violated

---

[4] Defendant misreads *Gaubert* when it asserts that, under the *first* prong, "[if] applicable laws and regulations set forth a *specific mandate* with which the government employee complies, then the exception applies." (U.S. Mtn. at 12–13 (emphasis added).) The *Gaubert* court stated that "[i]f a regulation mandates particular conduct, and the employee obeys the direction, the government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." *Gaubert*, 499 U.S. at 324. But the Supreme Court found that issue relevant to the policy analysis under the *second* prong. *Id.* Defendant's argument appears to

the *Flores* settlement agreement by placing children in detention centers with unsafe facilities. (FAC ¶¶ 59, 187, 203–06, 355–58.)[5] Plaintiffs also allege that Defendant violated federal law and the Constitution by failing to track separated families and permit regular communications between parents and children. (*See* FAC ¶¶ 59, 232–33, 355–58.) *See Jacinto-Castanon de Nolasco* v. *U.S. Immigr. & Customs Enf't*, 319 F. Supp. 3d 491, 501 (D.D.C. 2018) (finding government "directly and substantially burdened plaintiffs' right to family integrity" where it "continued to detain Ms. Jacinto-Castanon and her sons in separate facilities for many weeks with only periodic phone calls"); *Ms. L.*, 310 F. Supp. 3d at 1144 (failure to track separated children violated due process requirements). Defendant focuses its brief on narrow aspects of the *Flores* settlement with which it claims it complied or under which it had discretion (U.S. Mtn. at 14–15), but the Court must take Plaintiffs' factual allegations as true at this stage, and those allegations as a whole show that the government breached non-discretionary duties owed to Plaintiffs in violating the mandates of the *Flores* settlement and federal law. *See Limone* v. *United States*, 579 F.3d 79, 101 (1st Cir. 2009) ("Viewed from 50,000 feet, virtually any action can be characterized as discretionary.").

Importantly, the *Flores* settlement does not give Defendant discretion to separate parents and children, even when parents were charged with illegal entry. Rather, the central goal of the *Flores* settlement was to protect the best interests of children; the settlement cannot plausibly be read to require forcible separation of children from parents. And in fact, certain Plaintiffs, namely Ana and Lorena, were *never charged* with any crimes, and

---

conflate the elements of the DFE and the due care exception, *see infra* Section IV.B., which bars an FTCA claim if officials acted pursuant to a statutory mandate.

[5] Courts in this Circuit have held that the DFE does not apply to claims relating to immigration detention where plaintiffs alleged a violation of policy, statute, or the Constitution. *Plascencia*, 2018 WL 6133713, at *9; *Baires* v. *United States*, No. 09-05171, 2011 WL 1743224, at *8 (N.D. Cal. May 6, 2011); *Chehade Refai* v. *Lazaro*, 614 F. Supp. 2d 1103, 1125 (D. Nev. 2009).

Defendant's actions in separating them from their children, thus, was blatantly contrary to *Flores*. (FAC ¶¶ 73, 84 119, 169, 222.) Even for those Plaintiffs who were charged (or Defendant claims were charged), the government fails to point to any reason why they were detained in adult facilities *after* their release, instead of being placed in family detention centers with their children.[6] *See Jacinto-Castanon*, 319 F. Supp. 3d at 501 (finding "there is no criminal law enforcement reason to maintain the separation of [plaintiff-mother] and her sons" where "all criminal proceedings have concluded and [she] has served her accompanying sentence"); *Ms. L.*, 310 F. Supp. 3d at 1144 (finding practice of separating families was implemented without a system for "reuniting the parents and children after the parents are returned to immigration custody following completion of their criminal sentence"); *see also Flores* v. *Sessions*, No. CV 85-4544, 2018 WL 4945000, at *3–4 (C.D. Cal. July 9, 2018) (holding *Flores* did not require government to separate detained parents and children).[7] When parents are released from criminal custody or where criminal proceedings have concluded, it is in the best interest of the child to be reunited with his or her parents. *See id.* at *5 ("[I]n implementing the Agreement, [the child's] best interests should be paramount.").

In sum, the government cannot show that the course of conduct alleged in the complaint was "discretionary" and therefore protected by the DFE.

---

[6] As alleged in the FAC, parents who were prosecuted for illegal entry or re-entry usually received a sentence of time served that amounted to approximately 48 hours or less, after which the parent would be returned to immigration custody. (FAC ¶ 163.)

[7] *Flores* also did not require the government to separate parents being placed in civil immigration detention pending removal. *See Jacinto-Castanon*, 319 F. Supp. 3d at 501 ("[T]he fact that [a plaintiff-mother] may be subject to some form of immigration detention does not explain why she must be detained separately from her sons. The same goal of detention can be accomplished, for example, by temporarily detaining families together in family residential facilities.").

### 3. Government's Misconduct Was Not Based on Policy Considerations That the FTCA Intended to Shield

Finally, as a third, independent reason that the DFE does not apply here, the alleged misconduct did not stem from "the kind [of governmental decisions] that the [DFE] was designed to shield," meaning "legislative and administrative decisions grounded in social, economic, and political policy." *Berkovitz*, 486 U.S. at 536–37. As the FAC demonstrates in detail, Defendant's conduct was grounded in malice toward Central American immigrants and an indifference to the warnings of experts and other responsible officials. For example, Defendant ignored ORR employees' warnings that the agency lacked sufficient resources to care for such a massive influx of children torn from their parents. (FAC ¶¶ 128, 179.) The government's failures therefore did not reflect a "weighing of practical and policy considerations [that] represents the kind of policy judgment that Congress intended to protect through the [DFE]." *Marlys Bear Med.* v. *U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1214 (9th Cir. 2001).

In *Ruiz ex rel. E.R.* v. *United States*, the court rejected the government's argument that the DFE barred claims, including IIED and negligence arising from CBP's detention of a four-year-old U.S. citizen because the court could not discern "how deciding to wait fourteen hours before contacting [plaintiff's] parents and to only provide the child with a cookie and a soda over twenty hours could constitute a considered judgment grounded in social, economic, or political policies." No. 13-CV-124, 2014 WL 4662241, at *8 (E.D.N.Y. Sept. 18, 2014). The court characterized the government's actions as more plausibly the result of negligence or laziness or worse, and concluded that the DFE did not apply. *Id*. So too here. Defendant showed malice and certainly deliberate indifference toward Plaintiffs by tearing them apart, denying them basic sleeping accommodations, medical treatment, food, and communication with each other for weeks or months. (FAC ¶¶ 63, 68–69, 80, 86, 88, 98, 105, 115, 117–18.) These brutal (and even lesser) failures

"do not involve 'considerations of public policy.'" *Coulthurts* v. *United States*, 214 F.3d 106, 111 (2d Cir. 2000) (quoting *Gaubert*, 499 U.S. at 323).

Further, courts acknowledge that "once the Government has undertaken responsibility for the safety of a project, the execution of that responsibility is not subject to the [DFE]." *Marlys Bear Med.*, 241 F.3d at 1215. The DFE, therefore, does not immunize Defendant's actions in separating families in a malicious manner and in failing to reunite separated families. Plaintiffs plausibly allege that federal officials' separation of families caused Plaintiffs' injuries. For example, Plaintiffs' injuries endured for months as the government failed to reunite family members, or even allow Plaintiffs to communicate once separated. (FAC ¶¶ 64–69, 83–86, 96–98, 107–109, 116–19.) Plaintiffs were also placed in freezing-cold holding areas before and after their separations; officials did not explain to Plaintiffs why their families were being separated; and Plaintiffs feared physical abuse after witnessing CBP officers strike other detained families that tried to avoid being separated. (FAC ¶¶ 64–69, 80, 82–86, 95–98, 105–08, 110, 114–17.)

The government also failed to uphold its responsibilities for the safety and comfort of children placed in ORR custody, as required by the *Flores* settlement and the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"), Pub. L. No. 110-457, 122 Stat. 5044 (2008). (FAC ¶¶ 59–60.) Here, the government was responsible for the health and safety of thousands of children in its custody. *See Ms. L.*, 3:18-CV-00428, Dkt. 560, at 8 (S.D. Cal. 2018) (noting that the parents of 628 children have still not even been located). Defendant attempts to cast its failure to uphold this responsibility as a mere weighing of resources and policy considerations. (U.S. Mtn. at 16–17, 21–23.) In reality, the government's malice, or utter indifference, towards those in its custody was a failure to meet its basic—and non-discretionary—"duty to maintain safety measures once undertaken." *Marlys Bear Med.*, 241 F.3d at 1216–17. Accordingly, the DFE is no bar to suit.

### B. The Due Care Exception Does Not Apply

The FTCA's due care exception ("DCE") also does not apply to the claims here. That exception bars claims "based upon an act or omission of an employee of the government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid." 28 U.S.C. § 2680(a). The exception makes clear that the FTCA's purpose is to provide a remedy for the "tortious execution of a particular law" rather than a "venue in which to challenge the validity of that law." *Welch* v. *United States*, 409 F.3d 646, 653 (4th Cir. 2005) (stating that DCE exists to "bar tests by tort action of the legality of statutes and regulations" (citation omitted)); *see A.P.F.* Order, at 5–6 (applying two-part test articulated in *Welch*); *C.M.*, 2020 WL 1698191, at *3 (same). The claims here do not challenge the validity of any law. Rather, they allege conduct that was not the product of the commands of a statute or regulation, and even if they did, the government did not execute those commands with due care.

Under the DCE test's first prong, a federal statute or regulation must "specifically prescribe[]" the challenged action of federal officials. *See Gonzalez* v. *United States*, No. CV-12-01912, 2013 WL 942363, at *3–4 (C.D. Cal. Mar. 11, 2013). Under the second prong, the relevant federal officials must "reasonably execut[e]" that prescription; in other words, officials must act with due care. *C.M.*, 2020 WL 1698191, at *3 (citing *Welch*, 409 F.3d at 651).[8]

---

[8] Insofar as Defendant argues that the discretionary function exception *also* bars claims arising from statutory mandates (*see* U.S. Mtn. 12–13 ("If . . . the applicable laws and regulations set forth a specific mandate with which the government employee complies, then the [discretionary function] exception applies")), its argument should be considered as a due care exception argument, not one for application of the discretionary function exception, and is subject to the two-part test first articulated in *Welch*. The DFE protects the opposite—action that is discretionary, rather than mandated. Defendant cannot repackage a due care argument as a discretionary function argument to avoid the DCE's reasonableness requirement.

Applying that test makes clear that the DCE does not apply, as there is no statute that authorized, let alone mandated, Defendant's separation of parents and children. Indeed, courts in the District of Arizona have already rejected Defendant's due care argument in the family separation context. *See C.M.*, 2020 WL 1698191, at *3; *A.P.F.* Order, at 5–6. The courts in both cases held that the DCE did not apply because the relevant federal officials were not acting under the mandate of a statute or regulation.[9] *C.M.*, 2020 WL 1698191 at *3; *A.P.F.* Order, at 5–6. Plaintiffs allege the same conduct here, and this Court should reach the same conclusion.

Defendant purports to identify a number of statutes that authorize it "to determine whether and where to detain plaintiffs after they enter the country illegally." (U.S. Mtn. at 25.) But no statute mandates family separation as part of that detention. *See Jacinto-Castanon*, 319 F. Supp. 3d at 501–02 (noting that immigration officials administered same statutes and regulations through 2017 without routinely separating families). Defendant's sole example of a statute that purportedly mandates these separations, the TVPRA, does no such thing, and focuses on children who arrive *without* parents. (U.S. Mtn. at 25.) The TVPRA states that "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3) (emphasis added).

Thus, by its terms, the TVPRA requires that federal officers transfer only "unaccompanied" children, not children who enter the country *accompanied* by a parent.

---

[9] Plaintiffs in *C.M.* and *A.P.F.* assumed—unlike Plaintiffs here—that federal officials maintained a *policy* of family separation and detention, whereas Plaintiffs here plead and maintain that there was no such policy. (FAC ¶¶ 128, 218.) But this distinction does not impact the conclusion: policy or not, federal employees were not mandated by any statute or regulation to separate families. If anything, that Plaintiffs here allege that the conspiracy to separate and detain families was not a formal "policy" *strengthens* the claim that the DCE does not apply: in contrast to *C.M.* and *A.P.F.*, Plaintiffs allege that *no* mandate—statutory, policy-based, or otherwise—required family separations.

And children are not deemed "unaccompanied" by the mere risk that the government *may* choose—in the future—to charge and detain their parents. *See C.M.*, 2020 WL 1698191, at *3; *A.P.F.* Order, at 5–6 (same); House Comm. on Appropriations, Dep't of Homeland Sec. Appropriations Bill, 2006: *Report Together with Additional Views (to accompany H.R. 2360)*, 109th Cong., 1st Session, 2005, H. Rep. 38 (stating that "[c]hildren who are apprehended by DHS while in the company of their parents are not in fact 'unaccompanied' and if their welfare is not at issue, they should not be placed in ORR custody").

Next, Defendant suggests that the DCE applies because "the transfers to HHS were expressly mandated by the TVPRA *once the children were designated as [unaccompanied children]*." (U.S. Mtn. at 25 (emphasis added).) Defendant here argues that federal officers are permitted (or indeed, required) to manufacture a 'mandate' to separate families by first separating the child from his or her parent, and then labeling the child "Unaccompanied." This position defies logic, and twists the TVPRA—a statute designed to *protect* immigrant children from mistreatment and abuse—beyond recognition. Multiple courts have therefore concluded that "minor children who were apprehended at the border *without their parents*" are "true 'unaccompanied alien children'" in contrast to "migrant children detained with their parents at the border and who were thereafter separated from their parents." *Ms. L.*, 310 F. Supp. 3d at 1139 (S.D. Cal. 2018) (emphasis added); *see also C.M.*, 2020 WL 1698191, at *3; *A.P.F.* Order, at 5–6.

Defendant finally proposes an alternative to the first prong of the DCE test: Defendant argues that the DCE applies when federal officials are merely *authorized* by statute or regulation to take the challenged action. (*See* U.S. Mtn. at 24–25.) Defendant supports this theory by citing *Borquez* v. *United States*, 773 F.2d 1050, 1053 (9th Cir. 1985), even though its applicability has been twice rejected by courts in this District in this exact context. *C.M.*, 2020 WL 1698191, at *3; *A.P.F.* Order, at 5 n.2. In *Borquez*, injured plaintiffs brought FTCA claims for negligent maintenance and operation of a dam after the

federal government transferred responsibility for maintaining and operating the dam to a private corporation. *See Borquez*, 773 F.2d at 1052. The government was expressly empowered *by statute* to make the transfer, and there was no evidence that the transfer was made unreasonably. *Id. Borquez* therefore "represent[ed] a challenge to the statutory authority of the government to transfer full care, operation and maintenance" of the dam by way of a tort action—precisely the type of challenge that the DCE was designed to prevent. *Id.*; *see also C.M.*, 2020 WL 1698191, at *3. Here, by contrast, Plaintiffs allege that federal officers separated families and subjected them to harsh treatment unreasonably and outside the explicit authorization of any statute or regulation.

The DCE does not apply here for the additional reason that the federal officials involved did not act with "due care." *See Welch*, 409 F.3d at 652. Rather, these officials acted unreasonably, carelessly, and cruelly in separating families. Due care requires "at least some minimal concern for the rights of others." *Myers & Myers, Inc.* v. *U.S. Postal Serv.*, 527 F.2d 1252, 1262 (2d Cir. 1975). When assessing due care, courts apply a "reasonableness" standard. *Hydrogen Tech. Corp.* v. *United States*, 831 F.2d 1155, 1161 (1st Cir. 1987). Defendant does not contest, and therefore concedes, that federal officers separated families without due care. *Prescott* v. *United States*, 973 F.2d 696, 701–03 (9th Cir. 1992) (stating that it is government's burden to show all elements of FTCA exception); *Save the Peaks Coal.* v. *U.S. Forest Serv.*, No. 09-CV-8163, 2010 WL 3800896, at *2 (D. Ariz. Sept. 22, 2010) (holding that moving party must "raise all of its legal arguments in a substantive brief, rather than in reply"). And it is difficult to imagine conduct that exhibits a more callous disregard for individuals' well-being than that of the federal officials in this case: parents were forced to watch, including by physical restraint, while their terrified screaming children were taken from them without explanation (FAC ¶¶ 64, 82, 96, 114); Plaintiffs were threatened with physical violence if they did not comply with officers' orders to separate (*id.* ¶¶ 106–07); families were told they would never be reunited or were

given little-to-no information on when they would see each other again (*id*. ¶¶ 65, 68–69, 86, 88, 115).  The DCE does not apply here.

**C.     The Government's Misconduct Is Analogous to Private Tortious Conduct Actionable Under Arizona Law**

Subject matter jurisdiction exists here because Plaintiffs have established "that 'a private individual under like circumstances [as those alleged in the FAC] would be liable under state law'" for IIED, negligence, and loss of consortium.  *A.P.F.* Order, at 4 (quoting *United States* v. *Muniz*, 374 U.S. 150, 153 (1963)); *see also* 28 U.S.C. § 1346(b)(1).  Recognizing that the federal government "could never be exactly like a private actor," the Ninth Circuit requires a court only to "find the most reasonable analogy" to private tortious conduct.  *Dugard* v. *United States*, 835 F.3d 915, 919 (9th Cir. 2016) (citation omitted).  Plaintiffs easily meet this burden here.  Indeed, courts in this District have recognized that private analogues exist for each of Plaintiffs' FTCA-based claims—IIED, negligence, and loss of consortium—under Arizona law under similar circumstances, including twice in nearly identical family separation FTCA cases.  *See A.P.F.* Order, at 4–5 (holding that private analogues existed for "IIED, negligence, and loss of child's consortium in Arizona under reasonably similar circumstances" to family separations at issue here); *C.M.*, 2020 WL 1698191, at *2 (holding that private analogues existed for negligence and IIED claims).  Nor can the government shield itself from liability by arguing, as Defendant does in its brief, that its misconduct occurred in the context of performing governmental functions that no private person could undertake.  (U.S. Mtn. at 28–29.)  It is well settled that the FTCA waives sovereign immunity for tortious conduct even when the United States is engaged in "uniquely governmental functions" not generally performed by private persons when, as here, such conduct would be actionable "under like circumstances."  *See Indian Towing Co.* v. *United States*, 350 U.S. 61, 64–65 (1955) (rejecting government's

argument that 28 U.S.C. § 2674 excludes "liability for negligent performance of 'uniquely governmental functions'").

### 1. The United States' Conduct Has Private Analogues Under Arizona Law

This Court has subject matter jurisdiction over Plaintiffs' FTCA claims because private persons in similar circumstances to those alleged in the FAC have been held liable under Arizona law for IIED, negligence, and loss of consortium.[10]

*First*, courts in this District have already recognized claims for IIED under Arizona law where, as here, the complaint includes "ample factual allegations suggesting that the government's separation of families was motivated by malice." *C.M.*, 2020 WL 1698191, at *2; *see also A.P.F.* Order, at 4–5. Similarly, in *Martinez* v. *United States*, No. CV-13-00955, 2018 WL 3359562, at *11 (D. Ariz. July 10, 2018), the court denied the government's motion for summary judgment on an IIED claim where "[federal] agents' actions," which included separating family members and threatening the family's incarceration, "were motivated by malice." The FAC contains numerous factual allegations similar to these cases, including detailed allegations that the government's misconduct toward Plaintiffs was motivated by malice (*see, e.g.*, FAC ¶¶ 9, 15, 69, 79, 89, 104, 114–16, 120, 125–30, 168, 171–72, 242–58), and resulted in severe trauma (*see, e.g.*, FAC ¶¶ 64–65, 69, 73, 76, 86–92, 94–101, 106–12, 114–16, 121–23).

*Second*, Arizona has recognized negligence claims in analogous circumstances where private persons or entities have individuals in their care and custody and thus owe a duty of care to those individuals. Under Arizona law, private persons or entities may be

---

[10]  Moreover, the garden-variety tort claims Plaintiffs assert are broadly applicable under the laws of many states. *See, e.g.*, Restatement (Third) of Torts § 46 (Intentional (or Reckless) Infliction of Emotional Harm) (Am. L. Inst. 2012); Restatement (Second) of Torts § 281 (Statement of the Elements of a Cause of Action for Negligence) (Am. L. Inst. 1965); Restatement (Second) of Torts § 700 (Causing Minor Child to Leave or not to Return Home) (Am. L. Inst. 1977).

liable in negligence for breaching their duty of care. *See Estate of Smith* v. *Shartle*, No. CV-18-00323, 2020 WL 1158552, at *2 (D. Ariz. Mar. 10, 2020). In *Shartle*, for example, the court held that the Bureau of Prisons had a duty—analogous to that of a nursing home— to provide care for persons "who are dependent upon them to make daily housing and safety determinations," and that the court had jurisdiction over FTCA-based negligence claims for breach of that duty. *Id*. Moreover, in circumstances nearly identical to those here, two courts in this District found that "[f]ederal immigration officials . . . are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care." *C.M.*, 2020 WL 1698191, at *2 (citing *Flores* v. *Sessions*, No. 85-CV-4544 (C.D. Cal. Feb. 2, 2015) (ECF 101)); *see also Sauceda* v. *United States*, No. CV-07-2267, 2009 WL 3756703, at *4 (D. Ariz. Nov. 5, 2009) (finding that trier of fact reasonably could conclude federal agent's conduct leading to arrest was analogous to use of unreasonable force by private person effecting citizen's arrest). The United States therefore had a clear duty to care for—or, at a minimum, a duty to avoid harming—Plaintiffs while they were in government custody, and the government can be held liable under the FTCA for breach of that duty. (*See, e.g.*, FAC ¶¶ 58–69, 80, 84, 95, 98, 105, 110, 115.)

*Third*, Arizona has recognized loss of consortium claims in analogous circumstances. For a loss of consortium claim, the injury "need not be the functional equivalent of death or even be categorized as 'catastrophic.'" *Pierce* v. *Casas Adobes Baptist Church*, 162 Ariz. 269, 272 (1989). Instead, a plaintiff may maintain a loss of consortium claim where a defendant's actions caused an "injury rendering the parent unable to provide love, care, companionship, and guidance to the child"—the injuries Plaintiffs allege here. *Bickler* v. *Senior Lifestyle Corp.*, No. CV-09-00726, 2010 WL 2292985, at *6 (D. Ariz. June 8, 2010) (quoting *Villareal* v. *State, Dep't of Transp.*, 160 Ariz. 474, 480 (1989)); *see also Dobek* v. *Wal-Mart Stores, Inc.*, No. CIV 03-297, 2007

WL 2069832, at *4 (D. Ariz. July 17, 2007) ("Arizona courts treat loss of consortium claims as one body of law, regardless of whether the plaintiff is a child or a parent.").

In *Bickler*, the court denied defendant's motion for summary judgment on loss of consortium claims brought by the adult children of residents of a nursing home who were left unable to recognize their children after they were assaulted at a nursing home operated by defendant. 2010 WL 2292985, at *6. In *A.P.F.*, another judge in this District analogized loss of consortium claims arising out of the government's family separations to the claims in *Bickler*, in that Arizona law "awards damages for the loss of a child's consortium when a caretaker's actions cause 'significant interference with the normal relationship between parent and child.'" *See A.P.F.* Order, at 5 (citing *Bickler*, 2010 WL 2292985, at *6). Here, taking Plaintiffs' allegations as true, the prolonged and unnecessary family separations, and lingering effects of the trauma suffered by both parents and young children, are analogous to loss of consortium claims recognized by Arizona law. (*See, e.g.*, FAC ¶¶ 64–74, 82–83, 86–89, 96–101, 107–12, 117–23.)

### 2. A "Governmental Action" Exception Does Not Shield the United States from FTCA Liability for Plaintiffs' Injuries

This Court should reject Defendant's assertion that it is shielded from FTCA liability because its forced separations of Plaintiffs constituted "governmental action of the type that private persons could not engage in," and therefore there is no private person analogue for its conduct. (U.S. Mtn. at 28–29 (citation omitted).)

As an initial matter, Defendant's argument ignores settled Supreme Court and Ninth Circuit precedent, which has uniformly rejected the government's narrow construction of the private analogue doctrine. *See United States* v. *Olson*, 546 U.S. 43, 46 (2005) ("[T]his Court rejected the Government's contention that there was 'no liability for negligent performance of uniquely governmental functions.'" (quoting *Indian Towing*, 350 U.S. at 64)); *see also Dugard*, 835 F.3d at 919; *A.P.F.* Order, at 4–5; *C.M.*, 2020 WL 1698191, at

*2; *Xue Lu* v. *Powell*, 621 F.3d 944, 947 (9th Cir. 2010) (stating that FTCA does not "require a claimant to point to a private person performing a governmental function"). The Supreme Court has made clear that the private analogue standard requires only that Plaintiffs allege that private persons would be liable under "like circumstances"—*not* "the same circumstances." *Indian Towing*, 350 U.S. at 64–65; *see also Dugard*, 835 F.3d at 919 (holding that, because the federal government "could never be exactly like a private actor," courts are required only to "find the most reasonable analogy" for tortious conduct) (citation omitted); *A.P.F.* Order, at 4 (plaintiffs' allegations only "must demonstrate 'a persuasive analogy with private conduct'" (quoting *Westbay Steel, Inc.* v. *United States*, 970 F.2d 648, 650 (9th Cir. 1992))).[11]

In addition to ignoring the relevant precedent, Defendant misconstrues Plaintiffs' pleading and mischaracterizes Plaintiffs' claims. The government contends that there can be no private analogue to its tortious conduct because "only the federal government has the authority to enforce federal criminal and immigration laws and make determinations concerning detention," and Plaintiffs' harms purportedly "stem from the federal government's decision to enforce federal immigration laws and hold Plaintiffs in secure adult detention pending their immigration proceedings." (U.S. Mtn. at 29.)[12] As alleged

---

[11] The United States' reliance on *Sea Air Shuttle Corp.* v. *United States*, 112 F.3d 532, 537 (1st Cir. 1997), is misplaced. (U.S. Mtn. at 29.) In that case, the First Circuit found that the government had no relationship with the plaintiffs "to which state law would attach a duty of care in purely private circumstances." *Id.* Here, the government had a relationship with Plaintiffs that gave rise to a duty of care, which the government breached. *See also C.M.*, 2020 WL 1698191, at *2.

[12] Defendant cites several cases holding that certain governmental immigration and detention decisions have no private person analogue and therefore cannot be the basis of claims under the FTCA. (U.S. Mtn. at 29–31.) All of these cases are distinguishable from Plaintiffs' claims here because they addressed different causes of action and different kinds of government conduct. *See McGowan* v. *United States*, 825 F.3d 118, 127 (2d Cir. 2016) (finding no private person analogue for New York wrongful solitary confinement claim); *Chen* v. *United States*, 854 F.2d 622, 626 (2d Cir. 1988) (no private person analogue for claims arising solely out of regulatory violations); *Elgamal* v. *United States*, No. CV-13-00867, 2015 WL 13648070, at *2–3 (D. Ariz. July 8, 2015),

- 24 -

in the FAC, however, Plaintiffs' claims do *not* stem from the enforcement of immigration laws. Rather, they arise out of the malicious actions Defendant took against Plaintiffs— separating parents and children and keeping them separated for weeks and months— *independent* of any supposed immigration or law enforcement prerogative (or pretext). (*See, e.g.*, FAC ¶¶ 154–56, 170–73 (families separated in deliberately inhumane manner), ¶¶ 9, 132–33, 224, 263–69 (family separations caused severe trauma and irreparable harm to separated parents and children), ¶¶ 73, 159, 222 (parents who were not criminally charged still had children taken), ¶¶ 169, 217, 222 (families who presented lawfully at ports of entry were separated).)

Defendant's argument that Plaintiffs' claims are not actionable under Arizona law is similarly unavailing. Defendant relies on *Muscat by Berman* v. *Creative Innervisions LLC*, 244 Ariz. 194, 198 (Ct. App. 2017), as the sole authority for its argument that Plaintiffs' claims are not actionable under Arizona law because "[n]o properly-convicted criminal has a legally protected interest in being free from the inherent consequences of the resulting sentence." (U.S. Mtn. at 32–33 (quoting *Muscat*, 244 Ariz. at 198).) *Muscat* is inapposite: the plaintiff sued a group home he lived in for negligently failing to supervise him during an outing, which he claimed resulted in him committing a crime for which he was convicted and incarcerated, causing him to suffer injuries that arose *solely* from his

---

*aff'd sub nom Elgamal* v. *Bernacke*, 714 F. App'x 741 (9th Cir. 2018) (denial of petition for adjustment of immigration status); *Akutowicz* v. *United States*, 859 F.2d 1122, 1125–26 (2d Cir. 1988) (revocation of citizenship status); *Bhuiyan* v. *United States*, 772 F. App'x 564, 565 (9th Cir. 2019) (classification of immigration status); *Mazur* v. *U.S. I.N.S.*, 957 F. Supp. 1041, 1042–43 (N.D. Ill. 1997) (claim for denial of visa lottery application barred by statute of limitations); *Omoniyi* v. *Dep't of Homeland Sec.*, No. 10-cv-1344 (DF), 2012 WL 892197, at *9 (S.D.N.Y. Mar. 13, 2012) (denial of naturalization application); *Ryan* v. *U.S. Immigration & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) (privilege against civil courthouse arrests does not apply to civil immigration arrests). Plaintiffs here do not bring a wrongful confinement claim under New York law, nor are they challenging detention itself. Plaintiffs also do not challenge the government's violation of its own regulations or adjudications of their immigration statuses; for several Plaintiffs, no such adjudications ever even took place.

lawful incarceration. 244 Ariz. at 196–98. Here, the government's malicious and discriminatory conduct and its utter failure to keep track of which children belonged to which parents—and to reunite parents with their children after any sentences were completed—were not "inherent consequences" (*id.*) of certain Plaintiffs' detention. *See Ms. L.*, 302 F. Supp. at 1164 (holding government's failure to reunite mother and child following separation upon mother's prosecution for misdemeanor entry gave rise to due process claim).

Because the government's conduct was not undertaken to enforce federal law—indeed, no federal law required the United States to separate parents and children and keep them separated (*see supra* Section IV.B.)—Defendant's arguments are without merit. And even if Plaintiffs' injuries were caused by the government's enforcement of immigration law, this Court would still have subject matter jurisdiction. As described above, Plaintiffs' allegations must demonstrate only "a persuasive analogy with private conduct," *Westbay*, 970 F.2d at 650, and it is not necessary "to point to a private person performing a governmental function," *Xue Lu*, 621 F.3d at 947. Here, as in *C.M.* and *A.P.F.*, the United States' separations of Plaintiffs may be analogized to tortious conduct by private persons, even if that conduct purportedly related to a governmental function. *See A.P.F.* Order, at 4–5; *C.M.*, 2020 WL 1698191, at *2; *see also*, *supra*, Section IV.C.1.

This Court therefore has subject matter jurisdiction over Plaintiffs' FTCA claims because Plaintiffs bring claims against Defendant that are analogous to IIED, negligence, and loss of consortium claims recognized in similar circumstances under Arizona law.

## D. The Misrepresentation Exception Does Not Apply

Defendant argues that claims brought by Plaintiffs Lorena and Jacinto "alleg[e] separation by removal," and are barred by the FTCA's misrepresentation exception. Defendant asserts that Lorena and Jacinto consented to removal—thus prolonging their separations—based on Defendant's misrepresentations about what that consent meant.

(U.S. Mtn. at 31–32.)  Defendant mischaracterizes these Plaintiffs' claims:  they make no claim of "separation by removal."  Instead, like the other Plaintiffs, they claim damages from the forced separation from their children and the resultant anguish, suffering, and injury those separations caused.

Lorena and Jacinto already had been forcibly separated and already had suffered great harm before federal officers lied to them that consenting to removal would allow Lorena to be reunited with Karina or aid Jacinto's asylum case.  (FAC ¶¶ 88, 120.)  In order to be barred under this exception, claims must "*aris[e] out of* . . . misrepresentation, [or] deceit."  28 U.S.C. § 2680(h) (emphasis added).

When assessing whether this exception should apply, the court should look to the "gravamen" of the suit, and whether the misrepresentation at issue is "essential to the claim."  *Renteria* v. *United States*, 452 F. Supp. 2d 910, 915 (D. Ariz. 2006).  The government cites cases where courts found the misrepresentation was essential.  (U.S. Mtn. at 32 (citing *Pauly* v. *U.S. Dep't of Agric.*, 348 F.3d 1143, 1151 (9th Cir. 2003) (plaintiffs' injuries were "*entirely* the result of allegedly inaccurate information provided by [defendant]" (emphasis added))); *see id.* (citing *Esrey* v. *United States*, 707 F. App'x 749, 750 (2d Cir. 2018) (plaintiff's "principal injuries" arose out of IRS's concealment of information).  Here, through Defendant's actions, "thousands of children, including many two years old or younger, [were] torn from their parents' arms with little or no warning." (FAC ¶ 2.)  This campaign of forced separations is the basis of Jacinto and Lorena's claims. Lorena was "devastated" by the separation from her daughter, Karina, which caused her to suffer from insomnia, dizzy spells, lack of appetite, and hair loss, as well as long-term impacts on her relationship with her daughter.  (FAC ¶¶ 85, 87, 92.)  Similarly, when officers pulled Jacinto's son Andrés "kicking and screaming out of his arms," Jacinto experienced such anguish that he wept in his cell, and it is from that violent separation that Jacinto and Andrés's ongoing trauma flows.  (FAC ¶¶ 114–16, 123.)

That the government later coerced Lorena and Jacinto into consenting to removal based on misrepresentations did indeed cause them further anguish, but that is not the gravamen or the whole of their claims, and their claims do not "arise out of" those "misrepresentations." That deception merely exacerbated existing and ongoing injuries from already prolonged separations. Like other named Plaintiffs who were *not* tricked into consenting to their own removal, Plaintiffs Lorena and Jacinto's claims focus on their initial violent separations from their family members in the first instance, not any misrepresentations that followed. As the Supreme Court held, "[n]either the language nor history of the [FTCA] suggest[s] that . . . a claimant is barred from pursuing a distinct claim arising out of *other aspects* of the Government's conduct," simply because a misrepresentation occurred, as "[a]ny other interpretation would encourage the Government to shield itself completely from tort liability by adding misrepresentations to whatever otherwise actionable torts it commits." *Block* v. *Neal*, 460 U.S. 289, 298 (1983).

The District of Arizona has already rejected this same argument from the government in *A.P.F.* The court there found that the alleged misrepresentations played a very minor role in the overall arc of those plaintiffs' claims, which focused on the same conduct and harms as Lorena and Jacinto's claims here. *A.P.F.* Order, at 8. This Court should reach the same result in this action.

### E.     Plaintiffs' FTCA Claims Are Not Constitutional Torts

The government argues that, although "Plaintiffs label their claims as claims for IIED, negligence, and loss of consortium," the FTCA is inapplicable because, properly understood, "[Plaintiffs'] claims are based on alleged constitutional violations." (U.S. Mtn. at 36.) This argument completely inverts the premise that the plaintiff is the "master of the complaint." *ARCO Envtl. Remediation, L.L.C.* v. *Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1114 (9th Cir. 2000) (explaining that plaintiff "may defeat removal by choosing not to plead independent federal claims."). Plaintiffs plead causes of actions

against the United States that arise under state tort law, not the U.S. Constitution. *See supra* Section IV.C. This Court need look no further than the *C.M.* and *A.P.F.* decisions, both of which denied motions to dismiss nearly identical FTCA family separation claims without any discussion of those claims purportedly arising under the U.S. Constitution. *C.M.*, 2020 WL 1698191, at \*2–5; *A.P.F.* Order, at 3–10; *see also Tekle* v. *United States*, 511 F.3d 839, 856 (9th Cir. 2007) (permitting parallel FTCA and *Bivens* claims to move past summary judgment in district court). The Supreme Court has long held that it is "crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Carlson* v. *Green*, 446 U.S. 14, 20 (1980) (citing congressional comments explaining that the FTCA "contemplates that victims . . . shall have an action under FTCA against the United States as well as a *Bivens* action" against the officials). Plaintiffs' *Bivens* and FTCA claims are parallel and complementary. (*See* FAC ¶¶ 282–338.)

To be sure, federal officials also violated the Constitution, often via the same actions that underlie Plaintiffs' FTCA claims against the United States. *See C.M.*, 2020 WL 1698191, at \*4–5; *A.P.F.* Order, at 6–8. But the fact that the same misconduct violates the Constitution, federal statutes, and state law and provides the basis for multiple claims for relief does not convert Plaintiffs' state law claims into constitutional ones. *Loumiet*, 828 F.3d at 945 ("A plaintiff who identifies constitutional defects in the conduct underlying her FTCA tort claim . . . does not thereby convert an FTCA claim into a constitutional damages claim against the government."); *Limone* v. *United States*, 579 F.3d at 102 n.12 (finding that unconstitutional conduct fell outside DFE, and stating that "we do not view the FBI's constitutional transgressions as corresponding to the plaintiffs' causes of action—after all, the plaintiffs' claims are not *Bivens* claims—but rather, as negating the discretionary function defense"). Rather, as relevant to the FTCA claims, federal officials' constitutional violations foreclose Defendant's DFE argument, and demonstrate that these actions were unreasonable under the DCE. *See supra* Sections IV.A. and IV.B.

The out-of-circuit cases Defendant claims support its artful pleading theory do not withstand scrutiny.  Most do not even discuss artful pleading.  The court in *Linder* did not hold or even suggest that the plaintiff's malicious prosecution and intentional infliction of emotional distress claims arose under the Constitution.  *Linder* v. *United States*, 937 F.3d 1087, 1088–92 (7th Cir. 2019).  Rather, the court, in dicta, suggested—in contrast to the law of this Circuit and the arguments above, *supra* Section IV.A.—that the Constitution is not an obstacle to the DFE.  *Id.*

Defendant also points to the Ninth Circuit's decision in *Delta Savings Bank* v. *United States*, but there, plaintiffs brought claims that were premised on violations of a federal civil rights statute, not state law.  265 F.3d 1017, 1024 (9th Cir. 2001).  The court rejected the theory that "an FTCA claim can be brought for violations of federal statutes that provide private federal causes of action"; rather, an analogous state law is required.  *Id.*; *see also Hornbeck Offshore Transp., LLC* v. *United States*, 569 F.3d 506, 510 (D.C. Cir. 2009) ("Where a claim is 'wholly grounded on a duty' created by a federal statute such that there is no local law that could support liability of a private party for similar actions, the FTCA does not apply.").  Consistent with *Delta Savings Bank*, Plaintiffs' FTCA claims are premised on violations of *Arizona* law; their federal claims are distinct.  Likewise, in *Peña Arita* v. *United States*, the court did not hold that plaintiffs' pleaded state law claims *arose* under the Constitution.  470 F. Supp. 3d 663, 687–88 (S.D. Tex. 2020).  Rather, the court said that "*to the extent plaintiffs attempt* to bring constitutional tort claims under the FTCA," such claims were not actionable.  *Id.* at 688 (emphasis added).  Plaintiffs here do not attempt to bring constitutional tort claims under the FTCA.

The only true artful pleading case that Defendant cites, *JBP Acquisitions* (also out-of-circuit), relates to pleading a non-qualifying state law tort claim.  Constitutional claims were not at issue.  *JBP Acquisitions, LP* v. *U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1265 (11th Cir. 2000).  There, plaintiff pleaded a state law negligence claim, but the court found that

the claim was—in substance—a state law misrepresentation claim. *Id.*[13] The court explained that misrepresentation is "the 'crucial element of the chain of causation' upon which [plaintiff's] claims are founded." *Id.* Here, by contrast, the very same governmental conduct violates both state common law and federal constitutional rights. There is no basis in case law or in prudence for this Court to convert Plaintiffs' state claims into constitutional ones.

### F. Venue Is Proper in this District

The District of Arizona is the proper venue for Plaintiffs' FTCA claims. Under 28 U.S.C. § 1402(b), an FTCA claim "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." There is no dispute that the vast majority of acts or omissions complained of occurred in Arizona. The Court should, therefore, deny Defendant's motion to dismiss for lack of venue under Federal Rule of Civil Procedure 12(b)(3).

Where, as here, claims are premised on acts or omissions spanning multiple districts, courts honor plaintiffs' chosen venue when conduct in that venue was "not insubstantial in relation to the totality of events giving rise to plaintiff's grievance." *Franz* v. *United States*, 591 F. Supp. 374, 378 (D.D.C. 1984) (quoting *Lamont* v. *Haig*, 590 F.2d 1124, 1134 n.62 (D.C. Cir. 1978)) (internal quotation marks omitted). In *Franz,* the plaintiff sued the United States under the FTCA after his ex-wife and their three children—over whom the ex-wife had custody—were placed in the Witness Protection Program without any prior notice or consultation with plaintiff despite his entitlement to visitation rights. *Id.* at 375–76. The court was asked to decide whether venue over the FTCA claims would be proper in (i) Pennsylvania, where the divorce decree was entered and where the children were placed in Witness Protection, (ii) Virginia, the location of the Marshals Service—the organization

---

[13] As discussed above, *supra* Section IV.D., none of Plaintiffs' claims is premised on misrepresentation.

responsible for administering the Witness Protection Program, or (iii) the District of Columbia, the location of the Department of Justice—also responsible for the decision to place the plaintiff's children into the Program. *See id.* at 377–79. The court determined that venue would be proper in *any* of these three venues, given the "not insubstantial" conduct in each district, and permitted the case to continue in the District of Columbia. *See id.* at 378; *see also Forest* v. *United States*, 539 F. Supp. 171, 175–76 (D. Mont. 1982) (finding venue appropriate where plane crash occurred, even though erroneous messages that purportedly caused crash were transmitted from another district).

Here, venue is proper as to all Plaintiffs because the lion's share of the governmental acts and omissions alleged in the FAC—as well as the lion's share of Plaintiffs' injuries—occurred in Arizona or were directed at Arizona. (*See, e.g.*, FAC ¶¶ 19–22, 47, 68, 79–80, 84–85, 89, 97, 144, 155, 160, 167, 203.) *See also Andrade* v. *Chojnacki*, 934 F. Supp. 817, 830–31 (S.D. Tex. 1996) (transferring FTCA claims from district in which government officials planned law enforcement raid to district in which raid, and plaintiffs' resulting injuries, occurred). Where family separations occurred in this District—which they did for the majority of Plaintiffs here—two Arizona district courts have denied motions to dismiss without noting any issue with venue. *See generally C.M.*, 2020 WL 1698191; *A.P.F.* Order. Here, Plaintiffs allege—among other things—that federal officials *in* Arizona separated and detained the majority of Plaintiff families, and that other federal officers undertook actions from outside of Arizona *directed at* Arizona, such as participating in meetings to plan family separations (White House Defendants), and licensing additional Arizona facilities for lengthy, inhumane, post-separation detentions (ORR/HHS Defendants). (Pls.' Opp'n Br. at 9–10.)

None of Defendant's arguments to the contrary is persuasive. *First*, Defendant argues that venue is improper "[i]nsofar as the acts of which Plaintiffs complain were by officials at the 'highest levels' of government" planning and ordering family separations

from outside the District of Arizona.  (U.S. Mtn. at 34.)  But Plaintiffs' FTCA claims are premised on conduct spanning all levels of government, including the federal officials who carried out the separations, not just high-level officials.  (*See* FAC ¶¶ 350, 354, 359 (incorporating all allegations into each FTCA count).)  *See also C.M.*, 2020 WL 1698191, at *5 (concluding that, where all allegations are incorporated into each count, the court will not "parse the Complaint to assess whether claims with respect to individual factual allegations are barred").  Even considered in isolation, the acts of high-level officials render venue proper because those acts were directed at the District of Arizona.  *See Forest*, 539 F. Supp. at 175–76 (finding that, where federal officials' conduct in one district causes tortious effects in another, venue is proper in district where tortious effect occurs).

*Second*, Defendant argues specifically that Plaintiffs Jorge and Jacinto cannot establish venue for their or their children's FTCA claims because their separations took place outside the District.  (*See* U.S. Mtn. at 34–35.)  But Jorge and Jacinto's claims are properly brought in the District of Arizona based on the pendent venue doctrine.  The pendent venue doctrine provides that, where venue over particular claims might otherwise be unwarranted, venue is proper if those claims "share a nucleus of operative fact with claims as to which venue is proper."  *Bartel* v. *F.A.A.*, 617 F. Supp. 190, 198 n.31 (D.D.C. 1985); *Beattie* v. *United States*, 756 F.2d 91, 103 (D.C. Cir. 1984).  Jorge and Jacinto's claims plainly arise from the same nucleus of operative fact as their corresponding *Bivens* and Section 1985/86 claims (as well as those of other Plaintiffs), and Individual Defendants waived any argument that venue is improper over Plaintiffs' *Bivens* and Section 1985/86 claims.  (*See generally* Ind. Defs.' Mtn.)[14]  Jorge and Jacinto's claims also arise from the

---

[14]  Individual Defendants did not object to venue over Plaintiffs' *Bivens* and Section 1985/86 claims in their Motion to Dismiss, and thereby waived this argument.  *See Misch on Behalf of Estate of Misch* v. *Zee Enters., Inc.*, 879 F.2d 628, 631–32 (9th Cir. 1989) (finding that defendant waived improper venue argument by failing to raise it in prior motion for summary judgment); *see also Kina* v. *United Air Lines, Inc.*, No. 08-4358, 2008 WL 5071045, at *3 (N.D. Cal. Dec. 1, 2008).  Further, under Section 1391(b)—the relevant provision for *Bivens* and Section 1985/86 claims—venue is

same nucleus of operative fact as their co-Plaintiffs' FTCA claims. Moreover, pendent venue would further "judicial economy, convenience, and fairness." *See Bartel*, 617 F. Supp. at 198 n.31. Forcing Jorge and Jacinto to litigate their claims in two districts— one for their FTCA claims and one for their *Bivens* and Section 1985/86 claims—would be inconvenient and burdensome to the parties, their lawyers, and the courts, and would raise the risk of inconsistent rulings. Because "complex cases should be managed and tried as a group," the "prudent and judicially efficient course" would be to hear their entire lawsuit—including Plaintiffs' *Bivens* and Section 1985/86 claims—in a district where venue is appropriate "for the majority of plaintiffs' claims." *Andrade*, 934 F. Supp. at 830 n.28.

*Third,* the government argues that venue is improper over *all* Plaintiffs' FTCA claims if venue is improper over Jorge and Jacinto's claims. (*See* U.S. Mtn. at 35.) Plaintiffs submit that venue *is* proper over Jorge and Jacinto's FTCA claims for the reasons above; but even if it were not, there is no reason that venue would be wrong for Plaintiffs who were separated in Arizona. None of the cases the government cites holds that where venue is improper over one plaintiff's FTCA claims, venue is improper with respect to other plaintiffs' FTCA claims. In fact, the only case the government cites that is on point stands for the opposite proposition. In *Andrade*, the court found venue was improper as to the FTCA claims of some plaintiffs, but *proper* as to others. *Andrade*, 934 F. Supp. at 829– 31. The court, thus, did not find that one instance of improper venue defeats venue for all plaintiffs. Although the court in *Andrade* decided to transfer all of the FTCA claims, it did so *not* because it lacked venue over all of the claims, but rather because it felt that the claims should be heard together to "avoid piecemeal litigation." *See id.* at 830–31. That

appropriate if (among other reasons) defendants are "subject to the court's personal jurisdiction" with respect to the claims. This Court has specific personal jurisdiction over the claims against Individual Defendants (Pls.' Opp'n Br. at 8–17), and, thus, venue is proper over those claims.

only proves Plaintiffs' point here:  Plaintiffs' claims should be heard together, in a single district where the majority of the tortious activity occurred—the District of Arizona.

Even if this Court were to determine that venue is not proper over Jorge's or Jacinto's FTCA claims, the Court should at most sever those claims from the other Plaintiffs' claims and transfer them alone.[15]  *See* Fed. R. Civ. P. 21; 28 U.S.C. § 1406(a); *see also LaGuardia* v. *Designer Brands, Inc.,* No. 19cv1568, 2020 WL 2463385, at *6 (S.D. Cal. May 7, 2020) ("[A] district court may sever any claim against a party to create a new action that may be transferred to cure a defect in venue.").  Section 1406(a) states that transfer is appropriate "in the interest of justice," by which Congress intended to "remov[e] whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits." *Goldlawr, Inc.* v. *Heiman*, 369 U.S. 463, 466–67 (1962); *Sinclair* v. *Kleindienst*, 711 F.2d 291, 294 (D.C. Cir. 1983) ("Transfer is particularly appropriate where, as here, without a transfer the cause of action would be barred by the running of the applicable statute of limitations.").  Dismissal of Jacinto and Jorge's FTCA claims would plainly result in precisely the kinds of obstacles that Congress intended to remove.

## V.  CONCLUSION

For the reasons stated herein, the United States' motion to dismiss should be denied.

---

[15]  This Court may not transfer Plaintiffs' FTCA claims unless it first determines that it has subject matter jurisdiction over those claims.  *Sanderson* v. *Spectrum Labs, Inc.*, 248 F.3d 1159, 1160 n.1 (7th Cir. 2000); *Proctor & Schwartz, Inc.* v. *Rollins*, 634 F.2d 738, 740 n.3 (4th Cir. 1980); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3827 (4th ed. 2020) ("A district judge may not order transfer under Section 1406(a) unless the court has jurisdiction of the subject matter of the action . . . .").  Judicial efficiency also would be served by first deciding subject matter jurisdiction.  If venue lies over at least one Plaintiff—and Plaintiffs submit it lies over all of them—this Court must evaluate subject matter jurisdiction of FTCA claims in any event.  Should any claim require a transfer, this Court should still determine subject matter jurisdiction, which would otherwise require redundant briefing in the transferee court.

Respectfully submitted,

By:  /s/ *Jacqueline P. Rubin*

Jacqueline P. Rubin
(admitted *pro hac vice*)
Geoffrey R. Chepiga
(admitted *pro hac vice*)
Emily Goldberg
(admitted *pro hac vice*)
Hallie S. Goldblatt
(admitted *pro hac vice*)
Steven C. Herzog
(admitted *pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Alexander A. Reinert
(admitted *pro hac vice*)
55 Fifth Avenue, Room 1005
New York, NY 10003
(212) 790-0403

*Attorneys for Plaintiffs A.I.I.L., on*
*behalf of herself and her minor*
*children, J.A.H.I. and M.E.H.I.;*
*L.L.H.O., on behalf of herself and*
*her minor child, K.E.O.H.; J.L.V.A.,*
*on behalf of himself and his minor*
*child, D.S.V.H.; J.I.S., on behalf of*
*himself and his minor child,*
*B.L.S.P.; and J.J.P.B., on behalf of*
*himself and his minor child,*
*A.E.P.F.*

December 23, 2020

Lee Gelernt
(admitted *pro hac vice*)
Anand Balakrishnan
(admitted *pro hac vice*)
Daniel A. Galindo
(admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660

Stephen Kang
(admitted *pro hac vice*)
Spencer Amdur
(admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
(917) 620-3555

Christine Keeyeh Wee
ACLU FOUNDATION OF ARIZONA
P.O. Box 17148
Phoenix, AZ 85011
(602) 650-1854

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by means of the District Clerk's CM/ECF electronic filing system on December 23, 2020.

/s/ *Jacqueline P. Rubin*
Jacqueline P. Rubin