BRIAN M. BOYNTON
Acting Assistant Attorney General
JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
THEODORE W. ATKINSON
Trial Attorney
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285
Facsimile: (202) 616-5200

Attorneys for the United States of America

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A.I.I.L., on behalf of herself and her minor children, J.A.H.I. and M.E.H.I.; L.L.H.O., on behalf of herself and her minor child, K.E.O.H.; J.L.V.A., on behalf of himself and his minor child, D.S.V.H.; J.I.S., on behalf of himself and his minor child, B.L.S.P.; and J.J.P.B., on behalf of himself and his minor child, A.E.P.F., | Case No. 4:19-cv-00481-JCH |
| | **THE UNITED STATES OF AMERICA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| Plaintiffs, | |
| v. | |
| Jefferson Beauregard Sessions III, Former Attorney General of the United States, et al., and the United States of America, | |
| Defendants. | |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

ARGUMENT IN REPLY ......................................................................................................... 1

    I.    Plaintiffs' Claims Are Barred By The Discretionary Function Exception ........................... 1

    II.    Plaintiffs' Claims Are Barred By The Due Care Exception ................................... 8

    III.    Plaintiffs' Constitutional Tort Claims Are Not Actionable Under the FTCA .............. 12

    IV.    Plaintiffs' Claims Are Not Actionable Under The FTCA Because There Is No Private Person Analogue ............................................................................................................... 14

    V.    Plaintiffs' Claims Are Not Actionable Under Arizona Law ........................................... 16

    VI.    Plaintiffs' Claims Relating To Their Removals Are Barred By the Misrepresentation Exception ............................................................................................................................ 17

    VII.    Venue Is Not Proper In This District .......................................................................... 18

CONCLUSION ....................................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Statutes:**

6 U.S.C. § 279 ............................................................................................................ 10

8 U.S.C. § 1225 ......................................................................................................... 12

8 U.S.C. § 1231 ........................................................................................................... 4

8 U.S.C. § 1232 ...................................................................................................... 6, 10

8 U.S.C. § 1225 ........................................................................................................... 4

8 U.S.C. § 1226 ........................................................................................................... 4

28 U.S.C. § 1346 ................................................................................................... 13-14

28 U.S.C. § 1402 ................................................................................................... 18-19

28 U.S.C. § 2680 ......................................................................................................... 9

28 U.S.C. § 2680(a) ..................................................................................................... 9

**Cases:**

*Andrade v. Chojnacki*,
   934 F. Supp. 817 (S.D. Tex. 1996) ....................................................................... 19

*Armstrong v. Squadrito*,
   152 F.3d 564 (7th Cir. 1998) ................................................................................. 3

*Baie v. Sec'y of Def.*,
   784 F.2d 1375 (9th Cir.) ...................................................................................... 11

*Bartel v. F.A.A.*,
   617 F. Supp. 190 (D.D.C. 1985) ........................................................................... 20

*Beattie v. United States*,
   756 F.2d 91 (D.C. Cir. 1984) ............................................................................... 20

*Bickler v. Senior Lifestyle Corp.*
   No. 09-CV-00726, 2010 WL 2292985 (D. Ariz. June 8, 2010) ........................... 16

*Blanco Ayala v. United States*,
   982 F.3d 209 (4th Cir. 2020) ............................................................................. 5, 7

*Boggs v. United States*,
   987 F. Supp. 11 (D.D.C. 1997) ....................................................................... 18-19, 20

*Borquez v. United States*,
   773 F.2d 1050 (9th Cir. 1985) ............................................................................... 9

*Bruesewitz v. Wyeth LLC*,
   562 U.S. 223 (2011) ............................................................................................. 11

*Bunikyte v. Chertoff*,
   No. A-07-CA-164-SS, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ................ 5-6

*C.M. v. United States*,
  No. 19-CV-05217, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ........................ 1

*Campbell v. Chavez*,
  402 F. Supp. 2d 1101 (D. Ariz. 2005) ...................................................... 1

*D.B. v. Cardall*,
  826 F.3d 721 (4th Cir. 2016) ................................................................ 11

*Daniels v. Williams*,
  474 U.S. 327 (1986) ........................................................................... 1

*Denson v. United States*,
  574 F.3d 1318 (11th Cir. 2009) ............................................................. 4

*Doe v. DiGenova*,
  779 F.2d 74 (D.C. Cir. 1985) ................................................................ 9

*Doe v. Holy See*,
  557 F.3d 1066 (9th Cir. 2009) .............................................................. 5

*Dominguez-Portillo*,
  2018 WL 315759 ............................................................................... 5

*Dupree v. United States*,
  247 F.2d 819 (3d Cir. 1957) ............................................................. 9-10

*Estate of Smith v. Shartle*,
  No. 18-CV-00323, 2020 WL 1158552 (D. Ariz. Mar. 10, 2020) ................... 16

*Farley v. Greyhound Canada Trans. Corp.*,
  No. 03-cv-0344, 2009 WL 1851037 (W.D.N.Y. June 26, 2009) ............... 16-17

*FDIC v. Meyer*,
  510 U.S. 471 (1994) ............................................................. 12, 13, 14

*Flores v. Lynch*,
  828 F.3d 898 (9th Cir. 2016) ........................................................... 5, 6

*Foster v. United States*,
  522 F.3d 1071 (9th Cir.  2008) ........................................................... 18

*Franz v. United States*,
  591 F. Supp. 374 (D.D.C. 1984) .......................................................... 19

*Galvin v. Hay*,
  374 F.3d 739 (9th Cir. 2004) ............................................................... 4

*Garza v. United States*,
  161 F. App'x 341 (5th Cir. 2005) ....................................................... 2-3

*Gomez v. Arizona*,
  No. CV-16-04228, 2017 WL 5517449 (D. Ariz.  Nov. 17, 2017) ................... 1

iii

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ................................................................. 3

*Hatahley v. United States*,
    351 U.S. 173 (1956) .............................................................. 11-12

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018) ............................................................. 10

*Kauffman v. Anglo-American School of Sofia*,
    28 F.3d 1223, 359-60 (D.C. Cir. 1994) ........................................20

*Linder v. United States*,
    937 F.3d 1087 (7th Cir. 2019) ................................................. 13

*Loughlin v. United States*,
    286 F.Supp.2d 1 (D.D.C. 2003) ................................................ 3

*Loumiet v. United States*
    255 F. Supp. 3d 75 (D.D.C. 2017) ............................................. 4

*Loumiet v. United States*,
    828 F.3d 935 (D.C. Cir. 2016) ................................................. 4

*Martinez v. United States*,
    No 18-00955, 2018 WL 3359562 (D. Ariz. July 10, 2018) ................. 15

*Mount Homes, Inc. v. United States*,
    912 F.2d 352 (9th Cir.1990) ................................................... 18

*Ms. L. v. ICE*,
    310 F. Supp. 3d 1133 (S.D. Cal. 2018) ...................................... 1

*Ms. L. v. ICE*,
    415 F. Supp. 3d 980 (S.D. Cal. 2020) ...................................... 1

*Nurse v. United States*,
    226 F.3d 996 (9th Cir. 2000) ............................................... 1-2, 2

*Peña Arita v. United States*,
    -- F. Supp. 3d --, 2020 WL 3542256 ....................................... 8, 13

*Powell v. United States*,
    233 F.2d 851 (10th Cir. 1956) ................................................ 9

*Reuber v. United States*,
    750 F.2d 1039 (D.C. Cir. 1984) .............................................. 20

*Ruiz ex rel. E.R. v. United States*,
    No. 13-CV-124, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) ............ 8

*Ryan v Napier*,
    245 Ariz. 54 (2018) ............................................................ 16

*Ryan v. U.S. Immigration & Customs Enf't*,
    974 F.3d 9 (1st Cir. 2020) ................................................ 14, 17

*Sickman v. United States*,
   184 F.2d 616 (7th Cir. 1950) ............................................................................ 9

*Smith v. United States*,
   507 U.S. 197 (1993) ...................................................................................... 20

*United States v. Dominguez-Portillo*,
   No. 17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) ............... 5

*Villanueva v. United States*,
   708 F. Supp. 2d 960 (D. Ariz. 2009) ..................................................... 11

*Welch v. United States*,
   409 F.3d 646 (4th Cir. 2005) .................................................................. 9

*White v. United States*,
   No. 3:17-CV-683-JPG-MAB, 2019 WL 4418579 (S.D. Ill. Apr. 22, 2019) ........................................ 20

v

In response to Plaintiffs' Opposition (ECF No. 55) ("Opposition" or "Opp'n") to the United States' motion to dismiss for lack of subject matter jurisdiction (ECF No. 53) ("MTD"), the United States submits this reply. The United States has rescinded the Zero-Tolerance Policy, denounced the prior practice of separating children from their families at the United States-Mexico border, and committed itself to family reunification. Nevertheless, well-established legal doctrines require dismissal of this tort lawsuit.

## ARGUMENT IN REPLY

### I.    Plaintiffs' Claims Are Barred By The Discretionary Function Exception

Plaintiffs attempt to circumvent the discretionary function exception by arguing that the separations from their children violated their constitutional rights.  *See* Opp'n at 7-11. As a threshold matter, negligence cannot violate the Due Process Clause of the Constitution. *See Daniels v. Williams*, 474 U.S. 327, 331-32 (1986); *Campbell v. Chavez*, 402 F. Supp. 2d 1101, 1102 (D. Ariz. 2005) ("Mere negligence does not amount to a constitutional deprivation."); *Gomez v. Arizona*, No. CV-16-04228, 2017 WL 5517449, *4 n.1 (D. Ariz. Nov. 17, 2017) (rejecting due process claim, because "[m]ere negligence is insufficient— 'the Constitution does not guarantee due care on the part of state officials.'") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998)).  Thus, any argument that constitutional violations can defeat the discretionary function exception is inapplicable to Plaintiffs' negligence claims.

Moreover, Plaintiffs' sweeping, and overly simplified, argument that the discretionary function exception does not apply whenever a constitutional violation has been

alleged has no support in Ninth Circuit law.[1]  In *Nurse v. United States,* 226 F.3d 996 (9th

Cir. 2000), the Ninth Circuit held that there could be situations where the discretionary

function exception applies notwithstanding a constitutional violation.  *Id.* at 1002 n.2.

Further, that the constitutional provision allegedly violated must have a requisite degree of

specificity to overcome the discretionary function exception is hardly some "newfangled"

argument, Opp'n at 9, as the Ninth Circuit clearly recognized that the "level of specificity"

of the constitutional provision at issue is a pertinent factor in the discretionary function

exception analysis.  *Id.* at 1002 n.2.; *see also Garza v. United States*, 161 F. App'x 341, 343

(5th Cir. 2005) (holding that Eighth Amendment's prohibition against cruel and unusual

---

[1] Plaintiffs assert that "[c]ourts in this District have already twice rejected the government's arguments that the [discretionary function exception] bars FTCA claims on these facts, holding that the government does not have discretion to violate the Constitution by separating families in immigration detention."  Opp'n at 8.  First, the two lawsuits cited by Plaintiffs – *C.M. v. United States*, No. 19-CV-05217, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) and *A.P.F. v. United States*, No. 20-CV-00065 (D. Ariz. July 27, 2020) (ECF 36) – are related cases before the same judge.  Second, Plaintiffs argue that the court held in *C.M.* and *A.P.F.* that the discretionary function exception did not apply to "these facts." Opp'n at 8.  But the factual circumstances of Plaintiffs' separations are materially different from the separations in *C.M.* and *A.P.F.*: that is, a criminal history in the arriving alien's home country (Lorena); an unlawful re-entry while subject to orders of removal (Jacinto, Jorge, and Jairo); a criminal re-entry (Jorge); and a criminal charge and incarceration (Jairo). *See* MTD at 9-11, 17-18.  These factual circumstances were not presented in *C.M.* and *A.P.F.*; thus, those cases were not decided on "these facts."  Furthermore, while Plaintiffs, like the court in *C.M. and A.P.F.*, rely heavily on *Ms. L. v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018), the district court in *Ms. L.* subsequently made clear that separation decisions appropriately involve considerations of an alien's criminal history, risk of flight (for which prior immigration history is directly relevant), suitability for release into the community, and standards for placement in a family residential center. *See Ms. L. v. ICE*, 415 F. Supp. 3d 980, 992-93 & 997 (S.D. Cal. 2020).  The United States respectfully submits that *C.M.* and *A.P.F.* were incorrectly decided, but, in any event, did not involve consideration of the circumstances presented here.

2

punishment did not define a course of action "specific enough to render the discretionary function exception inapplicable"). The constitutional right to due process lacks specificity, as determining whether it has been violated involves an evaluation of the totality of the circumstances, rather than an application of a clear and fixed standard. *See* MTD at 18 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) and *Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998)).

Furthermore, the putative right to family integrity while in immigration detention was not clearly established at the time of the separations at issue in this action. *See* MTD at 20. Plaintiffs do not refute this argument. Rather, Plaintiffs argue that the question of whether a constitutional right was clearly established is relevant to a *Bivens* action but not the discretionary function exception. Opp'n at 9-10. The FTCA was intended to provide plaintiffs with a remedy against the United States instead of federal employees personally. There is no indication whatsoever that Congress intended for the United States to be liable for the very same conduct for which an individual employee would be immune, or to have more limited protection under the discretionary function exception than what is afforded to government officials under the common law doctrine of official immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). And while there is not a threat of personal liability in an FTCA action, the prospect of litigation based on the discretionary decision-making of government officials would chill important governmental functions by deterring those officials from consequential acts because of debatable constitutional issues – a societal cost beyond just financial liability. *Id.* at 814; *accord Loughlin v. United States*, 286 F.Supp.2d

3

1, 23 (D.D.C. 2003) ("[P]rotecting government officials in carrying out such difficult choices is the purpose of the discretionary function exception").

Indeed, this sound reasoning underlies the decision in *Denson v. United States*, 574 F.3d 1318, 1137-38 (11th Cir. 2009). In *Denson*, the court of appeals held that when the conduct underlying the FTCA claim is alleged to be unconstitutional and the plaintiff seeks to avoid the discretionary function exception on such grounds, courts must ask whether a *Bivens* claim based on such conduct could survive. If not, then the discretionary function exception is not overcome. *Id.* at 1337. And, of course, a *Bivens* claim cannot survive if the conduct at issue "does not violate clearly established rights of which a reasonable person would have known." *Id.* (quoting *Harlow*, 457 U.S. at 818.[2] Thus, because the putative right to family integrity during immigration removal proceedings was not clearly established at the time of the separations (and still is not clearly established), Plaintiffs' allegations that their separations from their children violated the Constitution do not overcome the discretionary function exception.

Furthermore, Plaintiffs do not – and cannot – refute that the federal government possesses the express statutory authority to detain aliens after they illegally enter the

---

[2] Plaintiffs cite no case expressly holding otherwise. Plaintiffs cite to *Galvin v. Hay*, 374 F.3d 739 (9th Cir. 2004), where an FTCA claim was allowed to proceed even though the *Bivens* claim was dismissed. But the arguments made herein by the United States were not presented or addressed in *Galvin*. Plaintiffs also incorrectly assert that the D.C. Circuit rejected this argument in *Loumiet v. United States*, 828 F.3d 935 (D.C. Cir. 2016). To the contrary, the court of appeals in *Loumiet* expressly reserved judgment on the issue, stating that it "would leave for another day the question whether the FTCA immunizes exercises of policy discretion in violation of constitutional constraints that are not already clear" and expressly stated that it was a question for the district court to explore on remand. *Loumiet*, 828 F.3d at 946. Notably, on remand the district court held that the discretionary function exception did not apply, but only after first determining that the constitutional right allegedly violated was clearly established at the time. *See Loumiet v. United States* 255 F. Supp. 3d 75, 83 (D.D.C. 2017).

4

country, *see* 8 U.S.C. §§ 1225, 1226(a), and to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1). These decisions indisputably involve discretion. *See* MTD at 16-17; *see also Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020) ("Discretion lies at the heart of the DHS law enforcement function."). Rather, Plaintiffs argue that "the government breached non-discretionary duties owed to Plaintiffs in violating the mandates of the *Flores* settlement and federal law." Opp'n at 12. Such vague and general references to the *Flores* consent decree and federal law cannot overcome the discretionary function exception. Plaintiffs must identify a statute, regulation or policy setting forth a course of conduct that is both mandatory and specific, as well as conduct that violates said mandatory and specific statute, regulation, or policy. *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (citation omitted). Plaintiffs have failed to do so.

Moreover, Plaintiffs' characterization of the *Flores* consent decree as requiring family unity is contrary to both the plain language of the decree and controlling case law. *See* MTD at 7-8, 15. According to the Ninth Circuit, the *Flores* consent decree "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Flores v. Lynch*, 828 F.3d 898, 906 (9th Cir. 2016); *see also United States v. Dominguez-Portillo*, No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]"). Nor does the *Flores* consent decree provide any rights to adult detainees,

including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte, ex rel. Bunikiene v. Chertoff*, No. A-07-CA-164-SS, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). While the *Flores* consent decree gives preference for the release of a minor to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908. Accordingly, the *Flores* consent decree does nothing to change the federal statutes and regulations requiring alien minors to be transferred to ORR custody and placed in the "least restrictive" setting when their parents are securely detained by immigration authorities. *Id.* at 904. Under federal law and the *Flores* consent decree, such children cannot be held in adult detention facilities. Thus, far from prohibiting separation, once an adult alien is securely detained the law essentially requires it. As one court explained:

> Though family unification is a stated goal of both the *Flores* Settlement and U.S. immigration policy generally, nothing in the settlement agreement expresses a preference for releasing parents who have violated immigration laws. In fact, the context of the *Flores* Settlement argues against this result: the Settlement was the product of litigation in which unaccompanied minors argued that release to adults other than their parents was preferable to remaining in custody until their parents could come get them.

*Bunikyte*, 2007 WL 1074070, at *16.

Likewise, nothing in the *Flores* consent decree authorizes the government to circumvent the federal statutory procedures governing release of children from ORR custody. The statutory framework prescribes a process that the agency must follow to ensure the health and safety of the children before they are released from ORR custody. Thus, the TVPRA states that a child may be placed with a proposed custodian only after ORR "makes a determination that the proposed custodian is capable of providing for the child's physical

6

and mental well-being."  8 U.S.C. § 1232(c)(3)(A).  Thus, decisions regarding where to place children whose parents are in detention, and when and to whom to release them, are imbued with discretion.

Regarding the second prong of the discretionary function exception test, it is well-established that decisions regarding whether, where, and with whom aliens are detained are susceptible to policy considerations.  *See* MTD at 16-18; *see also Blanco Ayala,* 982 F.3d at 215 ("In deciding whom to investigate, detain, and then remove, DHS officers must make all the kinds of classic judgment calls the discretionary function exception was meant to exempt from tort liability."); *id.* at 217 (enforcement decisions are based on "the need for effective enforcement of immigration policy—a policy which touches upon vital national interests in law enforcement at the borders.").  This is especially true here when the decision-making implicates not only law enforcement and immigration policy considerations, but also considerations of child safety and welfare.

Plaintiffs assert that the exception does not apply because the conduct at issue was motivated by "malice and an indifference to the warnings of experts and other responsible officials."  Opp'n at 14.  However, the subjective intent of the decision-makers and whether and to what extent certain factors were weighed or considered during the decision process are of no relevance to the discretionary function exception analysis.  *See* MTD at 13-14.

Instead of addressing the cases cited by the United States that establish that the discretionary decision-making challenged herein was based on policy considerations, Plaintiffs rely on premises liability cases asking whether the government followed proper safety measures.  Opp'n at 13-14.  Such cases are clearly inapposite.  The decision-making

challenged herein involved considerations of national security and law enforcement priorities, amongst other policy concerns, not the safety of visitors on federal property.[3]

Finally, Plaintiffs cannot overcome the exception by arguing that acts or omissions relating to their detention and custody – that is, an alleged lack of communications between parent and child and inadequate conditions of confinement – are not susceptible to policy analysis. Opp'n at 14-15. Even if such allegations are considered apart from the challenged separations, they are still independently barred by the discretionary function exception. That is so because those allegations involve precisely the sort of policy-based discretionary actions with respect to detainees' conditions of confinement that courts have repeatedly held are not actionable under the FTCA. Accordingly, courts have rejected similar claims challenging opportunities for communication while in detention, the computer systems and databases used by the government, and general confinement conditions, such as temperature and crowding, as barred by the discretionary function exception. *See* MTD at 21-24. Indeed, in a recent case involving a family separation, the court dismissed claims that an alien was detained apart from his children without "adequate safeguards", leading to his suicide, on the ground that such decisions were barred by the discretionary function exception. *See Peña Arita v. United States*, -- F. Supp. 3d --, 2020 WL 3542256, at *8-9 (S.D. Tex. June 30, 2020).

## II.     Plaintiffs' Claims Are Barred By The Due Care Exception

---

[3] Plaintiffs' reliance on *Ruiz ex rel. E.R. v. United States*, No. 13-CV-124, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) is also misplaced. *Ruiz* did not involve a family separation resulting from policy decisions regarding whether, where, and with whom to detain aliens pursuant to the government's express statutory authority.

Plaintiffs rely on the Fourth Circuit's decision in *Welch v. United States*, 409 F.3d 646 (4th Cir. 2005), in arguing that the due care exception only applies where a statute or regulation *requires* certain conduct. Yet, as Plaintiffs implicitly acknowledge by relying solely on unpublished district court cases, the Ninth Circuit has never adopted this test, which is inconsistent with the plain language of section 2680(a). *See* Opp'n at 16. Indeed, section 2680 refers to the "execution" of a statute or regulation – such language encompasses statutes and regulations that "require" certain actions as well as statutes and regulation which simply "authorize" certain conduct. *See* MTD at 24-25. Thus, the Ninth Circuit and other courts of appeals have held that claims were barred by the due care exception because the governmental action was "authorized" by law. *Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985) (due care exception barred claim where Secretary of the Interior was "authorized, *in his discretion*, to transfer . . . the care, operation, and maintenance of all or any part of the project works, subject to such rules and regulations as he may prescribe") (emphasis added). [4] Further, as the Ninth Circuit and other courts of appeal have recognized, the due care exception inquiry turns on whether a government employee acted pursuant to or in furtherance of the authority afforded by statute or

_____

[4] *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950) (landowners' claims barred because governmental actions authorized by Migratory Bird Treaty Act); *Doe v. DiGenova*, 779 F.2d 74, 88 n.26 (D.C. Cir. 1985) (actions authorized by regulations protected by due care exception); *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957) (exception applies "[w]here government employees act pursuant to and in furtherance of regulations"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (due care exception barred claims based on employees' acts "performed under and in furtherance of the regulation"). Notably, in *Sickman*, the court of appeals also decided that the government actions were "discretionary" and thus the discretionary function exception barred the landowner's claims, further demonstrating that conduct can be protected by the due care exception when that conduct involves discretion.

9

regulation, not whether a statute or regulation mandated the specific alleged harm.  *Dupree*, 247 F.2d at 824 ("Where government employees act pursuant to and in furtherance of regulations, *resulting harm* is not compensable under the act[.]") (emphasis added; citations omitted).  Thus, Plaintiffs are wrong that for the due care exception to apply, the statutes at issue must have expressly mandated the separation of families.

Nonetheless, even under the analysis Plaintiffs advocate, the due care exception still bars their claims at least in part because, while the initial decision to charge or securely detain Plaintiffs reflects an exercise of discretion, the applicable statutory and regulatory framework requires separation once an alien parent is securely detained.    The INA "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018).  As established in the United States' motion, Plaintiffs' children could not be held in secure detention facilities with Plaintiffs.  *See* MTD at 7-9 & 15.  Once the discretionary decision was made to charge Plaintiffs or they were securely detained, their children were rendered unaccompanied alien children, 6 U.S.C. § 279(g)(2), and the TVPRA mandated that DHS "*shall transfer the custody of such child* to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child," 8 U.S.C. § 1232(b)(3) (emphasis added).  Thus, federal law not only authorized, but required the separation at that point.

To avoid the clear directives of the TVPRA, Plaintiffs argue that their children were improperly classified as "unaccompanied" because they entered the United States together.  *See* Opp'n at 17-18.  However, the statutory definition of "unaccompanied alien child" expressly encompasses the circumstances when parents are physically present in the United

States but not "available to provide care and physical custody" of their children. 6 U.S.C. § 279(g)(2); *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016) (minor determined to be UAC despite living in United States with his mother). Such a situation arises when a parent is held in criminal custody or secure immigration detention pending removal – pursuant to the government's express statutory authority – and thus is not available to provide care and physical custody of his or her child.[5] Moreover, the determination as to whether a child meets the statutory definition of UAC is in itself a discretionary act that cannot be challenged under the FTCA. *See Baie v. Sec'y of Def.*, 784 F.2d 1375, 1377 (9th Cir.), cert. denied, 479 U.S. 823 (1986) (the agency's "interpretation of the statute is a plainly discretionary administrative act the 'nature and quality' of which Congress intended to shield from liability under the FTCA"); *Villanueva v. United States*, 708 F. Supp. 2d 960, 975 (D. Ariz. 2009) ("An agency's interpretation of its statutes and regulations is protected by the discretionary function exception.").

Finally, Plaintiffs' assertion that government employees failed to act with "due care" because of alleged mistreatment while Plaintiffs were detained misconstrues the due care exception. *See* Opp'n at 19. The "due care" inquiry asks only whether a government employee acted pursuant to statute or regulation. *Hatahley v. United* States, 351 U.S. 173, 181 (1956) (finding a lack of due care because the government did not follow the requirements of its own regulations). Plaintiffs do not allege that government employees

---

[5] Plaintiffs rely on comments made in a House Appropriations Committee report, *see* Opp'n at 18 (citing H.R. No. 109-79, at 38 (2006)), which was related to an appropriations bill considered by Congress years *after* the passage of the HSA, the statute which defines the term UAC. Such comments are afforded no weight when interpreting a statute. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (no weight afforded to a later Congress' interpretation of statute).

11

deviated from the statutory framework regarding immigration detention set forth at 8 U.S.C. § 1225 and 8 U.S.C. § 1231(g)(1), or the dictates of the TVPRA in transferring custody of their children to ORR.  In fact, the transfer was statutorily required once the government exercised its discretion to charge Plaintiffs, they were mandatorily detained, and their children were rendered unaccompanied alien children.  The conduct upon which Plaintiffs' claims are based – separation from their children – resulted from the government's discretionary enforcement of federal immigration statutes.  Plaintiffs' interpretation would effectively remove the due care exception from the FTCA wherever plaintiffs allege the government failed to act with "due care"— that is, according to Plaintiffs, negligently or tortiously.  But every claim under the FTCA alleges tortious or negligent conduct.  Thus, the due care exception would provide the United States no immunity at all if it were inapplicable in cases where a plaintiff simply alleges that government employees acted negligently or tortiously.

### III.    Plaintiffs' Constitutional Tort Claims Are Not Actionable Under the FTCA

Plaintiffs' claims further fail because the FTCA does not authorize constitutional tort claims like those Plaintiffs bring here.  Plaintiffs do not refute that the Supreme Court has held that claims for constitutional torts are not cognizable under the FTCA.  *See* MTD at 26 (citing *FDIC v. Meyer*, 510 U.S. 471, 478 (1994)).  Rather, Plaintiffs claim that they may bring parallel claims under the FTCA and *Bivens*.  Opp'n at 29.  But that, of course, does not mean that a plaintiff may bring constitutional claims under the guise of common law torts in an FTCA action, which is what Plaintiffs seek to do here.  Far from refuting the constitutional nature of their claims, the Opposition only confirms it.  Plaintiffs maintain,

for example, that the separations were "unconstitutional", Opp'n at 7, and "Defendant's constitutional violations are patent." *Id.*

Plaintiffs contend that the First Amended Complaint does not assert claims involving constitutional violations because they pleaded common-law claims "premised on violations of Arizona law" for negligence, intentional infliction of emotional distress (IIED), and loss of consortium. *See* Opp'n at 30. But this argument improperly focuses on the labels that Plaintiffs' apply to their claims rather than the substance of such claims. The law is clear that the particular label a plaintiff applies to a claim does not deprive it of its constitutional nature, and indeed courts routinely hold that claims pleaded as so-called "common-law torts" are in fact prohibited "constitutional torts" because they invoke alleged constitutional violations. *See* MTD at 27; *Linder v. United States*, 937 F.3d 1087, 1091 (7th Cir. 2019) (dismissing claims for malicious prosecution and IIED because claims invoked constitutional theories); *Peña Arita*, 2020 WL 3542256, at *8 (dismissing IIED and negligence claims based on family separation because "constitutional tort claims are not actionable under the FTCA").

Plaintiffs attempt to downplay their emphasis in the First Amended Complaint on the alleged unconstitutionality of the challenged conduct by arguing that they are merely asserting "common law" tort claims. Opp'n 29. In other words, Plaintiffs frame the conduct at issue in the First Amended Complaint as constitutional violations to overcome the discretionary function exception, but then characterize that very same conduct in the Opposition as common law torts to avoid dismissal pursuant to 28 U.S.C. § 1346(b)(1). In so doing, however, Plaintiffs fail to reconcile their attempt to overcome the discretionary

13

function exception with allegations of constitutional violations and the Supreme Court's pronouncement that the United States "simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *Myer*, 510 U.S. at 478.

Simply put, Plaintiffs' claims are based upon the alleged violation of a constitutional right to family integrity, to which they apply the labels of common law tort claims. As discussed *infra*, the fact that there is no private person analogue and that Plaintiffs cannot state an actionable claim under Arizona law further demonstrates that their claims are constitutional claims dressed up as common law tort claims.

**IV. Plaintiffs' Claims Are Not Actionable Under The FTCA Because There Is No Private Person Analogue**

Plaintiffs' claims further fail because the governmental actions Plaintiffs challenge have no private analogue. The United States does not argue, as Plaintiffs suggest, that the conduct at issue is "uniquely governmental." Opp'n at 20. Plaintiffs' claims do not arise out of conduct that only the government typically engages in. Rather, their claims arise out of the exercise of federal statutory authority that only the government possesses. Accordingly, the challenged conduct is that for which a private person could never be sued. *See* MTD at 28-31. This is especially true when, as here, the statutory authority being exercised pertains to enforcement of federal immigration laws – namely, those relating to whether and where to detain aliens pending immigration proceedings. *Id.*; *see also Ryan v. U.S. Immigration & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign.").

And to be clear, it is the exercise of this federal statutory authority that Plaintiffs' claims are based upon, regardless of Plaintiffs' efforts to characterize them otherwise. It is undisputed that Plaintiffs were lawfully held in criminal custody or secure immigration detention pending removal proceedings. Plaintiffs do not – and cannot – challenge these governmental decisions. Thus, Plaintiffs' claims are essentially a challenge to *where* and with *whom* aliens are detained, and whether, when, and with whom to remove aliens. Such decisions are made pursuant to federal statutory authority and are in the sole province of the federal government. *See* MTD at 28-31.

Plaintiffs cannot establish a private person analogy simply by alleging that the conduct at issue was motivated by malice. Opp'n at 21. Such alleged analogue is impermissibly broad, as Plaintiffs essentially argue that there is a private analogue to any intentional infliction of emotional distress claim — regardless of the alleged conduct giving rise to the claim — because a private person is always capable of inflicting emotional distress on another. Again, the separations at issue resulted from decisions regarding whether and where to detain aliens, pursuant to the exercise of the express statutory authority of the federal government. The reasons for, or considerations that went into, the exercise of that statutory authority does not alter the fact that the exercise of such statutory authority is something that private persons simply cannot do and, thus, for which they could not be held liable.[6]

---

[6] Nor is there any merit to Plaintiffs' reliance on *Martinez v. United States*, No 18-00955, 2018 WL 3359562 (D. Ariz. July 10, 2018). Opp.'n at 21. *Martinez* did not involve the question of a private person analogy, let alone whether such an analogy exists for alleged harms resulting from the enforcement of federal law. Rather, the issue there was simply whether an element of an IIED claim under Arizona law was adequately pleaded.

## V. Plaintiffs' Claims Are Not Actionable Under Arizona Law

Plaintiffs do not persuasively argue that they have stated actionable claims under Arizona law. Plaintiffs concede that their claims are principally based on the "intentional" and "forcible" separation from their children. Opp'n at 4, 9. Yet, "an intentional act cannot also constitute negligence." *Ryan v Napier*, 245 Ariz. 54, 61 (2018). Thus, such intentional conduct by governmental employees cannot form the basis of Plaintiffs' negligence claims.

Further, even if a negligence claim could be based on the "intentional" and "forcible" separations, Plaintiffs' reliance on *Estate of Smith v. Shartle*, No. 18-CV-00323, 2020 WL 1158552 (D. Ariz. Mar. 10, 2020) and *Bickler v. Senior Lifestyle Corp.*, No. 09-CV-00726, 2010 WL 2292985 (D. Ariz. June 8, 2010), is misplaced. The duty to prevent physical harm to those in governmental custody is distinct from — and not analogous to — a putative duty of the government to exercise its express statutory authority in such a way to keep family members together while in immigration detention.

Finally, Plaintiffs' attempt to distinguish *Muscat* is unavailing. Plaintiffs argue that their separations were not the result of lawful incarcerations resulting from the enforcement of law, but the government's "malicious and discriminatory conduct" and the failure to adequately track family members and re-unite them sooner. Opp'n at 25-26. Regardless of Plaintiffs' characterizations of the enforcement actions taken by the government, Plaintiffs do not refute that their apprehensions occurred as a result of their illegal entries into the United States. *See Farley v. Greyhound Canada Trans. Corp.*, No. 03-cv-0344, 2009 WL 1851037, *3 (W.D.N.Y. June 26, 2009) ("[T]here can be no dispute [that] attempting to illegally enter the United States by eluding examination or inspection by immigration

16

officers, is a serious criminal act[.]]"). And, following these apprehensions, Plaintiffs were lawfully detained pending removal proceedings – decisions which, again, Plaintiffs do not and cannot challenge, and which by law necessitated the continued separation from their children.[7] Accordingly, the consequences of such lawful apprehensions and detentions – specifically, the separations, limited communications while the adult aliens were in custody, and the period until re-unification of parent and child – cannot be grounds for recovery under Arizona law.

## VI. Plaintiffs' Claims Relating To Their Removals Are Barred By the Misrepresentation Exception

Plaintiffs' claims related to their removals are further barred by the FTCA's misrepresentation exception. *See* MTD at 31-32. Plaintiffs argue in the Opposition that the exception does not apply because the alleged misrepresentations are "not necessary or core to Plaintiffs' claims". Opp'n at 3, 27. In particular, Plaintiffs claim that the exception is inapplicable because Lorena and Jacinto "already had been separated and already had suffered great harm before federal officers lied to them that consenting to removal would allow Lorena to be reunited with Karina or aid Jacinto's asylum case." Opp'n at 3, 27. Plaintiffs further state that "Lorena and Jacinto's claims focus on their initial violent separations from their family members in the first instance, not any misrepresentations that followed." Opp'n 28. However, insofar as these Plaintiffs allege harms, and seek to recover damages, based on their continued separations, the alleged misrepresentations are central to

---

[7] Although civil in nature, immigration arrests and resulting detention are viewed as more akin to criminal enforcement. *See Ryan*, 974 F.3d at 27 ("Just as criminal arrests implicate the uniquely sovereign interests in enforcing the penal laws and protecting the public, so too do civil immigration arrests seek to vindicate similar kinds of interests in controlling immigration and the presence of noncitizens in the country.").

their claims.  *Mount Homes, Inc. v. United States*, 912 F.2d 352, 355 (9th Cir.1990) ("[I]f the alleged misrepresentation is essential to the claim then the action is barred even though there is some other allied negligence by the government[.]").

## VII.    Venue Is Not Proper In This District

Under 28 U.S.C. § 1402 (b), FTCA claims "may be prosecuted *only* in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." (emphasis added).  Because the FTCA is a waiver of the United States' sovereign immunity, interpretation of its venue statute must comport with the "well-established principle that waivers of sovereign immunity must be construed strictly in favor of the sovereign." *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir.  2008).

Plaintiffs assert that "[t]here is no dispute that the vast majority of acts or omissions complained of occurred in Arizona," Opp'n at 31.  Plaintiffs do not claim that *all* of the allegedly wrongful acts or omissions occurred in Arizona.  Nor could they.  Unlike the claims of the other Plaintiffs, the claims of Jorge and Jacinto, as well as those of their minor children, arise from separations that occurred in Texas, not Arizona.  None of the governmental conduct challenged by Jorge and Jacinto, or their minor children, occurred in Arizona.  Nor do Jorge, Jacinto, or their children reside in this district.

In arguing that venue is proper to all Plaintiffs because it is proper to some, Plaintiffs attempt to subvert Congress' clear command that an FTCA claim be brought *only* in the district in which the plaintiff resides or in the district where the challenged acts or omissions occurred.  *See Boggs v. United States*, 987 F. Supp. 11, 18-19 (D.D.C. 1997) ("Congress, in crafting the FTCA venue statute, expressly declared that only the district in which the act

18

occurred or plaintiff's place of residence are acceptable places to bring the action."). Plaintiffs fail to cite a single case in which a court has concluded that venue for all plaintiffs was proper when venue was clearly improper as to some plaintiffs. Rather, Plaintiffs rely primarily on *Franz v. United States*, 591 F. Supp. 374, 378 (D.D.C. 1984) and *Andrade v. Chojnacki*, 934 F. Supp. 817, 830–31 (S.D. Tex. 1996) in support of their argument. Neither *Franz* nor *Andrade* stand for the proposition that a case may proceed in a judicial district other than where the plaintiff resides or where the acts or omissions occurred. Indeed, in *Andrade*, the court specifically found that although venue was proper in the Southern District of Texas as to those plaintiffs who resided in that district, the mere fact that venue was proper as to some plaintiffs was "insufficient to lay venue in the Southern District of Texas for all claims in their action or in the consolidated action." 934 F. Supp. at 830. The court transferred the case to the Western District of Texas, as Plaintiffs note, to "avoid[] piecemeal litigation." *Id.* at 830-31. Importantly, the *Andrade* court transferred the case to a district in which venue was plainly proper under 28 U.S.C. § 1402(b) as to *all* of the plaintiffs – the district in which the acts the plaintiffs complained about occurred. *Id.* at 826, 830-31.

Recognizing the flaw in their argument, Plaintiffs argue in the alternative that this court should apply the pendent venue doctrine to the FTCA claims of Jorge, Jacinto, and their children because their claims arise from the "same nucleus of operative facts" as their *Bivens* and Section 1985/1986 claims, as well as the FTCA claims of the other Plaintiffs. *See* Opp.'n at 33-34. This argument ignores established case law recognizing that there is a "strong negative presumption against courts finding discretionary pendent venue" in claims

brought under the FTCA.  *Reuber v. United States*, 750 F.2d 1039, 1048-49 (D.C. Cir. 1984), abrogated on other grounds by *Kauffman v. Anglo-American School of Sofia*, 28 F.3d 1223, 359-60 (D.C. Cir. 1994).  *See also Boggs*, 987 F. Supp. at 18-19 (declining to apply the pendent venue doctrine to FTCA claims); *White v. United States*, No. 3:17-CV-683-JPG-MAB, 2019 WL 4418579 (S.D. Ill. Apr. 22, 2019), at * 8 (holding the same).

The two cases Plaintiffs cite in support of this argument, *Bartel v. F.A.A.*, 617 F. Supp. 190, 198 n.31 (D.D.C. 1985), and *Beattie v. United States*, 756 F.2d 91, 103 (D.C. Cir. 1984) abrogated by *Smith v. United States*, 507 U.S. 197 (1993), do not dictate otherwise.  In fact, in *Bartel*, the court found it "inappropriate to exercise pendent venue with respect to" the plaintiff's FTCA claim, 617 F. Supp at 198 n.31, and accordingly dismissed that claim, *id.* at 199.  Although the court in *Beattie* did exercise pendent venue, the decision was abrogated and, in any event, the facts were "so unusual that the case can be readily distinguished."  *Boggs*, 987 F. Supp. at 19.  Namely, the *Beattie* court concluded that venue was not proper anywhere in the United States.[8]  No such rare circumstances exist in this case, and this court should not exercise pendent venue over Jorge's, Jacinto's, and their children's FTCA claims.

## **CONCLUSION**

For the foregoing reasons, this action must be dismissed.

---

[8] *Beattie* involved a lawsuit brought against the U.S. Navy after one of its planes, carrying only citizens of New Zealand and Great Britain, crashed over Antarctica. 756 F.2d at 101-04.  Since the plaintiffs were not residents of the United States, and the allegedly tortious conduct did not occur in a district of the United States, the D.C. Circuit applied pendent venue to the claims and allowed the lawsuit to proceed in the District of Columbia, the district in which the Navy was headquartered.  *Id.*

20

Dated: February 5, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JAMES G. TOUHEY, JR.
Director, Torts Branch

*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Phil MacWilliams*
PHILIP D. MACWILLIAMS
Attorney for United States of America