BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General, Civil Division
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
MARY HAMPTON MASON
(New York Bar No. 2255198)
Senior Trial Counsel
PAUL QUAST
(Colorado Bar No. 49154)
Trial Attorney
Constitutional & Specialized Tort Litigation
Torts Branch, Civil Division
Department of Justice
Box 7146 Washington, DC 20044
Email: paul.c.quast@usdoj.gov
Telephone: (202) 616-4150

Attorneys for the Individual Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A.I.I.L., et al., | No. CV-19-00481-TUC-JCH |
| Plaintiffs, | |
| v. | **REPLY IN SUPPORT OF MOTION FOR ENTRY OF FINAL JUDGMENT** |
| Jefferson Beauregard Sessions, III, et al., | |
| Defendants. | |

Under Rule 54(b), the Individual Defendants have moved for the entry of final judgment as to the *Bivens* and statutory claims asserted against them—claims which this Court fully dismissed. Individual Defendants' Motion for Entry of Final Judgment ("Mot."), Dkt. 103. In response, Plaintiffs do not dispute that the first prong of the Rule 54(b) test is met: the Court's order of dismissal was final, as it conclusively adjudicated these claims. *See* Mot. at 4. Instead, Plaintiffs contend that the second prong of the Rule 54(b) test is not met, because judicial and equitable interests warrant denying the motion. Plaintiffs' Opposition to Individual Defendants' Motion for Entry of Final Judgment ("Opp."), Dkt. 106. Plaintiffs' response is unpersuasive. As set forth below, both judicial

administrative interests and broader equities would be favored by the entry of partial final judgment as to the claims asserted against the Individual Defendants. There is no just reason to delay.

## DISCUSSION

### 1. Separability and Judicial Administration Favor Rule 54(b) Certification.

Plaintiffs argue that the claims against the Individual Defendants are not separable from their FTCA claims against the government and that entry of a Rule 54(b) judgment would not streamline the case. Plaintiffs are wrong on both counts.

*First*, the *Bivens* and statutory claims against the Individual Defendants are clearly separable from the FTCA claims against the United States; indeed, this Court even issued two separate opinions resolving the motions to dismiss as to each set of claims. Plaintiffs counter that the claims are not separable because (1) all the claims factually overlap and (2) there is at least one overlapping legal issue. Opp. at 4–5. As explained in the Individual Defendants' opening brief, Dkt. 103 at 5–6, the Ninth Circuit has held that—in complex cases—Rule 54(b) entry of partial final judgment is appropriate where the claims "involve[] distinct points of law," even if the factual issues in the claims are "closely tied" together. *Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, 863 F.3d 1178, 1186 (9th Cir. 2017);[1] *cf. Wood v. GCC Bend, LLC*, 422 F.3d 873, 879 (9th Cir. 2005) (discussing the Rule 54(b) standard in "a routine employment discrimination action" that is "not a complicated case").[2]

In any event, an appeal of the individual-capacity claims now and any appeal of the

---

[1] Plaintiffs' attempt to distinguish *Int'l Longshore & Warehouse Union*, Opp. at 5 n.1, is unpersuasive. The fact that *Int'l Longshore & Warehouse Union* involved a different area of law and a counterclaim (rather than a plaintiffs' claim) is irrelevant and Plaintiffs do not explain why those distinctions are material.

[2] Plaintiffs attempt to sidestep this law by citing to "routine" cases, such as *Gomez v. EOS CCA*, No. CV18-02740-PHX (DMF), 2020 WL 4673167, at *2 (D. Ariz. Aug. 12, 2020) ("Thus, not only do the factual issues overlap, they are also mundane and routine.")); Opp. at 3–5. But this case is plainly complex, Mot. at 5, and does not involve the "relatively routine issue[s] in litigation" that were issue in the cases Plaintiffs rely upon. *Universal Clearing Sols. LLC v. USA Techs. Inc.*, No. CV-15-00036-TUC, 2016 WL 11593114, at *2 (D. Ariz. Apr. 13, 2016); *see* Opp. at 4 (citing *Universal Clearing Solutions*).

2

FTCA claims later would not result in duplicative review of "the same set of facts." Opp. at 3. Appellate courts review *records* and, more precisely, the record pertinent to the procedural stage of a district court's disposition. This Court adjudicated the individual-capacity claims at the motion-to-dismiss stage, so review of that ruling would look to the pleadings. In contrast, the Court mostly denied the United States' motion and allowed the FTCA claims to proceed to discovery. Dkt. 77. Those claims might be dismissed at or survive summary judgment, or they might be resolved at trial. By either point of disposition, though, the record presented for appellate review will be different from that on which this Court adjudicated the individual-capacity claims. Thus, Plaintiffs' concern with wasteful duplication of appellate court effort relating to the overlapping facts is misplaced. Such concerns are at a minimum here, when all the Ninth Circuit could be asked to review is the legal sufficiency of Plaintiffs' individual-capacity claims as pleaded in their amended complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 674–75 (2009).

Next, Plaintiffs contend that there is an overlapping legal issue, but that argument collapses when one considers the posture of the claims and this Court's rulings. Plaintiffs argue that "whether the actions of federal officials violated the U.S. Constitution is relevant both to the determination of whether a *Bivens* cause of action exists and whether the discretionary function exception to the FTCA applies." Opp. at 5. Even assuming that the constitutional merits question is relevant to the discretionary function exception, whether anyone violated the Constitution is not relevant to the cause of action question on which this Court dismissed Plaintiffs' *Bivens* claims. The question of whether a cause of action exists is unrelated to the merits and instead asks "'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). That is, *whether* a right has been violated is a separate legal question from *who* should create a *remedy* to vindicate that right. *See Bush v. Lucas*, 462 U.S. 367, 373 (1983) (discussing the distinctions between rights and remedies and assuming "a federal right has been violated" before declining to extend a *Bivens* cause of action). All the legal issues in an appeal of the Court's order on the individual-capacity claims (Dkt. 76) would be distinct

from those at issue in any potential appeal of the FTCA claims, *see* Mot. at 4–5. Entry of final judgment for the Individual Defendants here would not require the Ninth Circuit to answer any legal question twice.

*Second,* even if the claims were not entirely separable, entry of a partial final judgment would still be appropriate if "resolving the claims would 'streamline the ensuing litigation.'" *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009) (quoting *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991)).

Plaintiffs argue that entering final judgment on the individual-capacity claims would not streamline the case because it would only tee up Plaintiffs' appeal, and contend they should not have to decide now whether they want to take or forgo an appeal. Opp. at 5. Whether Plaintiffs choose to appeal or not, entry of final judgment is the fastest way to resolve the Individual Defendants' qualified immunity defense. Like any prospective appellant, Plaintiffs must weigh the costs and benefits of seeking reversal on dispositive questions of law resolved against them. They may well decide to forgo an appeal, particularly in light of the Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), which closes the door to the *Bivens* claims at issue here, and the D.C. Circuit's recent across the board rejection of the identical legal issues in the family separation context against most of these same defendants, *K.O. v. Sessions*, No. 20-5255, 2022 WL 3023645, at *6 (D.C. Cir. July 29, 2022). Although Plaintiffs note the potential time an appeal would take, Opp. at 5, such timing is not unfair. It represents the same situation Plaintiffs would be in had they not elected to join the individual-capacity claims in the same lawsuit as their claims against the United States. As the "master[s] of the[ir] complaint," *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002), Plaintiffs chose to bring a multi-party lawsuit against the United States under the FTCA and the Individual Defendants personally. *Cf. generally* Fed. R. Civ. P. 20 (permitting, though not requiring, a plaintiff to join in one action claims against different parties arising out of the same transaction or occurrence); *K.O. v. United States*, No. 20-cv-12015 (D. Mass.) (bringing family separation FTCA claims in a second, differently

captioned lawsuit than their individual-capacity claims). That strategic choice should not automatically override the winning parties' need for the judgment that would have entered but for Plaintiffs' litigation strategy.

But even assuming that entry of a partial judgment would simply trigger Plaintiffs to file an appeal (as would be their right), the mere fact that there is an appeal does not foreclose a streamlining effect. Indeed, sometimes appellate resolution of legal issues "will streamline the ensuing litigation" in the district court. *Texaco*, 939 F.2d at 798. And here, it could be more efficient to segregate and conclusively resolve the *Bivens* and other personal capacity claims, rather than—as Plaintiffs suggest, *see* Opp. at 7— proceeding with discovery on the FTCA claims while simultaneously trying to account for the possibility that the Individual Defendants would remain at risk of liability and may be subjected to a subsequent round of discovery after further proceedings.[3]

While it may be premature to resolve the impact of qualified immunity on discovery now, Opp. at 5, there can be no question that the Individual Defendants' invocation of qualified immunity has the potential to complicate or delay FTCA discovery going forward. Mot. 6–7. Many of the cases Plaintiffs cite in opposition to this point are of limited relevance. *See, e.g.*, Opp at 6 (quoting *Mendia v. Garcia*, No. 10-CV-03910-MEJ, 2016 WL 3249485, at *5 (N.D. Cal. June 14, 2016) (allowing limited discovery on FTCA claims where the court had *denied* defendants' qualified immunity motion)). For example,

---

[3] Plaintiffs' argument that entry of final judgment would not streamline this case because Plaintiffs might not appeal, Opp. at 7, is unsupported. The cases they cite all involved situations where resolution of the not-dismissed claims would likely foreclose the liability of those seeking entry of final judgment because of overlap in the *legal* issues presented. *See Gonzalez v. US Hum. Rts. Network*, No. CV-20-00757-PHX, 2021 WL 1312553, at *4 (D. Ariz. Apr. 8, 2021) ("[I]f Network is ultimately found not liable, the Individual Defendants . . . are likely also not liable, regardless of jurisdiction."); *Croyle v. Theatine Fathers, Inc.*, No. CV 19-00421 WRP, 2020 WL 1452068, at *2 (D. Haw. Mar. 25, 2020) ("AMS has already signaled that, if the jurisdictional question were resolved in Plaintiffs' favor, AMS would rely on the same defenses the Theatines have raised regarding the timeliness of Plaintiffs' claims."); *Hamad v. Gates*, No. C10-591, 2011 WL 13354077, at *2 (W.D. Wash. July 22, 2011) ("Since Plaintiff admits at least a few of Gates's expected defenses would apply to the dismissed Defendants, if not all, the Court's decision on the upcoming motion may render appellate review unnecessary."); *see also* Opp. at 7 (citing *Gozalez*, *Croyle*, and *Hamad*).

Plaintiffs cite *Martin v. Naval Crim. Investigative Serv., (NCIS)*, No. 10CV1879 MDD, 2013 WL 2896879, at *11 (S.D. Cal. June 11, 2013), for the proposition that "individual defendants could be deposed on the FTCA claims even if qualified immunity applied." Opp. at 5. But in *Martin* the individuals in question had "not been named as defendants," so were not entitled to qualified immunity, even if immunity could be claimed by actual defendants in the case. *Martin*, 2013 WL 2896879, at *11. To the extent *Martin* speculated, in dicta, that some discovery could be allowed against the individuals if they were later named as defendants, it had to do with a limited exception in the summary judgment context. *Id.* (citing *Crawford–El v. Britton*, 523 U.S. 574, 593 n.14 (1998)). Plaintiffs also rely upon *Sweet v. City of Mesa*, No. CV-17-00152-PHX, 2018 WL 3633745, at *1 (D. Ariz. July 31, 2018), which, if anything, favors the Individual Defendants' arguments here. *Sweet* granted a defendant's motion to stay discovery in part while declining to stay all discovery in the case. *Id*. Specifically, the court stayed discovery as to the claim for which the defendant had raised qualified immunity, while allowing discovery on the other claims against the same defendant (for which he had not raised qualified immunity) to go forward. *Id.* Regardless, courts have broad discretion over discovery matters and courts regularly stay discovery against individual defendants where there is an outstanding defense of qualified immunity. *See* Mot. at 7 n.1.[4]

---

[4] *See also, e.g.*, *K.M. v. Ala. Dep't of Youth Servs.*, 209 F.R.D. 493, 495 (M.D. Ala. 2002), *aff'd sub nom. K.M. v. AL Dep't of Youth Servs.*, 73 F. App'x 386 (11th Cir. 2003) (staying discovery against individuals who raised qualified immunity pending an appeal); *Sosa v. Hames*, No. 05-23079-CV, 2006 WL 1284927 (S.D. Fla. May 3, 2006) (staying discovery where claims as to defendant appealing denial of qualified immunity were directly related and inextricably linked to plaintiff's claims against other defendants); *cf. JM through Foley v. New Mexico Dep't of Health*, No. CV 07-604, 2008 WL 11409126, at *2 (D.N.M. June 5, 2008) ("The Court will stay this matter as to all Defendants. If discovery were to proceed with the non-qualified immunity Defendants, as a practical matter, the qualified immunity Defendants have to participate in ongoing discovery. They would have to keep abreast of the discovery, review discovery and responses, send representatives to depositions and incur the burdens of the trial process while awaiting a resolution on the pending motions to dismiss."); *Alexander v. Hall*, No. 20-CV-21-SA, 2022 WL 879496, at *2 (N.D. Miss. Mar. 23, 2022) (staying discovery and noting that "[a]nother concern is that even if discovery is stayed as to Defendant Turner, he would be compelled to participate in the depositions of the other defendants and/or fact witnesses if they are taken while Defendant Turner's motion to dismiss asserting qualified immunity is

Plaintiffs' related argument regarding relevance, Opp. at 7, misses the mark. If final judgment is not entered, the question will be whether qualified immunity protects the individuals from "the burdens of discovery," *Iqbal*, 556 U.S. at 685–86, and/or having discovery develop in a "slanted manner," not whether the Individual Defendants have information that is relevant. Qualified immunity protects individual defendants from those burdens regardless of whether they have relevant information or not.

### 2. The Equities Favor Rule 54(b) Certification.

In their opening brief, the Individual Defendants explained why the broader equities weigh in favor of entering final judgment on the individual capacity claims, including that qualified immunity should be resolved early in a case, that the Individual Defendants face continued burdens from being defendants in this lawsuit, and that the claims against the Individual Defendants are plainly barred by existing law. Mot. at 7–8. In response, Plaintiffs raise a number of points, but none diminish the Individual Defendants' arguments.

Plaintiffs fault the Individual Defendants for filing their Rule 54(b) motion over three months after their motion to dismiss had been granted. Opp. at 8. But any delay here is not unreasonable, nor is it of any legal relevance. Critically, the Individual Defendants filed their Rule 54(b) motion well in advance of the actually relevant benchmark: discovery being sought against them personally. Although there was no deadline for seeking Rule 54(b) relief, the Individual Defendants proactively moved for entry of final judgment on the claims against them, without waiting for Plaintiffs to force the matter by seeking discovery directly from them. Moreover, *Egbert v. Boule*, 142 S. Ct. 1793 (2022), which virtually eliminates the possibility of any *Bivens* liability and provides further support for this motion, was only decided in June of this year. *See id.* at 1805 (quoting *Abbasi*, 137 S.Ct. at 1858) ("A court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a

---

pending, which would be contrary to the protections afforded public officials by qualified immunity").

damages action to proceed.'"). That recent decision makes it all the more clear that there is no reason to delay finally resolving the individual-capacity claims now. *See also K.O.*, 2022 WL 3023645, at *6 (affirming dismissal of similar claims against eleven of the same individual defendants here).

      Plaintiffs next take aim at the particular burdens identified by the individual-capacity defendants, arguing that those burdens are immaterial because the Individual Defendants are being represented by the United States and, in any event, the Individual Defendants will be involved in the discovery here whether as defendants or third-party witnesses. Opp. at 8–9. Again, Plaintiffs are wrong. Having government representation does not eliminate any of the burdens identified in the Individual Defendants' opening brief. *See* Mot. at 8. Participating merely as a third-party witness to this case after entry of final judgment and resolution of any appeal would be qualitatively distinct from participating as a once and (potentially) future party to the case (if any part of this Court's decision were reversed on appeal). *Id.* In addition to the toll of potential personal liability dangling over them, the existence of pending litigation can have personal consequences for defendants. *See* H. Allen Black, *Balance, Band-Aid, or Tourniquet: The Illusion of Qualified Immunity for Federal Officials*, 32 Wm. & Mary L. Rev. 733, 751–52 (1991). Moreover, without a final judgment, the Individual Defendants would be forced to either protect their interests by participating in discovery to the same extent as would a party defending a live claim, or figuratively sit on the discovery sidelines at the risk the record develops "in a misleading or slanted way that causes prejudice to their position." *Ashcroft*, 556 U.S. at 685. That predicament is precisely what the doctrine of qualified immunity is designed to prevent. *See id.* (recognizing a core aim of qualified immunity is to "free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'").

      Plaintiffs hint that the equities weigh in their favor because they were "forcibly separated and detained by the United States government, as a result of the planning, decision-making, and conduct of U.S. government officials and other personnel, including the Individual Defendants." Mot. at 9. Plaintiffs' suggestion confuses the equities of the

Individual Defendants' Rule 54(b) motion with the *merits* of Plaintiffs' claims. Only the former is at issue now, not the latter. To the extent that the merits of Plaintiffs' claims are at issue, that is controlled by law of the case: Plaintiffs fail to state a claim against the Individual Defendants. *See generally* Dkt. 76.[5]

## CONCLUSION

For the reasons stated above and in the Individual Defendants' opening brief, this Court should enter final judgment as to all counts against the Individual Defendants.

Dated this 5th day of August 2022.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director
Torts Branch, Civil Division

MARY HAMPTON MASON
Senior Trial Counsel, Torts Branch

*/s/ Paul Quast*
PAUL QUAST

*Counsel for Defendants*

---

[5] Plaintiffs claim that they would be burdened by having to handle an appeal simultaneously with their FTCA claims, Mot. at 9. But such a concern could be cured through a stay of the district court litigation for the duration of any appeal.

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by means of the District Clerk's CM/ECF electronic filing system on August 5, 2022.

                                              */s/ Paul Quast*
                                              Paul Quast