Jacqueline P. Rubin (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
jrubin@paulweiss.com

Lee Gelernt (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org

Attorneys for Plaintiffs

*(Additional Counsel for Plaintiffs Listed on Signature Page)*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch

PHILIP D. MACWILLIAMS
Trial Attorney
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
175 N Street, NE
Washington, DC 20530
Telephone: (202) 616-4285
Facsimile: (202) 616-5200
Attorneys for the United States of America

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| A.I.I.L., et al., | No. CV-19-00481-TUC-JCH |
| Plaintiffs, | **JOINT CASE MANAGEMENT REPORT** |
| v. | |
| Jefferson Beauregard Sessions III, et al., | |
| Defendants. | |

On July 25, 2022, the parties met and conferred via telephone concerning the items listed in Federal Rule of Civil Procedure 26(f), as well as other discovery-related items. The parties subsequently engaged in a series of follow-up discussions over email and by telephone on August 31, September 7, September 13, September 23, October 10, October 12, and October 17, seeking consensus on the items raised at the initial July 25 conference. The parties respectfully submit this Joint Proposed Case Management Report reflecting areas of agreement and disagreement regarding how discovery should proceed.

1. **Parties who attended the Rule 26(f) meeting and assisted in developing the Case Management Report**

The following counsel attended the Rule 26(f) meeting on behalf of Plaintiffs:

- Lee Gelernt

- Hannah Schoen

- David Chen

- Alex Reinert

- Geoff Chepiga

- Adam Savitt

- Lauren Varga

The following counsel attended the Rule 26(f) meeting on behalf of Defendant:

- Philip D. MacWilliams

- Walter E. Parker

- Irina M. Majumdar

- Ashley R. Garman

- Ari Nazarov

- Sarah F. Klein

- James M. McConnon

**2. List of parties in the case**

Plaintiffs (identified by pseudonym, as permitted by the Court's Order dated December 18, 2019 (Dkt. No. 22)):

- A.I.I.L. on her own behalf and on behalf of her minor children, J.A.H.I. and M.E.H.I.

- L.L.H.O. on her own behalf and on behalf of her minor child, K.E.O.H.

- J.L.V.A. on his own behalf and on behalf of his minor child, D.S.V.H.

- J.I.S. on his own behalf and on behalf of his minor child, B.L.S.P. [1]

Defendant:

- United States of America

**3. Statement of the nature of the case**

*Plaintiffs' statement*

The Court has addressed the facts alleged in Plaintiffs' First Amended Complaint in its Orders on the dismissal motions issued March 31, 2021 (Dkts. 76, 77.) Plaintiffs are four families who fled Central America: Ana and her sons, Mateo and Jaime; Lorena and her daughter, Karina; Jorge and his daughter, Diana; and Jairo and his daughter Beatriz. When they arrived in the United States seeking asylum, federal officers detained Plaintiffs at various immigration detention facilities and forcibly separated the children from their parents. Federal officials separated the children without warning, providing dishonest explanations as to where the children were going, and without providing even an opportunity to say goodbye. (FAC ¶¶ 2, 82, 96, 230.) Plaintiff families remained separated for between 2 and 16 months, with little ability to communicate with their family members and almost no information about their location or when—if ever—they would see them again. Plaintiffs suffered and continue to suffer trauma as a result of the

---

[1] The transfer of the claims of Plaintiffs J.J.P.B. and A.E.P.F. is pending (see Dkt. Nos. 77, 78, 85).

federal government's treatment.

The separations and resulting trauma were the result of a deliberate practice by the United States beginning in 2017 designed to deter people from crossing into the United States. (*Id.* ¶¶ 2–8, 19–24, 135–69, 236.)  Federal officials across multiple agencies—led by current and former officials in the Department of Justice, the Department of Homeland Security, the Department of Health and Human Services, the Office of Refugee Resettlement, and the White House—ordered and participated in the planning of family separations, oversaw and created the punitive conditions of families' confinement, and failed to fulfill their reunification responsibilities. (*Id.* ¶¶ 27–44, 125–31, 135–37, 143–66, 169–213, 227–35.)  Plaintiffs bring three causes of action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680: (i) negligence, (ii) intentional infliction of emotional distress, and (iii) loss of consortium. (*Id.* ¶¶ 350–62.)

*Defendant's statement*

This action is brought by Plaintiffs – four adult noncitizens suing on behalf of themselves and their respective five noncitizen children – under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, seeking damages from the United States arising out of the separation of each parent from his or her child following their entry into the United States across the United States-Mexico border. Am. Compl. ¶ 1. Plaintiffs assert claims against the United States for intentional infliction of emotional distress ("IIED") (Count 9), negligence (Count 10), and loss of consortium (Count 11).

As previously set forth in the United States' motion to dismiss, Plaintiff A.I.I.L. ("Ana") and her sons J.A.H.I. ("Jaimie") and M.E.H.I. ("Mateo") illegally entered the United States by crossing the southwest border between ports of entry within the U.S Border Patrol's Yuma Sector, and on May 25, 2018 were apprehended by U.S. Border Patrol agents. *See* MTD (*A.I.I.L.* ECF No. 53 at 9) (citing Am. Compl. ¶¶ 19, 62, 63). Plaintiff J.L.V.A. ("Jorge") and his daughter D.S.V.H. ("Diana") illegally entered the

United States by crossing the southwest border between ports of entry near El Paso, Texas, and on June 4, 2018 were apprehended by U.S. Border Patrol agents. *Id*. at 9-10 (citing Am. Compl. ¶¶ 21, 94).  Jorge was processed for reinstatement of a prior order of removal, and was transported to the El Paso County Detention Facility pending prosecution for criminal re-entry under 8 U.S.C. § 1326. *Id*.  The illegal entries into the United States by these Plaintiffs occurred following the Attorney General's issuance of the Zero Tolerance memorandum on April 6, 2018, and following the approval on May 4, 2018 of the Department of Homeland Security's policy to refer all adults amenable for prosecution for violations of 8 U.S.C. § 1325.

Plaintiff J.I.S. ("Jairo") and his daughter B.L.S.P. ("Beatriz") illegally entered the United States by crossing the southwest border between ports of entry within the U.S. Border Patrol's Yuma Sector, and on December 24, 2017 were apprehended by U.S. Border Patrol agents.  *See* MTD (*A.I.I.L.* ECF No. 53 at 10) (citing Am. Compl. ¶¶ 22, 103).  Jairo had been removed previously from the United States on January 23, 2015. *Id*. He was presented for prosecution for violations of 8 U.S.C. § 1326 and 8 U.S.C. § 1325 and processed for removal pursuant to 8 U.S.C. § 1182.  *Id*.  Jairo was convicted of violation of 8 U.S.C. § 1325 and sentenced to five days incarceration. *Id*.

 Plaintiff L.L.H.O. ("Lorena") and her daughter K.E.O.H. ("Karina") presented themselves at the DeConcini Port of Entry in Nogales, Arizona on December 22, 2017. *See* MTD (*A.I.I.L.* ECF No. 53 at 9) (citing Am. Compl. ¶¶ 20, 79). CBP determined that Lorena had a criminal history in El Salvador for illicit trafficking, and she was transferred to ICE custody and placed in secure adult detention facilities pending removal proceedings. *Id*.

The United States argues that it is immune from suit under the FTCA on several grounds, including that the separations of Plaintiffs were pursuant to the execution of federal criminal and immigration laws, and their claims are based upon discretionary,

policy-based conduct. The United States further argues that Plaintiffs have not pleaded actionable claims under applicable state law.

**4. Jurisdictional basis for the case**

Plaintiffs assert that the Court has jurisdiction over this case under 28 U.S.C. §§ 1331, 1346(b).

The United States asserts that the Court lacks subject matter jurisdiction over Plaintiffs' claims on the grounds set forth in its motion to dismiss (*A.I.I.L.* ECF Nos. 53, 62).

**5. Parties which have not been served**

All parties have been served.

**6. Statement whether any party expects to add additional parties or amend pleadings**

No party expects at this time to add additional parties or amend the pleadings.

**7. Listing of contemplated motions**

The parties anticipate motion practice concerning summary judgment after the close of discovery.  The parties also anticipate that there may be motion practice related to any discovery disputes for which the parties cannot reach resolution after meet and conferral.

**8. Whether the case is suitable for reference to a Magistrate Judge**

The parties do not consent to reference to a Magistrate Judge for trial.  The parties agree that the case may be suitable for reference to a Magistrate Judge for a settlement conference at a later date. *See infra* ¶ 18.

**9. Status of related cases**

There are currently nine other cases in this District that involve claims by separated families similar to those brought by Plaintiffs in this case: *C.M., et al.* v. *United States*, 2:19-cv-05217-SRB,  *A.P.F., et al.* v. *United States*, 2:20-cv-00065-SRB; *F.R., et*

- 5 -

*al.* v. *United States*, 2:21-cv-00339; *J.P., et al.* v. *United States*, 2:22-cv-00683; *B.A.D.J.* v. *United States*, No. 2:21-cv-00215; *E.S.M.* v. *United States*, No. 4:21-cv-00029; *Fuentes-Ortega* v. *United States*, No. 2:22-cv-00449; *E.C.B. v. United States*, 22-cv-00915; and *M.S.E. v. United States*, 22-cv-01242.  The *C.M.* and *A.P.F.* cases are before Judge Susan R. Bolton.  The other actions are all before different judges in this District. Fact discovery in *C.M.* and *A.P.F.* is closed.  Discovery in *F.R.* is ongoing and is currently scheduled to conclude by March 5, 2023.  Discovery has yet to commence in *J.P.*, *B.A.D.J.*, *E.S.M.*, *Fuentes-Ortega*, *E.C.B.,* or *M.S.E.*

**10. Discussion of issues related to electronically stored information**

The parties have entered into an Agreement Regarding the Format for Production of Documents and Related Matters.

**11. Discussion of issues related to claims of privilege or work product**

This Court granted the parties' Joint Motion for Protective Order and Federal Rule of Evidence 502(d) Order (Dkts. 90−91) on July 15, 2022 (Dkts. 104−05).  These adopted procedures govern issues related to claims of privilege or work product and the clawback process.

**12. Discussion of an order under Fed. R. Evid. 502(d)**

*See supra* ¶ 11.

**13. Discussion of the parties' compliance with the MIDP.**

The parties exchanged their Mandatory Initial Discovery Responses via electronic communications on May 31, 2022.  Plaintiffs additionally served supplemental mandatory initial discovery responses on Defendant via electronic mail on July 29, 2022. After this Court entered the parties' Stipulated Protective Order Regarding Confidential Information, the parties began exchanging documents that were required to be produced under the MIDP.

As part of the MIDP process, Defendant produced to Plaintiffs the deposition transcripts of 15 "policy-related" witnesses in *C.M.* and *A.P.F.*  Plaintiffs and Defendant agree not to object to the use of these "policy-related" deposition transcripts in *A.I.I.L.* on the ground that the deposition was taken in an earlier action.  *See* Fed. R. Civ. P. 32(a)(8). Plaintiffs and Defendant reserve all other objections to the use of the deposition transcripts from *C.M.* and *A.P.F.* under the Federal Rules of Civil Procedure and Federal Rules of Evidence.

*Plaintiffs' Statement:*

As part of the MIDP process, Plaintiffs produced, *inter alia*, (i) materials relied upon in filings including the Complaint and First Amended Complaint, and (ii) all relevant materials and documents in the Plaintiffs' possession and otherwise reasonably obtainable.  Plaintiffs also provided names and contact information for individuals with information related to Plaintiffs' claims and identified statements Plaintiffs gave to the media about the government's separation of Plaintiff parents from their children.

In their MIDP disclosures, Plaintiffs identified 24 subject areas for discovery, including (1) topics related to Plaintiffs' specific separations, detentions, and reunifications, which occurred over a period of 16 months beginning in December 2017 and spanned at least four states (Arizona, Florida, New York, and Texas) and (2) topics related to the development, implementation, and cessation of family separations.  As of the filing of this Report, Plaintiffs have completed their productions under the MIDP.

Although the government has taken the position that it has finished its MIDP productions, to date, Defendant has not produced any emails—including any emails from government officials identified in Defendant's MIDP disclosures—related to Plaintiffs' apprehensions, custody, separations, and detentions.[2]  The plain language of General

---

[2] For the avoidance of doubt, Defendant has produced certain policy-level emails from the *C.M.* and *A.P.F.* cases.  *See infra* at 8–9.  However, Plaintiffs have not received any emails pertaining to the present action, either at the policy or plaintiff-specific level.

- 7 -

Order 17-08 obligates a party to "[l]ist the documents, electronically stored information ('ESI'), tangible things, land, or other property known by you to exist, whether or not in your possession, custody or control, that you believe may be relevant to any party's claims or defenses" and to produce the documents identified to the other party. *See* General Order 17-08 ¶ A.3, Dkt. 4. The duty to provide mandatory initial discovery responses—including the production of ESI—is a "continuing duty"; "each party must serve supplemental responses when new or additional information is discovered or revealed." *Id.* ¶ B.1. The government has indicated that it will not provide a supplemental MIDP response that includes ESI email communications and has taken the position that any additional ESI must be requested later as a formal request for production, a process that could delay discovery further despite the requested ESI being clearly relevant and within the scope of MIDP.[3]

With respect to topics related to the development, implementation, and cessation of family separations, Defendant has agreed to provide documents "relating to the creation and implementation of alleged policies that resulted in the separation of family units at the border, including the Zero Tolerance Policy" ("policy-related" discovery) that were originally produced in the *C.M.* and *A.P.F.* cases, including (i) policy documents and (ii) transcripts of the depositions of "policy-related" witnesses. To date, Defendant has made 24 productions of "policy-related" documents to Plaintiffs and produced the deposition transcripts of 15 "policy-related" witnesses deposed in *C.M.* and *A.P.F.* As set

---

[3] Defendant claims that Plaintiffs have not previously requested ESI email communications. But counsel for Plaintiffs specifically noted during the parties' October 17, 2022 meet-and-confer that Defendant's MIDP disclosures were deficient for lack of plaintiff-specific emails, and have raised the issue that Defendant has produced fewer-than-expected emails since at least as early as the meet-and-confer on August 31, 2022. In any event, it is not Plaintiffs' duty to raise deficiencies with Defendant; instead, Defendant has a "continuing duty" to "serve supplemental responses when new or additional information is discovered or revealed." General Order 17-08 ¶ B.1, Dkt. 4.

forth below, Plaintiffs will seek additional "policy-related" discovery that was not produced in *C.M.* and *A.P.F.* by formal discovery request.

Defendant's statement

In *C.M.* and *A.P.F.*, fact discovery fell into two basic categories: (1) Policy-related discovery – that is, discovery relating to the creation and implementation of alleged policy or policies to separate families following entry into the United States across the Southwest border, including discovery relating to the Zero Tolerance Policy and the referral for prosecution of adults in family units; and (2) Plaintiff-specific discovery – that is, discovery relating to the apprehension, care, custody, referral and prosecution-related decisions, custody determinations, and separations of the particular adult plaintiffs and children in those lawsuits.  The discovery in this case likewise falls into those two basic categories (*i.e.*, policy-related and plaintiff-specific).  The discovery produced by the United States in this action under the MIDP for both categories is described below. As of the filing of this Report, the United States has completed its productions under the MIDP.

### *Policy-related discovery*

As in *C.M.* and *A.P.F.*, Plaintiffs in this action allege that officials at the "highest levels of the U.S. government conspired with each other to violate the law and ordered these forcible family separations in Arizona and elsewhere along the southern border" and that they "ordered or participated in the planning of widespread family separations" for the purpose of "deter[ing] other Central Americans from seeking asylum or other immigration relief in the United States." *See A.I.I.L.* First Am. Compl. (ECF. No. 41) at ¶¶8-10.  Also, as in *C.M.* and *A.P.F.,* this case involves parents and children who were separated following their illegal entry into the United States between ports of entry during the period of the Zero Tolerance Policy, as well as a parent and child who were separated following presentment at a port of entry months before the Zero Tolerance

Policy. Indeed, in opposing the United States' motion to dismiss, Plaintiffs cited factual similarities between this case and *C.M.* and *A.P.F. See* Pls. Opp. to MTD (*A.I.I.L.* ECF No. 55 at 8) ("Courts in this District have already twice rejected the government's arguments that the DFE bars FTCA claims *on these facts*[.]") (emphasis added).

Although this action was not consolidated with *C.M.* and *A.P.F.*, Judge Bolton observed that the parties "could agree that depositions taken in those cases might be utilized [to] avoid unnecessary duplication. There are likely other agreements the parties could make to benefit from the considerable work already done by the parties and this Court in CV19-05217-PHX-SRB and CV20-00065-PHX-SRB." *A.I.I.L.* ECF No. 101. Accordingly, under the MIDP the United States provided Plaintiffs with the Policy-related document discovery from *C.M.* and *A.P.F.*, as well as the Policy-related deposition transcripts and exhibits.

The Policy-related document discovery under the MIDP in *C.M.* and *A.P.F.* was extensive.  Among other sources of documents, the MIDP Policy-related document discovery included approximately seventy (70) agreed-upon custodians from DOJ, DHS, ICE, CBP, USCIS, and HHS, and utilized comprehensive agreed-upon search terms intended to locate documents relating to the creation and implementation of the Zero Tolerance Policy, any other policies relating to the prosecution of adults in family units (including the El Paso Initiative), and more broadly any alleged policies to separate family units at the United States-Mexico border whether they presented at ports of entry or crossed between ports of entry.  Among the agreed-upon custodians were Cabinet-level officials and heads of federal agencies and components, senior-level deputies and assistants, counselors and advisors to those officials, chiefs of staff, and supervisory-level employees from the national and regional levels of ICE, CBP, and HHS who potentially possessed relevant information relating to the creation of and implementation of any such policies.  The date range for the searches in *C.M.* and *A.P.F.* was between January 20,

2017 and June 26, 2018, with the end date set by court order. *C.M.* ECF No. 61. It is within that date range that Plaintiffs in this action crossed the southwest border and were separated.

Additionally, the voluminous MIDP Policy-related discovery in *C.M.* and *A.P.F.* was supplemented by multiple requests for production served by the *C.M.* and *A.P.F.* Plaintiffs. Those requests, among other things, expanded the Policy-related discovery to additional high-ranking DOJ custodians and the five U.S. Attorney's Offices along the Southwest border. The *C.M.* and *A.P.F* Policy-related discovery produced to Plaintiffs in this case exceeds 60,000 documents comprising hundreds of thousands of pages.[4]

Moreover, the United States also has produced the deposition transcripts of fifteen (15) Policy-related witnesses in *C.M.* and *A.P.F.* and the exhibits thereto.

### ***Plaintiff-specific discovery***

Regarding Plaintiff-specific discovery, the United States has produced to Plaintiffs voluminous records from various agency electronic databases, including those relating to the apprehension, detention, and transfer of custody by CBP; ICE detention by ICE of the adult Plaintiffs pending removal proceedings; and the care and custody of the minor Plaintiffs while in ORR custody. Additionally, the United States has produced records relating to Plaintiffs' immigration proceedings, including their Alien Files (or "A-files").

Insofar as Plaintiffs state herein that the Plaintiff-specific MIDP productions in this case did not include additional ESI email communications relating to Plaintiffs' apprehension, custody, separation, or detention, the MIDP disclosures were exchanged over six months ago. During the parties' conferences under the MIDP, Plaintiffs neither raised nor proposed additional Plaintiff-specific ESI searches, which was incumbent upon them to do if they believed any such emails should have been part of the MIDP

---

[4] It also is incorrect that the United States has not produced any Policy-related ESI "pertaining to the present action." Given the overlap of issues in this action and *C.M.* and *A.P.F.*, the Policy-related ESI from *C.M.* and *A.P.F.* quite clearly pertains to this action.

productions.  *See* General Order  17-08 ¶ C.2 (including as part of MIDP meet and confer process discussions among the parties regarding, "appropriate ESI searches, including custodians and search terms, or other use of technology assisted review").  To the extent Plaintiffs intend to seek Plaintiff-specific ESI beyond that already produced by Defendant, Plaintiffs will have the opportunity to do so through requests for production under the Federal Rules of Civil Procedure.  In fact, Plaintiffs have already served Requests for Productions seeking, among other things, emails regarding Plaintiffs' apprehension, separation, detention, and custody, which moots the issue. Plaintiffs' assertion that seeking such information through formal discovery requests rather than under the MIDP will cause "further delay" is unfounded, as any additional ESI searches will involve discussions between the parties regarding custodians, search terms, and appropriate scope, regardless of whether such information was sought under MIDP or pursuant to a request for production.  The United States is willing to engage in these discussions.[5]

**14. Discussion of necessary discovery**

**a.   Extent, nature, and location of discovery**

*Plaintiffs' Statement:*

With respect to Plaintiff-specific discovery, Plaintiffs require documentary discovery and deposition testimony concerning the following subject areas:

- Government officials' decisions to prosecute (or not prosecute) Plaintiffs under 8 U.S.C. § 1325;

---

[5] The United States disagrees that, prior to the drafting of this report, Plaintiffs specifically asserted a deficiency with the United States MIDP disclosures regarding emails specifically relating to the apprehension, custody, separation, or detention of Plaintiffs, let alone "as early as the meet-and-confer on August 31, 2022."  Nor have Plaintiffs sought a meet and confer to resolve any supposed deficiencies with the Plaintiff-specific MIDP productions.

- Government officials' decisions to separate Plaintiff parents from their children;

- The manner in which government officials carried out the separations of Plaintiff parents from their children;

- The manner in which government officials transferred Plaintiff children to ORR shelters;

- Government officials' decisions about where to place each of the Plaintiff children, including, but not limited to, the decision(s) to place them in shelters far from their parents;

- Government officials' actions, if any, to track each of the Plaintiff children after they were separated from their parents;

- Government officials' actions, if any, regarding the reunification of each of the Plaintiff parents with their children;

- The conditions of government or government-contracted facilities in which the government detained each of the Plaintiffs;

- Government officials' treatment of Plaintiffs during the course of their respective detentions, including, but not limited to, all photographs, films, surveillance footage, and other images of Plaintiffs while detained; and

- Information in the government's possession concerning physical, medical, and psychological harms suffered by each of the Plaintiffs as a result of their separation.

With respect to topics related to the development, implementation, and cessation of family separations, the "policy-related" discovery from *C.M./A.P.F.* will not provide sufficient information as to how the national separation practice impacted the *A.I.I.L.* Plaintiffs, given their particular circumstances.

1

2    *First*, in contrast to the *C.M./A.P.F.* plaintiffs, two *A.I.I.L* Plaintiff parents were

3    held in criminal custody after they were criminally prosecuted.  Jairo and Jorge had been

4    previously removed from the U.S.; after being separated from their children, Jairo was

5    prosecuted, convicted, and sentenced to five days incarceration, while Jorge was

6    transported and detained pending his prosecution for criminal re-entry—which was later

7    accepted for prosecution by the AUSA referred to Jorge's case.  *See* United States'

8    Motion to Dismiss at Ex. A, Attachment 3, p. 4, *A.I.I.L., et al. v. Sessions et al.*, No. CV-

9    19-00481-TUC-JCH, Dkt. 53.  The *C.M./A.P.F.* plaintiffs were never prosecuted.[6]  *See*

10   Plaintiffs' Opposition to Amended Motion to Consolidate Cases for Common Policy-

11   Based Discovery Only, *C.M. et al. v. United States*, at 5, No. 2:19-cv-05217-SRB, Dkt.

12   238.  *A.I.I.L.* Plaintiffs' unique factual circumstances thus merit additional discovery.

13   Moreover, the *A.I.I.L.* Plaintiffs claim that the U.S. practice of *prosecuting* migrant

14   families was mere pretext for ripping families apart.  Information regarding, for example,

15   the government's determination of when, whether, and how families would be separated

16   and treated based on the status of criminal prosecution is therefore particularly critical in

17   *A.I.I.L.*

18       *Second*, the age range of *A.I.I.L.* Plaintiff children when they were separated is

19   materially wider than in *C.M./A.P.F.*  ORR generally categorizes children twelve years

20   old and under as "tender age" and children under the age of five as "very young."  Unlike

21   *C.M./A.P.F.* plaintiffs, *A.I.I.L.* Plaintiffs include children who are: (1) non-tender age

22   (*e.g.*, Karina, who was thirteen years old at the time of separation, while the oldest

23   *C.M./A.P.F.* plaintiffs were twelve); and (2) very young (*e.g.*, Beatriz, who was three

24   years old at the time of separation, while the youngest *C.M./A.P.F.* plaintiffs were five).

25   Accordingly, *A.I.I.L.* will require additional discovery as to how ORR handled

26   ─────────────
[6] For sake of clarity, four parents in the *A.P.F.* action were referred for prosecution but
were not actually prosecuted because these prosecutions were declined by the U.S.
Attorney's office.

- 14 -

separations of non-tender age children (like Karina) and of very young children (like Beatriz).  Moreover, the broader ages represented by the *A.I.I.L.* Plaintiffs require additional discovery because the age of the separated child may affect, among other things, how the child reacted to a forced separation and his or her placement in an unfamiliar environment, the child's language and emotional development, and the child's physical and psychological needs.

*Third,* the majority of *A.I.I.L.* Plaintiffs were initially separated at different times and across a materially longer period than the *C.M./A.P.F.* plaintiffs.  Plaintiffs Jorge and Diana were separated in June 2018, one month after the last separations in *C.M./A.P.F* and during a period of mounting public pressure for the Trump Administration, which culminated in the June 20, 2018 executive order purporting to end family separations. *See* FAC ¶¶ 217-19.  Plaintiffs Lorena and Karina and Jairo and Beatriz were all separated in December 2017, a month in which no *C.M./A.P.F.* separations occurred.  Moreover, certain *A.I.I.L* Plaintiffs were subjected to a substantially longer period of separation than in *C.M./A.P.F.*  Plaintiffs Lorena and Karina were subjected to a sixteen-month long separation, twice as long as the longest separation in *A.P.F.* and four times as long as the longest separation in *C.M.*  Further, Lorena and Karina's separation ended in April 2019, well beyond the separation end dates in *C.M./A.P.F.*, the latest of which occurred in September 2018.  While the government states that the *C.M./A.P.F.* discovery encompassed the entire timeframe in which the *A.I.I.L* Plaintiffs were separated, the *C.M./A.P.F.* plaintiffs did not have the same incentive to gather information about time periods that are particularly relevant for *A.I.I.L* Plaintiffs.

Plaintiffs therefore require documentary discovery and deposition testimony concerning the following subject areas:

- Discussions, consideration of and decisions regarding how the family separation practice would apply and impact children of different ages, and any concerns about separation and the impact on children of certain ages;

- Policies and practices governing the criminal prosecution of migrants, as well as any documents detailing discussions and considerations of any such potential or actual policies and practices;

- Potential or actual policies and practices governing the length of separation as well as any documents detailing any discussions of those policies and practices, to determine how the government's policies may have treated our plaintiffs—who were separated materially longer in some instances— differently from the plaintiffs in *C.M./A.P.F.*;

- Potential or actual apprehension and separation policies and practices specific to points of entry along the southern border of the United States where Plaintiffs crossed as well as any documents detailing any discussions and consideration of any such potential or actual policies and practices;

- Apprehension and separation policies and practices in effect at the time and place where Plaintiffs were apprehended and separated, as well as any documents detailing any discussions of those policies and practices, to determine how those policies may have treated our plaintiffs differently than the plaintiffs in *C.M./A.P.F.*;

- Potential or actual policies and practices governing separation based on immigration history as well as any documents detailing any discussions and consideration of any such potential or actual policies and practices.

*Defendant's Statement:*

The United States asserts that the scope of discovery set forth by Plaintiffs is overbroad and unduly burdensome. The United States also notes that such discovery may

be subject to attorney-client privilege, work production protection as defined by Fed. R. Civ. P. 26(b), governmental privileges, including, but not limited to, the deliberative process privilege, law enforcement privilege, executive privilege, other privileges the United States may invoke, or any other applicable privileges or protection. Furthermore, insofar as Plaintiffs intend to seek discovery from current or former Cabinet-level government officials, heads of any federal agencies, advisors to the President, or the former President, such discovery should not proceed unless and until Plaintiffs demonstrate the requisite heightened need for such discovery and that such discovery cannot be obtained through some other source that is more convenient and less burdensome.

In *C.M.* and *A.P.F.*, the court limited written discovery to twenty-five (25) interrogatories, including subparts; twenty-five (25) requests for production, including subparts; and twenty-five (25) requests for admission, including subparts. *See C.M.* ECF No. 47; *A.P.F.* ECF No. 50. Given the significant overlap in timeframes, locations, facts, and issues between this action and *C.M. and A.P.F.*, the limitations on interrogatories and requests for admissions in *C.M.* and *A.P.F.* also suffice here, especially in light of the extensive discovery in *C.M.* and *A.P.F.* already provided to Plaintiffs. Moreover, because of the voluminous Policy-related discovery from *C.M. and A.P.F.* already produced to Plaintiffs here – specifically, all Policy-related documents produced in *C.M.* and *A.P.F.* pursuant to the MIDP and the United States' productions pursuant to requests for production under Fed. R. Civ. P. 34, as well as the transcripts and exhibits for the fifteen (15) Policy-related depositions jointly taken in *C.M.* and *A.P.F.* – Plaintiffs' requests for production in this action should be limited to twenty (20), including subparts. Also, as further discussed below, the ten (10) depositions set forth in Fed. R. Civ. P. 30(a)(2)(A)(i) are sufficient to meet the needs of the case.

- 17 -

Further, Plaintiffs' assertion of three areas of factual differences between this action and *C.M.* and *A.P.F.* do not warrant additional Policy-related discovery: (1) the completion of criminal prosecutions for certain *A.I.I.L.* Plaintiffs, (2) differences in the ages of the respective minor Plaintiffs, and (3) differences in the duration of the separations.  The Policy-related discovery in *C.M.* and *A.P.F.*, as described above, was sufficiently broad to encompass these purported factual differences, as the *C.M.* and *A.P.F.* discovery encompassed the entire time frame in which the separations in this action took place, and, among other things, separations at ports of entry and following illegal entries between ports of entry; separations irrespective of whether criminal prosecution of the adult occurred; and separations of minors of various ages.[7]  Given the substantial overlap in policy-related allegations in this action and *C.M.* and *A.P.F.*, the very same incentives to gather policy-related information in this action were present in *C.M.* and *A.P.F.*  Moreover, the factual circumstances identified by Plaintiffs relate to how the government's alleged policies applied to or impacted them specifically, and thus are more appropriately characterized as *Plaintiff-specific* issues.  Nevertheless, even if this suit involves discrete Policy-related issues specific to this action that were not present in *C.M.* and *A.P.F.*, the number of written discovery requests and depositions proposed by the United States are sufficient to facilitate any such supplemental Policy-related discovery and Plaintiff-specific discovery.

The United States requires document discovery and deposition testimony concerning the following subject areas:

• Information regarding the entry of the adult and minor Plaintiffs into the United States and their apprehensions.

---

[7] Indeed, this action involves separations at the same port of entry (the DeConcini port of entry near Nogales, AZ) as in *A.P.F.*, and separations following the illegal entries between ports of entry in the U.S. Border Patrol Yuma Sector, as in *C.M.* and *A.P.F.*.

• Information regarding the circumstances experienced by the adult and minor Plaintiffs in their home countries that allegedly led to their decisions to enter the United States, and the extent to which said circumstances contribute to the alleged physical, medical, emotional, and/or psychological harms experienced by the adult and minor Plaintiffs.

• Information regarding communications and other contacts between the adult and minor Plaintiffs during their separations.

• Information regarding the alleged physical, medical, emotional, and/or psychological harms suffered by each of the adult and minor Plaintiffs as a result of their separations.

• Information regarding any care, services, or treatment available to or received by the adult and minor Plaintiffs during and subsequent to their separations.

**b.  Suggested changes to the discovery limitations imposed by the Federal Rules of Civil Procedure**

Plaintiffs request that the limit of 10 depositions set forth in Fed. R. Civ. P. 30(a)(2)(A)(i) be increased. Plaintiffs maintain that the 25-limit cap on interrogatories, as provided by Fed. R. Civ. P. 33, is appropriate for the four remaining Plaintiff families. Plaintiffs also maintain that—particularly in the absence of a cap under the Federal Rules—no limitation is appropriate for requests for production or admission.  Plaintiffs commit to act in good faith when making such requests.

The United States' position is that the ten (10) depositions set forth in Fed. R. Civ. P. 30(a)(2)(A)(i) are sufficient to meet the needs of the case.

*Plaintiffs' Statement*

Plaintiffs' request up to twenty-seven (27) new depositions, which is supported by the parties' MIDP disclosures.  Defendant's MIDP disclosures identified 89 individuals—excluding Plaintiffs, who Defendant "believe[s] are likely to have

discoverable information relevant to any party's claims or defenses," including ten border patrol agents who were directly involved in either the processing of Plaintiffs or providing notice to F.O.J.C. and O.R.R., three federal field specialists employed by O.R.R. who were directly involved with the care and placement of Plaintiff children, and seven third-party contractors who were directly involved with the care and placement of Plaintiff children.  The other 69 individuals are broadly defined as being associated with the development, implementation, or enforcement of various applicable policies and practices related to family separation.  These individuals' supervisory roles range from senior field specialist supervisors to White House officials and Cabinet members. Plaintiffs in their MIDP disclosures identified an additional 164 potential witnesses who interacted with Plaintiffs, as well as 33 individuals believed to have been involved with the development, implementation, or enforcement of various applicable policies and practices related to family separation.

Therefore, Plaintiffs request the following depositions:

- Up to 5 depositions for each Plaintiff family, for a total of 20 depositions. Plaintiff families did not all enter the U.S. in the same location or at the same time, were not held in the same location or at the same time, and were not separated in the same location at the same time; discovery for each will be unique.  Depositions of the federal agents involved in each separation are required to understand, among other subject areas, the reasons for and circumstances of each Plaintiff family's separation and detention, the placement of each Plaintiff parent's child in O.R.R. shelters or other foster care providers, each Plaintiff parent's ability to communicate with their children during their separation, and each Plaintiff parent's reunification with their children.

- Up to 7 additional depositions concerning the government's creation, development, and implementation of family separation, especially considering the number of officials and diversity of government agencies involved.

- In addition to the 27 potential depositions identified above, Plaintiffs reserve the right to seek limited depositions of the deponents in the *C.M./A.P.F.* case. Based on a review of the deposition transcripts provided from the *C.M./A.P.F.* case, Plaintiffs will determine—acting in good faith and in order to minimize burden to the Government and the *C.M./A.P.F.* deponents—whether any of the "policy-related" depositions of *C.M./A.P.F.* witnesses should be used in this case and may substitute for a live deposition. Plaintiffs recognize any depositions of previously deposed witnesses would be of limited length and scope.

This discovery is proportional to the needs of the case as provided in Fed. R. Civ. P. 26(b)(1). This case raises issues of profound public importance and complexity involving a policy enacted by officials at the highest levels of government. Due to the immediate and ongoing trauma resulting from the federal government's treatment of Plaintiffs, potential damages are substantial. Information related to the government's policymaking related to family separation, how the government's policy relates to Plaintiffs' specific treatment and claims, and information related to the specific apprehension, detention, separation and custody of each Plaintiff family is not public and is within the control and possession of government officials. For these reasons, the burden and expense of the proposed discovery do not outweigh its likely benefit in permitting the parties to efficiently resolve the case through settlement discussions or trial.

*Defendant's Statement:*

Plaintiffs seek twenty-seven (27) new depositions, as well as the opportunity to re-depose the fifteen (15) Policy-related deponents in *C.M.* and *A.P.F.*  The number of depositions sought by Plaintiffs is excessive.  As noted, Plaintiffs already have received the fifteen (15) Policy-related depositions transcripts from *C.M.* and *A.P.F.*, which, per agreement of the parties, can be used in this action subject to the Federal Rules of Civil Procedure and Federal Rules of Evidence.  Further, as explained herein, Judge Bolton, who presides over *C.M.* and *A.P.F.*, encouraged the Policy-related discovery in those cases be used in actions such as this one.  The Policy-related depositions in *C.M.* and *A.P.F.* include, among others, two former heads of agencies (specifically, the former Director of ICE and the former Commissioner of CBP), the former Deputy Commissioner of CBP, a former U.S. Attorney, a 30(b)(6) deposition of DHS, and several other senior officials, advisors, and counselors from DHS, ICE, CBP, DOJ, and HHS.

Despite already having the benefit of the fifteen (15) Policy-related deposition transcripts from *C.M.* and *A.P.F.*, Plaintiffs request an *additional* twenty-seven (27) depositions in this action – consisting of twenty (20) Plaintiff-specific depositions and seven (7) Policy-related depositions.  That is tantamount to forty-two (42) total depositions in this case, not counting the fifteen (15) *re*-depositions of the *C.M.* and *A.P.F.* Policy-related deponents that Plaintiffs may seek.  Plaintiffs' requested number of depositions far exceeds the number of depositions permitted in either *C.M.* or *A.P.F.* for Plaintiff-specific and Policy-related depositions combined, and is far more than necessary in this action.

 Judge Bolton limited the *C.M.* plaintiffs to twenty-seven (27) total depositions, consisting of twelve (12) Policy-related depositions to be jointly taken with the *A.P.F.* plaintiffs, and fifteen (15) Plaintiff-specific depositions (*i.e.*, three (3) depositions for

- 22 -

1

2   each of the five sets of adult and minor plaintiffs in that case).  *C.M.* ECF No. 61. [8]  Judge

3   Bolton limited the *A.P.F.* Plaintiffs to thirty-two (32) total depositions, consisting of the

4   twelve (12) Policy-related depositions to be jointly taken with the *C.M.* plaintiffs, two (2)

5   supplemental Policy-related depositions,[9] and eighteen (18) Plaintiff-specific depositions

6   (*i.e.*, three (3) depositions for each of the six sets of adult and minor plaintiffs in that

7   case).  *A.P.F.* ECF No. 56.

8          In this case, there are *fewer* adult and minor Plaintiffs than in *C.M.* or *A.P.F.* –

9   here there are four sets of adult and minor Plaintiffs, as compared to five adult and minor

10  plaintiff pairs in *C.M.* and six adult and minor plaintiff pairs in *A.P.F.*  Nevertheless,

11  Plaintiffs seek a *greater* number of Plaintiff-specific depositions than authorized in either

12  *C.M.* or *A.P.F.*  Here, Plaintiffs seek five (5) depositions for each of the four sets of adult

13  and minor Plaintiffs in this action, for a total of twenty (20) Plaintiff-specific depositions.

14  Also, the number of Plaintiff-specific depositions permitted in *C.M.* and *A.P.F.* proved to

15  be more than the plaintiffs needed, as the *C.M.* plaintiffs did not use all of the Plaintiff-

16  specific depositions they were permitted, and a number of the *A.P.F.* Plaintiff-specific

17  depositions were cumulative.

18
   _____

19    [8] Initially, the *C.M.* and *A.P.F.* plaintiffs were limited to jointly taking ten (10) Policy-
    related depositions, *see C.M.* ECF No. 61; *A.P.F.* ECF No.56.  That number subsequently
20  was increased to twelve (12) Policy-related depositions.  *See C.M.* ECF No. 144; *A.P.F.*
    ECF No. 144.  By agreement of the parties, a thirteenth Policy-related deposition was
21  taken, as well as the depositions of two former heads of agencies – specifically, the
    former Director of ICE and the former Commissioner of CBP – for a total of fifteen (15)
22  Policy-related depositions.

23    [9]  The *A.P.F.* Plaintiffs were permitted two (2) additional Policy-related depositions
    because two sets of adult and minor Plaintiffs in that action were separated at the
24  DeConcini Port of Entry in Nogales, Arizona in November 2017, whereas all of the adult
    and minor Plaintiffs in *C.M.* and the adult and minor Plaintiffs in *A.P.F.* were separated
25  following their illegal entries into the United States during the time period that the Zero
    Tolerance policy was in effect. *A.P.F.* ECF No. 56.  As noted, this action likewise
26  involves one set of Plaintiffs – L.L.H.O. and K.E.O.H. – who also were separated
    following presentment at the DeConcini Port of Entry in Nogales, Arizona on December
    22, 2017.

Accordingly, it is the United States' position that the ten (10) total depositions permitted to both Plaintiffs and Defendant by the Federal Rules of Civil Procedure are sufficient to meet the needs of this case.  Once the ten (10) depositions are conducted, additional depositions should be permitted only upon agreement of the parties or by leave of court upon a showing of good cause.

At this point, the United States does not agree to any of the fifteen (15) Policy-related deponents in *C.M.* or *A.P.F.* being re-deposed in this action. However, to the extent Plaintiffs seek to re-depose such witnesses, the United States will engage in good faith discussions with Plaintiffs regarding their claimed need, as well as the scope, duration, and method of questioning for any such deposition. If such re-depositions were to occur, they should be counted against the total number of depositions permitted in this action. Moreover, as Judge Bolton ordered in *C.M.* and *A.P.F.*, insofar as Plaintiffs seek to depose any current or former Cabinet-level officials, heads of agencies, or White House officials or advisors, such depositions should only proceed on agreement of the parties or with the Court's leave.  *See C.M.* ECF No. 61, 144; *A.P.F.* ECF No. 56, 144. Further, such depositions should count against the total number of depositions permitted by the Court.

### c.  Number of hours permitted for each deposition

The parties agree that each deposition shall be subject to the presumptive limit of one day of seven hours as provided in Fed. R. Civ. P. 30(d)(1).

**15. Statement of when the parties served their MIDP discovery responses**

The parties served their MIDP discovery responses on May 31, 2022.  Plaintiffs served supplemental MIDP discovery responses on July 29, 2022.

**16. Proposed deadlines**

*Plaintiffs' Statement*

In order to accommodate the requested number of depositions, interrogatories, and requests for production described above, the Plaintiffs request that the Court approve the below schedule:

1. Completion of fact discovery and supplementation of MIDP discovery responses

    a. May 1, 2023

2. Expert disclosures under Fed. R. Civ. P. 26(a)(2)(A)-(C)

    a. Plaintiffs' expert disclosures:  June 19, 2023

    b. Defendant's expert disclosures:  July 19, 2023

3. Rebuttal/Supplemental expert disclosures

    a. August 18, 2023

4. Completion of Expert Depositions

    a. September 8, 2023

5. Good Faith Settlement Talks

    a. May 8, 2023 with a joint report provided to the Court five business days after the May 8 deadline (May 15)

6. Filing of Dispositive Motions

    a. November 9, 2023

*Defendant's Statement*

Plaintiffs' proposed schedule, which permits only six (6) months to complete fact discovery following the filing of the report, is not reasonable, even if the Court were to adopt the discovery parameters proposed by the United States.  Notably, other FTCA cases involving claims arising out of family separations at the U.S.-Mexico border during the prior Administration (and likewise involve the production of the Policy-related

discovery from *C.M.* and *A.P.F.*) have fact discovery periods ranging from ten (10) to fifteen (15) months.[10]  Because the productions of the Policy-related documents from *C.M.* and *A.P.F.* have already been made in this case, the United States is willing to agree to a nine (9) month fact discovery period following the filing of this report.  The United States proposes the following schedule, which reflects a later deadline to complete fact discovery and other discovery-related deadlines that comport with the timing afforded in the initial *C.M.* and *A.P.F.* scheduling orders:[11]

1.  Completion of fact discovery and supplementation of MIDP discovery responses

    a.  August 31, 2023

2.  Expert disclosures under Fed. R. Civ. P. 26(a)(2)(A)-(C)

    a.  Plaintiffs' expert disclosures:  October 31, 2023

    b.  Defendant's expert disclosures:  December 18, 2023

3.  Rebuttal/Supplemental expert disclosures

    a.  January 18, 2024

4.  Completion of Expert Depositions

    a.  March 18, 2024

---

[10] *See F.R. v. United States*, Case 2:21-cv-00339-DLR (D. Ariz.) (ECF No. 48, 50) (ten month fact discovery period, in case involving one parent and child); *A.F.P. v. United States*, 1:21-cv-00780-DAD-EPG (E.D. Cal.) (ECF Nos. 32, 35) (fifteen month fact discovery period in case involving one parent and child, including ninety (90) day disclosure period for disclosure and review of policy-related document productions from *C.M.* and *A.P.F.*); *P.G. v. United States*, Case No. 4:21-cv-04457-KAW (N.D. Cal.) (ECF Nos. 47, 50) (twelve month fact discovery period in case involving three sets of parents and children, including ninety (90) day disclosure period for disclosure and review of policy-related document productions from *C.M.* and *A.P.F.*); *Euceda v. United States*, Case No. 2:20−cv−10793−VAP−GJS (C.D. Cal.) (ECF No. 43) (eleven month fact discovery period in case involving single adult plaintiff). The scheduling orders in *C.M.* and *A.P.F.* both initially had a twelve (12) month fact discovery period, and several extensions were necessary.

[11] *See C.M.* Case Management Order (ECF No. 47); *A.P.F.* Case Management Order (ECF No. 50).

1

2       5.  Good Faith Settlement Talks

3          a.  September 6, 2023 with a joint report provided to the Court five

4             business days after the September 6 deadline (September 13)

5       6.  Filing of Dispositive Motions

6          a.  April 18, 2024

7

8  **17. Whether a jury trial has been requested**

9       Plaintiffs have not requested a jury trial as the FTCA provides that all actions shall

10  be tried by the Court without a jury.  28 U.S.C. § 2402.

11  **18. The prospects for settlement**

12       The parties believe that they will be able to assess prospects for settlement of the

13  case after further fact discovery.

14

15  Respectfully submitted this 1st day of December, 2022.

16

17

18  By:  /s/ Jacqueline P. Rubin

       Jacqueline P. Rubin             Lee Gelernt

19         (admitted *pro hac vice*)       (admitted *pro hac vice*)

       Geoffrey R. Chepiga          Anand Balakrishnan

20         (admitted *pro hac vice*)       (admitted *pro hac vice*)

       Steven C. Herzog             Daniel A. Galindo

21         (admitted *pro hac vice*)       (admitted *pro hac vice*)

       Hallie S. Goldblatt           AMERICAN CIVIL LIBERTIES

22         (admitted *pro hac vice*)       UNION FOUNDATION

       PAUL, WEISS, RIFKIND,       IMMIGRANTS' RIGHTS PROJECT

23         WHARTON & GARRISON LLP   125 Broad Street, 18th Floor

       1285 Avenue of the Americas    New York, NY 10004

24         New York, NY 10019          (212) 549-2660

       (212) 373-3000

25         jrubin@paulweiss.com

26

Alexander A. Reinert
(admitted *pro hac vice*)
55 Fifth Avenue, Room 1005
New York, NY 10003
(646) 592-6543

Stephen Kang
(admitted *pro hac vice*)
Spencer Amdur
(admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
(917) 620-3555

Christine Keeyeh Wee
ACLU FOUNDATION OF ARIZONA
P.O. Box 17148
Phoenix, AZ 85011
(602) 650-1854

*Attorneys for Plaintiffs*


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

JAMES G. TOUHEY, JR.
Director, Torts Branch

By: /s/ Philip D. MacWilliams
PHILIP D. MACWILLIAMS
Trial Attorney
D.C Bar No. 482883
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station
P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

*Attorneys for the
United States of America*